1   BINGHAM MCCUTCHEN LLP
    Geoffrey M. Howard (SBN 157468)
2   geoff.howard@bingham.com
    Thomas S. Hixson (SBN 193033)
3   thomas.hixson@bingham.com
    Patrick T. Weston (SBN 211448)
4   patrick.weston@bingham.com
    Three Embarcadero Center
5   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
6   Facsimile:  415.393.2286

7   ORACLE CORPORATION
    Dorian Daley (SBN 129049)
8   dorian.daley@oracle.com
    Deborah K. Miller (SBN 95527)
9   deborah.miller@oracle.com
    500 Oracle Parkway
10  M/S 5op7
    Redwood City, CA  94065
11  Telephone:  650.506.4846
    Facsimile:  650.506.7114

12
    ORACLE CORPORATION
13  Jeffrey S. Ross (SBN 138172)
    jeff.ross@oracle.com
14  10 Van de Graaff Drive
    Burlington, MA  01803
15  Telephone:  781.744.0449
    Facsimile:  781.238.6273

16
    Attorneys for Plaintiff
17  Oracle America, Inc.

GCA LAW PARTNERS LLP
Valerie M. Wagner (SBN 173146)
vwagner@gcalaw.com
Jill F. Kopeikin (SBN 160792)
jkopeikin@gcalaw.com
1891 Landings Drive
Mountain View, CA 94043-0848
Telephone:  650.428.3900
Facsimile:  650.428.3901

Attorneys for Defendants
Service Key, LLC and Angela Vines

DUNLAP, GRUBB & WEAVER,
PLLC
David Ludwig (*pro hac vice*)
dludwig@dglegal.com
199 Liberty Street, SW
Leesburg, VA 20175
Telephone:  703.777.7319
Facsimile:  703.777.3656

Attorneys for Defendant
DLT Federal Business System
Corporation

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

18
19

20  ORACLE AMERICA, INC., a Delaware
    corporation,

21                        Plaintiff,

22          v.

23  SERVICE KEY, LLC, a Georgia limited
    liability company; ANGELA VINES; DLT
24  FEDERAL BUSINESS SYSTEMS
    CORPORATION, a Delaware corporation; and
25  DOES 1–50,

26                        Defendant.

No. 4:12-cv-00790-SBA

**FED. R. CIV. PROC. 26(F) REPORT
AND JOINT CASE MANAGEMENT
CONFERENCE STATEMENT**

Date:       July 26, 2012
Time:       3:00 p.m.
Place:      Courtroom 1, 4th floor (CMC is
            telephonic)
Judge:      Hon. Saundra B. Armstrong

27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    Plaintiff Oracle America, Inc. ("Oracle" or "Plaintiff"); and Defendants Service Key, LLC ("Service Key"), Angela Vines ("Vines"), and DLT Federal Business Systems Corporation (now known as FBSCGov) ("FBSCGov" or "DLT-FBS"), (collectively, "Defendants") jointly submit this Fed. R. Civ. Proc. 26(f) Report and Joint Case Management Conference Statement, pursuant to Fed. R. Civ. Proc. 26(f), the Standing Order for All Judges of the Northern District of California dated July 1, 2011, Civil Local Rule 16-9, and following the parties' Rule 26(f) conference on June 22, 2012.

    **1.**  **Jurisdiction & Service**

    Oracle has asserted claims under the Federal Copyright Act, 17 U.S.C. §§ 101 *et seq*., the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq*., and Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  Accordingly, Oracle contends that this Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1030(g), 28 U.S.C. § 1331, and 28 U.S.C. § 1338, and that this Court has supplemental subject matter jurisdiction over the pendant state law claims under 28 U.S.C. § 1367.  The parties are not aware of any issues with respect to personal jurisdiction or venue.  All named Defendants have been served and have answered the First Amended Complaint.  DLT-FBS has filed a motion to dismiss, which is currently pending before the Court.

    **2.**  **Facts and Substance of the Action**

    **a.**  **Plaintiff Oracle's Statement**

    Oracle is the leading supplier of enterprise hardware and software systems, and related technical support and consulting services for those systems.  Customers who purchase Oracle hardware have the option to purchase an annual contract for technical support services from Oracle.  As part of those support services, Oracle provides software patches and updates for the proprietary firmware and operating system software that ships with and runs the hardware systems.

    If a customer hires a third party – instead of Oracle – to provide support services on an Oracle hardware system, that third party cannot access or use Oracle's support website (or

provide access to Oracle's support website to others), or access or use official, Oracle-authored updates, patches, or fixes to provide support services for the Oracle software running the hardware. Those updates, patches, and fixes are Oracle's proprietary and copyrighted intellectual property. Defendants, as third party support providers, have no rights to use or distribute Oracle's proprietary software as part of their independent support service offerings. They also cannot provide customers with unauthorized log-in credentials to Oracle's secure support websites, or wrongfully download Oracle's support materials themselves for illegal sale to or use by their customers.

However, Defendants are engaged in a scheme to steal and distribute copyrighted, proprietary Oracle software code, and to traffic in the log-in credentials necessary to download this code from Oracle's password-protected websites. Through false pretenses as purported Oracle customers or partners, Defendants have improperly downloaded for their own commercial use software patches and updates for Oracle's proprietary Sun Solaris operating system, and other technical support files used on Oracle's Sun computers. Defendants falsely told unwitting third parties that they are authorized to provide Oracle's proprietary intellectual property despite, in fact, having no such authorization or permission from Oracle to do so. Defendants obtained access credentials to Oracle's secure support website under false pretenses by establishing nominal customer or alliance partner relationships with Oracle, then trafficked in those credentials and downloaded Oracle's intellectual property in violation of the agreements by which they obtained the credentials in the first place.

Defendants' activities infringe Oracle's intellectual property rights, violate the laws governing website and computer access, breach certain agreements with Oracle, including the Oracle website Terms of Use, and generally undermine Oracle's business model. Oracle filed its original Complaint on February 17, 2012, and filed its First Amended Complaint on April 19, 2012, which alleges eleven claims against the Defendants:

(1)      Copyright Infringement (against all Defendants)

(2)      Violation of the Federal Computer Fraud and Abuse Act (18 U.S.C.

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

§§ 1030(a)(2)(C), (a)(4), & (a)(6)(A)) (against ServiceKey and DLT-FBS)

(3)     False Advertising Under the Lanham Act (15 U.S.C. § 1125(a)(1)(B)) (against all Defendants)

(4)     Breach of Contract (against ServiceKey and DLT-FBS)

(5)     Inducing Breach of Contract (against all Defendants)

(6)     Fraudulent Inducement (against ServiceKey)

(7)     Fraudulent Inducement (against DLT-FBS)

(8)     Unfair Competition—Cal. Bus. & Prof. Code § 17200 (against all Defendants)

(9)     Intentional Interference With Prospective Economic Relations (against all Defendants)

(10)    Unjust Enrichment/Restitution (against all Defendants)

(11)    An Accounting (against all Defendants)

**b.      Defendants ServiceKey and Vines' Statement**

Service Key is a small company based in Norcross, Georgia, with only 14 employees and approximately $1.3 million in annual revenue expected for 2012.  Service Key revenue attributable to work related to Oracle or Sun hardware support was less than $150,000 in 2011. The specter of the litigation with Oracle has scared customers away and Service Key estimates that is already on track to lose almost a million dollars in revenue this year alone – revenue that does not even relate to Sun/Oracle support work, but to work involving systems from other computer systems companies who themselves compete with Oracle.  The present litigation, which Oracle has made clear it will pursue with relentless aggression, threatens to drive Service Key out of business before this Court even has the chance to evaluate the merits of Oracle's claims.

Service Key and Vines have denied the allegations and claims asserted by Oracle. Service Key and Vines are not aware of any improper use of Service Key's login credentials to Oracle's MOS technical support system that Service Key properly obtained in relation to the Sun servers that it owns.  The allegations concerning improper logons and downloads appear to relate

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1   entirely to alleged activities by a former Service Key employee, Rob Muse, who has not been

2   employed by or affiliated in any way with Service Key since September 2010.  Service Key has

3   no business relationship whatsoever with Defendant DLT-FBS, and the Service Key principals

4   had never even heard of DLT-FBS before Oracle filed this lawsuit.

5           Service Key has tried for five months to explain to Oracle that Mr. Muse has not worked

6   for Service Key for several years, and that Service Key has no knowledge of his use of any

7   Service Key login credentials to gain access to Oracle support materials.  Despite Oracle's

8   purported concern about evidence preservation, it has shown no interest in finding out whether

9   Mr. Muse was acting on behalf of a new employer, or whether Service Key and DLT-FBS have

10  any business relationship.  Clearly, Oracle's interests lie elsewhere – firing a shot against the

11  bow of all independent service providers and obtaining access to information about their

12  competitors.

13          Service Key and Vines are informed and believe that Oracle has brought the claims in the

14  present litigation as part of its effort since acquiring Sun Microsystems in 2010 to eliminate

15  competition from independent service providers for technical support for legacy Sun server and

16  storage systems.  According to media coverage relating to the Sun acquisition and litigation

17  between Oracle and other technology companies, Oracle has been disappointed in the

18  performance of the server business it acquired from Sun and has been looking for ways to build

19  market share and increase revenue.

20          Prior to the acquisition by Oracle, Sun customers had the option of using OEM hardware

21  support from either Sun or independent service providers.  Since Oracle acquired Sun in 2010,

22  however, Oracle had implemented a number of dramatic support policy changes in order to drive

23  hardware support business away from independent service providers back to Oracle.  One part of

24  Oracle's strategy is to intimidate both independent service providers and their customers into

25  returning support business to Oracle through litigation.  And in light of Oracle's obvious intent to

26  harass customers who have not contracted with Defendants for support of Oracle or Sun

27  products, Oracle also appears to be using this litigation as a stalking horse to get information

28

about its competitors' server and storage products.

Even before discovery in this case commenced, Oracle's in-house counsel had begun to contact Service Key customers directly, demanding that they turn over documents concerning Service Key and other customers – regardless of the fact that these materials were covered by non-disclosure agreements and with no willingness to limit this discovery to Oracle or Sun systems.  At least one Service Key customer has indicated that it feels it must acquiesce to Oracle's demands or risk the viability of its own business.

In short, Oracle is a multi-billion dollar, global company that is clearly willing to pursue litigation in order to achieve its goals of industry-wide dominance in both hardware sales and customer support.  As discussed below in the Statement by FBSCGov, Oracle's attack on the independent service industry has already garnered the attention of the Justice Department and Congress, and is currently consuming the time of other courts in similar litigation.

### c.        Defendant FBSCGov's Statement

Independent service providers have always been an essential element of the computing and information technology landscape.  Non-Microsoft technicians regularly service Windows machines, and non-Apple technicians service Apple computers.  In 1980, recognizing the important role played by such independent service providers, and also recognizing how the U.S. copyright laws could be misused to monopolize such service, Congress passed section 117 of the Copyright Act to address some then nascent concerns in this area.  After its purchase of Sun Microsystems, Oracle has embarked on a campaign of revoking warranties on certain hardware and then engaging in an aggressive litigation campaign against any non-Oracle company that tries to service Sun hardware, all the while carefully dancing around the letter of section 117.  This instant lawsuit is the second or third that Oracle has brought against independent service providers on similar facts.  Oracle's goal is not to recover whatever nominal damages it may be entitled to if it prevails on its thin claims; rather, Oracle's goal is to use the federal courts to bankrupt its competitors with legal fees, so that Oracle can monopolize the market on service of all Sun hardware.

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1

2     Specifically, Oracle's strategy is as follows:  In March 2010, without notice, Oracle

3   ceased allowing open access to the updates and patches that it and Sun had always made

4   available to purchasers of Sun hardware.  Also at that time, Oracle announced that it was

5   unilaterally rewriting its warranty terms, even for products already purchased under more

6   favorable warranty terms.  Also at that time, Oracle announced that any customer who was not

7   previously using Oracle for service of Sun hardware would have to pay a stiff penalty to re-

8   subscribe to Oracle's service plan, which, as Oracle acknowledges, is now the only way to access

9   the updates and software patches needed to maintain the functionality of older hardware.  Oracle

10   has also taken the position—contrary to the settled law of agency—that an independent service

11   provider cannot act as the agent of a party that is legitimately entitled to Oracle's updates and

12   patches; that the end customer must work directly with—and only with—Oracle.  Since

13   implementing these drastic and anti-competitive policy changes, Oracle has taken to the courts in

14   a series of well-publicized cases intended to send the message that any service provider that

15   attempts to service any Sun hardware will be sued into bankruptcy.  The Service Industry

16   Association has lodged complaints with the Department of Justice's anti-trust division, as well as

17   the attorneys general of numerous states and of the European Union, and the SIA has also

18   requested congressional intervention to respond to Oracle's conduct in this regard.

19     Oracle's over-pled claims against FBSCGov are based on nothing more than three

20   emails.  First, in October 2011, an individual named Rob Muse allegedly sent credentials for

21   accessing Oracle's software database to one of FBSCGov's customers.  FBSCGov has no

22   relationship with Mr. Muse but he is believed to be or to have been an employee of Atlantix

23   Global, LLC, an independent contractor hired by FBSCGov to assist with its Sun support

24   contract.  Mr. Muse is also believed to be a former employee of defendant ServiceKey.

25   FBSCGov had no knowledge of Muse's prior relationship with ServiceKey.  FBSCGov had no

26   knowledge of any actions taken by Mr. Muse, as alleged in the Amended Complaint.  FBSCGov

27   severed its relationship with Atlantix Global after learning of the facts alleged in the Complaint

28   and the alleged conduct of Mr. Muse.  Despite the fact that FBSCGov had no role in this

1   transaction and no knowledge of it, Oracle contends that this constitutes copyright infringement

2   by FBSCGov.

3       The second basis for Oracle's over-pled Complaint is a September 2011 email from

4   FBSCGov employee Geoff Prosser to a customer at the FDA containing a link to a Sun software

5   patch.  This link, however, was provided to Mr. Prosser by Oracle's own customer service

6   department, willingly and with full knowledge of who Mr. Prosser worked for and why the patch

7   was being requested.  Despite Oracle's willing acquiescence to this transaction, Oracle maintains

8   that this too constitutes copyright infringement and a breach of contract.

9       The third and final basis for Oracle's eleven-count Complaint is a November 2011 email

10  from FBSCGov to one of its existing customers, stating that FBSCGov was able to service Sun

11  hardware.  Despite the fact that this communication was not contained in a public advertisement

12  and was communicated only to an existing customer, Oracle contends that this constitutes false

13  advertising under the Lanham Act.

14      In response to Oracle's Complaint, FBSCGov has asserted several affirmative defenses:

15  (1)     Copyright Misuse

16  (2)     Unclean Hands

17  (3)     Failure to Mitigate Damages

18  (4)     Waiver

19  (5)     Estoppel

20  (6)     Express or Implied License / Acquiescence

21  (7)     Contributory Negligence

22  (8)     Liability Is Attributable to the Conduct of Others

23  (9)     Setoff/Recoupment

24  (10)    Copyright Preemption

25  (11)    Cure of Any Contractual Breaches

26  (12)    The Copyrighted Works Purportedly Infringed Are Not Registered

27  (13)    The First Amendment Prohibits the Requested Injunctive Prior Restraint on

28

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Speech

### 3.    Factual Issues In Dispute

#### a.    Plaintiff Oracle's Statement

Based on Defendants' answers to the First Amended Complaint, there appear to be a substantial number of disputed factual issues, at least at this initial stage before discovery has occurred.  These issues include:

- Whether Service Key and DLT-FBS intentionally accessed Oracle's support websites, and the computers which host the information available on those websites, without authorization or by exceeding authorized access, and obtained information, including Oracle software, from Oracle's support websites;

- Whether Service Key and DLT-FBS knowingly, and with intent to defraud Oracle, accessed Oracle's support websites, and the computers which host the information available on those websites, without authorization or by exceeding authorized access, and by means of such conduct furthered the intended fraud and obtained one or more things of value, including, but not limited to, Oracle's software;

- The extent to which Defendants downloaded, copied, created derivative works from, and/or distributed Oracle's copyrighted software without authorization;

- The extent to which Defendants controlled, directed, intentionally encouraged, induced, or materially contributed to the copying, distribution, public display and/or creation of derivative works from Oracle's copyrighted software;

- Whether Service Key and DLT-FBS used Oracle software to support Oracle hardware other than hardware that Service Key or DLT-FBS used for their internal business operations and on which they had a current support contract from Oracle;

- Whether Service Key and DLT-FBS made Oracle's software available to unauthorized third parties;

- Whether Service Key and DLT-FBS knowingly and with the intent to defraud trafficked in passwords or similar information through which Oracle's computers and support websites may be accessed without authorization;

- Whether Defendants falsely represented to potential and/or actual customers that they could lawfully obtain copies of software patches and updates for their Oracle computer products from Defendants if they cancelled their support contracts with Oracle;

- Whether Defendants engaged in false, misleading, deceptive, and/or confusing advertising and promotion in interstate commerce in connection with their computer support products or services in order to gain unfair competitive advantage over Oracle;

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

- Whether Service Key and Vines falsely stated to potential and/or actual customers that Service Key had made a deal with Sun and/or Oracle that would allow Service Key to provide software maintenance support related to Solaris;

- Whether Service Key and DLT-FBS induced unauthorized third parties to access content available through Oracle's support websites;

- Whether Service Key and DLT-FBS shared passwords, account information, or other access credentials for Oracle's support websites with third parties who were not authorized to access those websites and/or the software available on those websites;

- Whether Defendants induced other Oracle customers or third parties to breach the Oracle.com Terms of Use and the MOS Terms of Use;

- Whether Service Key, when renewing certain technical support agreements with Oracle, induced Oracle into providing Service Key with access to MOS by failing to disclose that it planned to use the services it obtained from Oracle (including access to MOS) to provide unauthorized support to third parties;

- Whether DLT-FBS, when entering into the OPN Agreement with Oracle, induced Oracle into providing DLT-FBS with access to MOS by failing to disclose that it planned to use the services it obtained from Oracle (including access to MOS) to provide unauthorized support to third parties;

- The extent to which Defendants have improperly and unlawfully taken commercial advantage of Oracle's investments in its computers, support delivery infrastructure, and customer relationships;

- Whether Defendants interfered with Oracle's expectancy in continuing and advantageous economic relationships with current and prospective purchasers of support services from Oracle;

- The extent to which Defendants unjustly received benefits at the expense of Oracle through their wrongful conduct;

- The amount of money which Defendants received at Oracle's expense as a result of their misconduct; and

- The extent of damages, including punitive damage, owing to Oracle arising from the Defendants' conduct as alleged in the First Amended Complaint.

**b.     Defendants ServiceKey and Vines' Statement**

As set forth above, Oracle is seeking to bring wide-ranging claims based on only the thinnest of pretense.  Oracle has no evidence that Service Key committed any wrong-doing, and Oracle has refused to provide the information concerning the downloads it complains of that would assist Service Key determine if a former employee has been improperly using Service Key's login credentials.

In addition to the issues identified by Oracle, Service Key identifies the additional factual

issues in dispute, including:

- Whether Oracle is pursuing its claims against Defendants as part of an effort to kill competition in the marketplace for hardware support services for Sun and Oracle servers and storage systems.

- Whether Oracle's unclean hands preclude it from obtaining the relief it seeks.

- Whether Oracle failed to mitigate its damages.

- Whether Oracle voluntarily provided Service Key with access to its MOS system and copyrighted materials.

- Whether Service Key had an express or implied license.

- Whether Oracle delayed in bringing its claims to the detriment of Defendants.

- Whether Oracle's own negligence caused any damages to Oracle in whole or in part.

- Whether any improper access to the Oracle MOS systems and/or downloading of copyrighted Oracle materials under Service Key's login credentials was the act of third parties and not Service Key or its authorized representatives.

- Whether Service Key is entitled to any set-offs.

- Whether Oracle has valid copyrights on the materials it contends were improperly used or copied by Service Key and/or Vines.

- Whether Vines made the statements alleged in Oracle's First Amended Complaint.

### c.    Defendant FBSCGov's Statement

In addition to shoes issues set forth by Oracle above, there appear to be a substantial number of disputed factual issues, at least at this initial stage before discovery has occurred. These issues include:

- Whether FBSCGov accessed Oracle's support websites without authorization, when the first such access was performed by an employee of a contractor of FBSCGov without any knowledge on the part of FBSCGov and the second such access was performed by express invitation of Oracle's customer service employee;

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

- Whether it is possible for there to have been any reasonable reliance by Oracle on the allegedly false recitals in its adhesion contracts where those agreements were presented by Oracle to anyone in the world to accept without any further action on the part of Oracle;

- Whether Oracle's anti-competitive conduct constitutes a misuse of its copyrights;

- Whether Oracle has registered the copyrighted works alleged to have been infringed in this case;

- Whether Oracle is the author or owner of the copyrighted works alleged to have been infringed in this case;

- Whether an owner of Sun hardware that is covered by a warranty can employ an agent to assist with availing itself of the benefits due to it under the warranty;

- Whether an internal email between a company and a single customer can constitute "advertising" under the false advertising provisions of the Lanham Act; and

- Whether the alleged conduct, even if taken as true, has caused any harm whatsoever to Oracle.

### 4. Legal Issues in Dispute

#### a. Plaintiff Oracle's Statement

Based on Defendants' answers to the First Amended Complaint, there appear to be a number of disputed legal issues, at least at this initial stage before discovery has occurred. These issues include:

- Whether Defendants or any one of them have engaged in copyright infringement;

- Whether Service Key and/or DLT-FBS have violated the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030(a)(2)(C), (a)(4), & (a)(6)(A));

- Whether Defendants or any one of them have violated the Lanham Act (15 U.S.C. § 1125(a)(1)(B));

- Whether Service Key and/or DLT-FBS have breached contractual obligations to Oracle;

- Whether Defendants or any one of them have induced others to breach contractual obligations to Oracle;

- Whether Service Key fraudulently induced Oracle into entering into a contractual relationship and/or providing Service Key with access to Oracle's secure websites;

- Whether DLT-FBS fraudulently induced Oracle into entering into a contractual relationship and/or providing DLT-FBS with access to Oracle's secure websites;

- Whether Defendants or any one of them have violated California Business and Professions Code § 17200;

- Whether Defendants or any one of them have intentionally interfered with Oracle's prospective economic relationships with its customers;

- Whether Defendants or any one of them have been unjustly enriched, and in what amount, through the activities alleged in the First Amended Complaint;

- Whether Oracle is entitled to an accounting from Defendants or any one of them because of the activities alleged in the First Amended Complaint; and

- Whether Oracle has been damaged, and in what amount, by Defendants' activities alleged in the First Amended Complaint.

### b.      Defendants ServiceKey and Vines' Statement

In addition to the issues identified by Oracle, Service Key identifies additional legal issues in dispute, including:

- Whether Oracle has engaged in anti-competitive behavior in violation of state or federal law.

- Whether Oracle's unclean hands preclude it from obtaining the relief it seeks.

- Whether Oracle failed to mitigate its damages.

- Whether Service Key had an express or implied license.

- Whether Oracle delayed in bringing its claims to the detriment of Defendants.

- Whether Oracle's own negligence caused any damages to Oracle in whole or in part.

- Whether Service Key is entitled to any set-offs.

- Whether Oracle has valid copyrights on the materials it contends were improperly used or copied by Service Key and/or Vines.

- Whether Oracle has engaged in copyright misuse.

- Whether Oracle's claims are barred by the doctrines of waiver, estoppel and/or laches.

- Whether any of Oracle's claims are preempted under the Copyright Act.

- Whether the statements alleged to have been made by Vines were protected speech under the First Amendment of the United States Constitution.

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1          **c.      Defendant FBSCGov's Statement**

2              In addition to shoes issues set forth by Oracle above, there appear to be a number of

3    disputed legal issues, at least at this initial stage before discovery has occurred.  These issues

4    include:

5          • Whether FBSCGov is liable for contributory or vicarious copyright infringement
6              when it had no knowledge of the conduct of Mr. Muse and no ability to control
             his actions;

7          • Whether FBSCGov is liable for contributory or vicarious copyright infringement
             when Oracle gave it permission to provide a download link to its FDA customer;
8
9          • Whether Oracle's anti-competitive conduct constitutes a misuse of its copyrights;

10         • Whether the controlling authority in *Nosal* applies and whether the Computer
             Fraud and Abuse Act (18 U.S.C. §§ 1030(a)(2)(C), (a)(4), & (a)(6)(A)) applies to
             the conduct alleged by Oracle;
11
12         • Whether an internal email between a company and a single customer can
             constitute "advertising" under the false advertising provisions of the Lanham Act
             (15 U.S.C. § 1125(a)(1)(B));
13
14         • Whether FBSCGov's statements to a customer after that customer had long since
             cancelled its contract with Oracle and entered into a new contract with FBSCGov
15             can, as a matter of law, have retroactively induced that customer to breach
             contractual obligations to Oracle;

16         • Whether it is possible for there to have been any reasonable reliance by Oracle on
             the allegedly false recitals in its adhesion contracts where those agreements were
17             presented by Oracle to anyone in the world to accept without any further action on
             the part of Oracle;
18
19         • Whether Oracle can, as a matter of law, transform any breach of contract claim
             into a fraudulent inducement claim by simply adding recitals and warranties to its
20             adhesion contract that state nothing more than that the contracting party intends to
             abide by the terms of the contract; and

21         • Whether the conduct alleged in the Amended Complaint, even if taken as true, has
             caused any harm whatsoever to Oracle.
22

23         **5.      Motions**

24             *Pending Motion*:  DLT-FBS filed a motion for partial dismissal of Oracle's Complaint on

25   March 29, 2012 (Docket #11).  That motion was mooted when Oracle filed an Amended

26   Complaint on April 19, 2012 (Docket #17).  DLT-FBS filed a motion for partial dismissal of

27   Oracle's Amended Complaint on May 3, 2012 (Docket #19).  That motion is fully briefed and is

28

under submission.

                        **a.**       **Plaintiff Oracle's Statement Regarding Expected Motions**

*Motion for Preservation Order*:  Oracle anticipates that it may need to file a motion for a preservation order relating to potentially relevant evidence in the possession, custody, or control of Defendants, particularly with respect to electronically stored information, if the parties are unable to reach agreement as to these issues.

*Discovery Motions*:  Oracle anticipates motion practice related to discovery based on Defendants' statements during the Rule 26(f) conference.  As discussed more in part 9(d), below, Defendants have not agreed to produce documents in a standard production format, and have not specified how they will produce documents at all.

*Summary Judgment Motions:* Oracle will evaluate whether to file a motion for summary judgment or partial summary judgment after the parties have substantially completed discovery.

                        **b.**       **Defendants ServiceKey and Vines' Statement Regarding Expected Motions**

Service Key does not believe that a preservation order is necessary or appropriate. Service Key has already assured Oracle that it is taking all due measures to preserve documents relating to the claims and defenses in this action.  If the Court does enter any kind of preservation order, Service Key and Vines ask that it place an equal burden on Oracle to preserve documents and provide information concerning its steps to do so.

Service Key and Vines believe it is likely that they will have to seek one or more motions for protective orders concerning discovery.  Oracle has indicated that it expects to pursue this litigation, which involves small companies and an individual, in the same manner that it has litigated huge matters against competitors such as SAP.  In a similar case brought by Oracle against an independent service provider in the District of Nevada, Oracle served at least 275 subpoenas on the defendant's customers.  *See Oracle USA, Inc. v. Rimini Street, Inc.*, D. Nev. Case No. 2:10-CV-0106 (Docket No. 216, Joint Case Management Statement).  Service Key is a small company and simply cannot withstand the onslaught of discovery Oracle apparently

intends to bring.

Beyond possible discovery motions, Service Key and Vines may bring dispositive motions at the appropriate time.

### c.  Defendant FBSCGov's Statement Regarding Expected Motions

*Discovery Motions*:  Based on Oracle's statements at the Rule 26(f) conference that it anticipates broad third party discovery aimed at FBSCGov's customers, FBSCGov anticipates filing a motion for protective order seeking to limit the scope of Oracle's contemplated third party discovery, which threatens to interfere with FBSCGov's business relations if no agreement can be reached on this issue.  Also, due to Oracle's statements at the Rule 26(f) conference that it plans on insisting on the most expensive modes of ESI production in this case, FBSCGov anticipates filing a protective order seeking to either limit the format of ESI production or for a shifting of these excessive costs to Oracle if no agreement can be reached on this issue.

*Summary Judgment Motions:* FBSCGov will evaluate whether to file a motion for summary judgment or partial summary judgment after the parties have substantially completed discovery.

### 6.  Amendment of Pleadings

Oracle filed the operative First Amended Complaint on April 19, 2012.  Service Key and DLT-FBS answered on May 7, 2012, and Vines answered on May 18, 2012.

### a.  Plaintiff Oracle's Statement

Oracle has not yet determined whether any further amendment to add parties or claims will be necessary or appropriate.  Oracle is informed and believes that there may be additional parties involved in the acts alleged in its complaint, but their identities have been concealed from Oracle.  After discovery, which is necessary to identify the names and capacities of these parties, Oracle will evaluate whether it is necessary to amend its complaint to identify them.

### b.  Defendants ServiceKey and Vines' Statement

Service Key and Vines have filed answers to the First Amended Complaint.  They have

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

not determined whether any amendments to the answers may be necessary in the future.

### c.      Defendant FBSCGov's Statement

Pending further discovery, if supported by sufficient evidence, FBSCGov may seek to amend its pleadings to add an anti-trust counterclaim against Oracle based on its anti-competitive practices surrounding its warranty and service contract policies.

### 7.      Evidence Preservation

### a.      Oracle's Statement

Oracle has implemented an appropriate litigation hold for its custodians and computer servers that are likely to have information that may be relevant to this dispute.  Oracle has requested in writing that Defendants take appropriate steps to adequately preserve evidence relevant to the issues reasonably evident in this action, including interdiction of any document-destruction program and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.  Defendant ServiceKey did not provide a written response to Oracle's request for these specific preservation methods, but instead in phone conversations stated generally that it objected to taking those steps.  Further, during the Rule 26(f) conference, Defendants made the conclusory statement that they have put in place appropriate legal holds, but they did not provide any specific information regarding actions taken by them to preserve relevant documents or data. Under the circumstances, it appears that neither Defendant has taken adequate steps to preserve information for discovery.  Many of the allegations in the First Amended Complaint relate to improper downloading of Oracle software and support materials.  Defendants' server logs likely tracked that downloading activity.  If Defendants failed to take affirmative steps to stop those logs from being overwritten, then that valuable evidence may already have been destroyed. Likewise, Defendants have provided no explanation of any steps they took to stop their employees from accidentally or intentionally destroying electronic or hardcopy evidence.  If, as appears to be the case, Defendants' legal holds are inadequate or non-existent, Oracle will seek appropriate relief with the Court.

### b.      Defendants ServiceKey and Vines' Statement

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1

2
            Service Key and Oracle exchanged correspondence prior to the commencement of

3
discovery in this action.  Oracle made hugely onerous and expensive demands on Service Key,

4
and Oracle was unwilling to engage in any meaningful discussion of its demands in light of

5
Service Key's small size and limited financial resources.  In turn, Oracle flatly refused to provide

6
any of the information requested by Service Key.  In addition to refusing to provide information

7
concerning the alleged downloads from Oracle's MOS system under Service Key's login

8
credentials, Oracle also refused to provide any information concerning a threatening email

9
received by Service Key on its web page contact form that purported to be from Oracle's CEO,

10
but in fact appears to have originated from the office of Oracle's outside counsel, Bingham

11
McCutcheon.  Despite repeated requests, Oracle has never responded substantively to Service

12
Key's inquiries about this email and does not appear to have done any investigation.

13
            When the Parties discussed evidence preservation during their Rule 16 conference,

14
Service Key told Oracle that evidence preservation should be both in proportion to the scale of

15
the claims at issue, and that it should be mutual.  Oracle did not object to these suggestions, nor

16
did it make any suggestions during the Rule 16 conference or subsequently as to what Oracle

17
contended would be an appropriate approach to evidence preservation.  Service Key would

18
request that any evidence preservation orders also apply to the Bingham firm with respect to this

19
potentially improper contact with Service Key.

20
                        c.      Defendant FBSCGov's Statement

21
            FBSCGov has implemented an appropriate litigation hold for its custodians and computer

22
servers that are likely to have information that may be relevant to this dispute and has repeatedly

23
informed Oracle of this fact.  Yet, from the very moment the Complaint was filed in this case,

24
Oracle has been determined to build a case around this issue.  After the Complaint was filed, a

25
courtesy copy of the Complaint was sent to the Defendants, along with a letter demanding

26
preservation.  Then, during the very first phone call between counsel for Oracle and counsel for

27
FBSCGov in this case (to request a modest extension of time to file a responsive pleading), the

28
first comment from Oracle's counsel—without any reason or basis—was that Oracle was

concerned about document preservation.  This sentiment was echoed at the parties' Rule 26 conference and is again echoed in Oracle's written statement above.

Based on these communications, it is clear that Oracle is already hard at work to create a narrative of spoliation regardless of the true facts of the case.  For its part, Oracle has represented to opposing counsel nothing more than what counsel for the Defendants have represented to Oracle:  that appropriate litigation hold measures have been taken.  Yet, during the recent conference and also in this report, Oracle asserts without any basis that its unarticulated measures are somehow more appropriate than the Defendants' and that the Defendants' measures are somehow insufficient.  FBSCGov believes that this is simply another piece of Oracle's strategy to crush its competition with litigation costs because, here, Oracle is effectively sending a message to the Defendants that they can either hire an over-priced computer forensics expert to testify as to their preservation efforts or face an endless series of discovery motions accusing them of failing to preserve electronically stored information.  FBSCGov therefore respectfully submits that any potential preservation issues that may arise should be submitted to the Court for consideration once the submitting party has a factual basis for asserting that an issue has arisen or is likely to arise.

### 8. Disclosures

The parties exchanged their initial disclosures under Rule 26(a) on July 13, 2012.

### 9. Discovery

#### a. Discovery Taken To Date

Oracle served a third-party Subpoena to Produce Documents on June 26, 2012, on Avnet, Inc., a partner of ServiceKey's.  Oracle served Requests for Production on Defendants on July 5, 2012.

#### b. Rule 26(f)(3)(A): Initial Disclosures

See Section 8 above.

#### c. Rule 26(f)(3)(B): The Scope Of Anticipated Discovery And When It Should Be Completed

1      **(1)      Oracle's Position**

2            This case is complex, and involves a scheme of unlawful computer access, sharing of

3      access credentials, and downloading and distributing works that the Defendants then used to

4      compete against Oracle for its own customers.  To prove its claims, Oracle will need discovery

5      from the Defendants and from their customers and partners, as well as other third parties.

6            Discovery from the Defendants will involve numerous aspects of the operations of

7      ServiceKey and DLT-FBS, and will involve multiple individuals in various roles within those

8      companies including information technology (responsible for building and maintaining the

9      servers and network used to access Oracle's systems and store and distribute the resulting

10     downloaded material); the sales and marketing departments (who used the downloaded materials

11     or the availability of them to lure support customers); support engineers (who stored, viewed,

12     used and provided the downloaded materials and/or access credentials directly to customers);

13     support developers (who may have used the downloaded materials to prepare derivative works);

14     finance personnel (who may have monitored and commented on the success or failure

15     Defendants' efforts to sell support for Oracle products); and the executive and/or management

16     team at each ServiceKey and DLT-FBS.  This discovery will relate, in part, to the computer

17     systems used to access Oracle's software and support materials, and also to track the requests

18     received by Defendants from their customers for support for Oracle products, and the actions

19     taken by Defendants in response, including any Oracle software or access credentials that were

20     provided to the customers or partners.

21           Discovery must also be taken from Defendants' customers who received support for

22     Oracle products from Defendants to determine the scope of the copyright infringement and other

23     unlawful activity involved in that support.  Oracle also expects to take discovery of ServiceKey

24     and DLT-FBS's partners, as both companies provide support services by working in conjunction

25     with partner companies.  It will take time and effort to identify all of the customers and partners

26     involved and to take the document and deposition discovery to which Oracle is entitled to gain

27     evidence for its claims.  Further, both ServiceKey and DLT-FBS have pled affirmative defenses

28     (such as implied license) that allege that Oracle tacitly condoned Defendants' conduct as part of

an alleged industry practice of providing software updates to customers who were not on Oracle support. That "industry practice" defense is legally meritless, but as both Defendants have invoked it, Oracle will need to take discovery of other third parties to develop evidence to refute that defense.

In general, Oracle will need to take discovery from Defendants and third parties regarding their accessing of Oracle's secure websites; their use of Oracle's software and support materials; their provisioning of Oracle access credentials, software, and support materials to their customers or partners; their communications with prospective and actual customers regarding their ability to provide support, upgrades, patches, and fixes for Oracle's Solaris software; and the identity of their customers for which they provide Solaris support. In addition, Oracle will need to seek discovery from those Solaris support customers and partners regarding their relationship with Defendants; their access of Oracle's secure support websites; what Solaris patches and upgrades they have obtained and how; what representations were made to them by Defendants regarding Defendants' ability to provide Solaris software support; and whether those customers terminated a previous support relationship with Oracle and the circumstances involved.

If the Court grants Oracle's request for a trial date in August, 2013, Oracle believes it can complete the necessary fact discovery according to the schedule proposed below.

### (2)    Defendants ServiceKey and Vines' Statement

This matter is not complex and in no way justifies the broad-ranging, burdensome and expensive discovery process Oracle obviously envisions. The Court should not allow Oracle to destroy Service Key by disrupting its customer relationships and forcing it to spend vast sums defending itself before Oracle makes a good faith showing that there is any substance to its claims.

In the event this case proceeds and Service Key is not first driven out of business, Service Key and Vines anticipate that they will have to engage in discovery to establish that Oracle's claims are part of a strategic effort to destroy independent service providers who compete in the

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

market for hardware support.

### (3)   Defendant FBSCGov's Statement

This case is hardly as complex as Oracle's comments above imply, and those comments speak volumes about Oracle's strategy to use the discovery process to interfere with the Defendants' business relations.  Oracle states that it will need discovery from the Defendants and *all* of their customers.  Of course, Oracle's discovery should be limited to those customers of the Defendants who have hired the Defendants to assist with the maintenance of only Sun hardware, but nowhere has Oracle acknowledged this important limitation.  In addition, for purposes of the copyright infringement and other claims related to the alleged downloading of content from the Oracle site for the benefit of consumers, Oracle's discovery efforts should be limited to only those of the Defendants' customers who actually received such downloaded content (as would be revealed by discovery between the parties to this case, without involving third parties), and the scope of discovery on those parties should be limited to that claim.  For purposes of Oracle's inducing breach of contract claim, third party discovery should be limited to only those customers of the Defendants who formerly had a service contract with Oracle that was terminated immediately prior to that customer entering into a contract with one of the Defendants, and the scope of discovery on those parties should be limited to that claim.  And for purposes of Oracle's tortious interference with prospective economic relations claim, third party discovery should be limited to only those potential customers with whom Oracle had a concrete, specific, and identifiable business expectancy, and the scope of discovery should be limited to that claim.

Regarding the scope of discovery among the parties to this case, although Oracle may be correct in stating that it might involve "multiple individuals," Oracle's statements imply that this list is lengthy.  To the contrary, the total number of employees of both Defendants is likely in the single digits, or perhaps slightly more.  Unlike Oracle, the Defendant companies are both quite small in terms of the number of their employees.  Regarding Oracle's comment that both Defendants had pled affirmative defenses "that allege that Oracle tacitly condoned Defendants'

21

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

conduct as part of an alleged industry practice of providing software updates to customers who were not on Oracle support," this defense appears nowhere in either Defendant's Answer, and there is no need for the extensive discovery into wide-ranging "industry practices" that Oracle is already apparently contemplating.

In general, if this case were being litigated with the discovery phase being proportionate to the nature of the claims and defenses actually pled and the potential damages at issue, discovery could be completed in a couple months with almost no third party discovery needed. However, Oracle has made it clear that third party discovery and countless hours of deposition time are additional aspects to its strategy to drive the Defendants out of business with exorbitant legal fees.

**d.    Rule 26(f)(3)(C): Issues About Electronically Stored Information ("ESI")**

**(1)    Oracle's Proposal On ESI**

Oracle proposes that the parties should agree to produce ESI as .tiff files with the following additional metadata fields: (1) Beginning and Ending Bates Number, (2) Beginning and Ending Attachment Number, (3) Document Type, (4) Date Sent and Received, (5) Date Modified, (6) Date Created, (7) Custodian, (8) Author, (9) Recipient, (10) CC, (11) BCC, (12) Title, and (13) Filename.  Oracle further proposes that the Parties agree that Excel spreadsheets, and other materials that require native format to be reasonably usable, will be produced in native format.

During the Rule 26(f) conference, Defendants did not agree to produce documents in the above format with metadata fields.  Defendants took the position that doing so was too burdensome.  When questioned, Defendants were unable to make any representations concerning the format in which they would be willing to produce documents.  This was unacceptable, as the Rules plainly require Defendants to produce documents, and one of the subjects the parties were supposed to be prepared to address in the Rule 26(f) conference was the format of document production.

Oracle is willing to negotiate over the precise form of document production to arrive at an even-handed procedure that preserves relevant metadata. Regardless of the precise form of document production, Defendants must comply with their discovery requests and produce responsive documents in a manner that complies with the Rules.

### (2)   Defendants ServiceKey and Vines' Statement

The parties briefly discussed Oracle's proposal that Service Key and Vines produce documents in electronic format with metadata fields during their Rule 26(f) conference. Oracle clarified that with the exception of wanting spreadsheets in native format, it was not interested in getting other documents in native form. Instead, Oracle made it clear that what it really wanted was for the Defendants to bear the cost of coding documents for Oracle's litigation database. Service Key informed Oracle that as a small company with only a few employees and limited financial resources, Service Key could afford to produce documents in the manner requested by Oracle. Oracle responded that it would review these issues with its litigation technical support personnel, and that the parties could meet and confer on the manner of production after Oracle served its requests for production. Therefore, Oracle's statement above that Service Key's position is "unacceptable" makes no sense as Oracle has not responded to Service Key's cost concerns, proposed any viable alternatives, or proposed any authority for making a small company pay for the discovery costs of a huge company such as Oracle.

### (3)   Defendant DLT-FBS's Statement

Oracle's comments above about the parties' discussion of this issue during the Rule 26(f) conference are disingenuous and incomplete. After Oracle proposed its preferred methodology, counsel for the Defendants noted that, although that type of ESI production may be appropriate in highly complex cases involving parties that all have significant resources, the Defendants did not see this as such a case and the Defendants believed that the vendor costs associated with such a production would likely exceed the resources of the Defendants in this case. Oracle then suggested that the parties could revisit the issue once Oracle's document requests had been served, and Oracle agreed to defer until that time. The Defendants also suggested that—because

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

Oracle's proposed production database parameters had little to do with preserving native files and metadata evidence, and more to do with adding fields that will make it easier for Oracle's attorneys to search through the documents that are produced—perhaps Oracle could shoulder the additional costs required to produce in this format.  At no time did the Defendants categorically refuse to comply with Oracle's proposal, and at no time did the Defendants refuse to specify a format for production.

As articulated during the Rule 26(f) conference FBSCGov believes that this case is not as complex or document intensive as to require the type of production that Oracle has requested, for two reasons.  First, if the parties can contain their requests within the bounds of relevance and not embark on fishing expeditions or attempts to burden third party customers, the total volume of documentary and electronic evidence should be sufficiently small to render review manageable without the aid of sophisticated search algorithms.  Second, the methodology proposed by Oracle, by its very nature, requires all parties to hire a professional e-discovery vendor, which will likely cost thousands or tens of thousands of dollars.  Given that Oracle's damages in this case—if any—are believed to be only nominal, the amount in controversy cautions against such a scorched earth approach.

FBSCGov therefore proposes the following:  all documents and emails can be produced in PDF form (OCR searchable where the original/native document was so searchable), with bates numbering.  If any party believes that the authenticity of an electronic document is genuinely in dispute or that the metadata attached to that electronic document is otherwise relevant to a material issue in the case that cannot be discovered through other less burdensome means, the corresponding file will also be produced in native form.  *See* Fed. R. Civ. P. 26(b)(2). Alternately, if Oracle so desires, FBSCGov would be willing to produce all documents and ESI in accordance with Oracle's preferred methodology, provided that Oracle pays all costs associated with compiling those document productions to a vendor of FBSCGov's choosing or over which Oracle exercises no control.

1          **e.      Rule 26(f)(3)(D): Claims Of Privilege Or Protection**

2          The parties agree that if information subject to a claim of attorney-client privilege,

3   attorney work product or any other ground on which production of such information should not

4   be made to any party is nevertheless inadvertently produced to a party or parties, any applicable

5   privilege or protection is not waived, and Federal Rule of Evidence 502(b) and Federal Rule of

6   Civil Procedure 26(b)(5)(B) shall apply.

7          The parties have expressly stipulated out of the privilege log requirements stated in

8   *Burlington Northern v. District Court*, 408 F.3d 1142, 1149 (9th Cir. 2005), and therefore agree

9   that the service of a privilege log within 45 days after the production of the associated documents

10  is sufficient to preserve the party's privilege objections.  The parties agree that communications

11  with counsel of record need not be logged.

12         **f.      Rule 26(f)(3)(E): Changes To Discovery Limits**

13         **Interrogatories**:  At this time, the parties agree that the presumptive limit stated in Fed.

14  R. Civ. P. 33 should apply, i.e., a party may serve on any other party no more than 25 written

15  interrogatories.

16         **Requests for Production and Requests for Admission**:  At this time, the parties agree

17  that the presumption of no limit on Requests for Production or Requests for Admission should

18  apply.

19         The parties reserve the right to seek changes to the above agreements for good cause as

20  circumstances may warrant.

21         **Depositions**:  The parties disagree concerning deposition discovery, as set forth below:

22                  **(1)      Oracle's Proposal On Depositions**

23         Oracle proposes to take 70 hours of depositions from each of ServiceKey and DLT-FBS,

24  as well as 70 hours of depositions of third parties.

25         *Hours-based limits*:  Oracle proposes an hours-based limit on depositions, rather than a

26  numbers-based limit, with the presumption that no individual deponent will be deposed for more

27  than seven hours absent good cause.  Using an hours-based limit provides flexibility to keep

28

depositions short where the deponent's knowledge is limited, or to take a full day of deposition where the witness's knowledge warrants that.  Particularly for third-party depositions, it is likely that they would take less than a full day.  Setting deposition limits in terms of hours encourages the efficient use of deposition time, and discourages questioning any individual witness longer than necessary.

*Party depositions*:  Oracle currently estimates a need for approximately 70 hours of depositions from each of Service Key and DLT-FBS, to seek information regarding their sales and marketing, executive, customer support, information technology, and other operations relevant to the claims in this case.  Rule 30 provides a default limit of 10 depositions at 7 hours each (for a total of 70 hours).  Oracle's proposal requests doubling that limit, given the complexity of this case and the fact that there do not yet appear to be overlapping employees between ServiceKey and DLT-FBS – and indeed, the two companies have taken the position that they do not act together.  As to Defendant Angela Vines, Oracle requests a two-day deposition (for a total of 14 hours), rather than the presumptive limit of seven hours.  Vines is both a Defendant in her own right and the President and founder of ServiceKey.  She appears to be the central architect of ServiceKey's illegal business model, and her knowledge likely extends to all areas of the company's conduct.  Given her central role in the case, there is good cause for her to have a two-day deposition.

*Third party depositions*:  Oracle requests 70 hours of depositions of third parties, including ServiceKey and DLT-FBS's customers and partners, as well as other participants in the industry.  Oracle intends to take these depositions to determine the scope of infringement in the support services that ServiceKey and DLT-FBS provide, as well as the representations that Defendants make concerning that support in violation of the Lanham Act and other legal requirements, and to develop evidence concerning Defendants' industry practice defense.  Oracle expects each of these third-party depositions to take less than one day.  Oracle may need more than one deposition from a given third party to prove its claims.  For example, Defendants may have communicated with executives regarding their ability to provide support for Oracle

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

hardware or software, but communicated with a different set of people when actually providing credentials to access Oracle's websites or copies of Oracle's Software and Support Materials to the customer once it had entered into a support agreement with one of the Defendants. For now, Oracle estimates the need for 70 hours of depositions from these customers and other third parties, in addition to the party depositions discussed above, but reserves its right to seek an expanded limit as the case progresses and the facts warrant.

### (2) Defendants ServiceKey and Vines' Statement

Service Key and Vines believe that the limits on depositions set forth in Federal Rule of Civil Procedure 30(a) should apply. This matter is not the complex litigation concerning an "illegal business model" that Oracle has alleged. Even the allegations in Oracle's First Amended Complaint demonstrate that Oracle has identified only a few downloads of materials from the MOS system that it *believes may* be improper, and that these downloads involved a *former* Service Key employee.

In the event that the Court agrees to allow Vines to be deposed for two full days, Service Key requests that it also have up to two full days of deposition with the Oracle executive with authority over Oracle's changes in customer support policies and practices since the Sun Microsystems acquisition.

### (3) Defendant FBSCGov's Statement

FSBCGov believes that the presumptive limit stated in Fed. R. Civ. P. 30 should apply, i.e., a party may not take a total of more than ten depositions, may not depose the same party more than once, and must limit a deposition to seven hours in duration.

### g. Rule 26(f)(3)(F): Any Other Orders Under Rules 26(c), 16(b), or 16(c)

The parties agree that a protective order is appropriate in this case to protect the confidentiality of documents and other discovery materials. The parties are currently negotiating the terms of such a proposed protective order. The parties disagree on whether there should be a protective order in this case limiting third party discovery. The parties set forth their respective

**RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

positions below.

### (1)   Oracle's Statement

The Court should not impose a protective order limiting the scope of third party discovery as Defendants propose below.  Oracle has a legitimate need to take discovery directed at Defendants' customers and partners, as well as other third parties with relevant information. The limitations that Defendants propose have no basis in the Federal Rules and appear calculated to hamstring Oracle's ability to develop evidence to prove its case.  As one example, DLT-FBS states that for purposes of copyright infringement, Oracle's third party discovery should be limited to those customers who received downloaded content from Oracle's support website, and DLT-FBS says the identity of those customers will be revealed by discovery directed at the parties.  However, Oracle's copyright infringement claim is not limited to downloading; DLT-FBS's proposed limitation is simply arbitrary.  Moreover, discovery directed to third parties is likely necessary to determine which third parties were recipients of copyrighted software and support materials, which may not be revealed by documents that Defendants produce because, among other reasons, of evidence preservation issues.  Indeed, for many of Oracle's claims – such as its false advertising claim – third party discovery is necessary to determine the scope of Defendants' illegal conduct.

To date, Oracle has served *one* subpoena on a third party, and none of the Defendants objected to it.  There is no basis for Defendants' speculation that Oracle intends to serve unnecessary and burdensome third party discovery.  Oracle intends to take the discovery that is necessary to prove its claims.  There is also no basis to preemptively and unfairly limit Oracle's ability to subpoena third parties, without a noticed motion or any factual support, as Defendants ask the Court to do in this Case Management Conference statement.

### (2)   Defendants ServiceKey and Vines' Statement

Service Key and Vines agree with the limits on third party discovery proposed by FBSCGov below.

### (3)   Defendant FBSCGov's Statement

FSBCGov requests that a protective order be issued limiting the scope of third party discovery, as articulated in Paragraph 8(c)(3), above.  Specifically, Oracle's discovery should be limited to those customers of the Defendants who have hired the Defendants to assist with the maintenance of only Sun hardware.  In addition, for purposes of the copyright infringement and other claims related to the alleged downloading of content from the Oracle site for the benefit of consumers, Oracle's discovery efforts should be limited to only those of the Defendants' customers who actually received such downloaded content (as will be revealed by discovery between the parties to this case, without involving third parties), and the scope of discovery on those parties should be limited to that claim.  For purposes of Oracle's inducing breach of contract claim, third party discovery should be limited to only those customers of the Defendants who formerly had a service contract with Oracle that was terminated immediately prior to that customer entering into a contract with one of the Defendants, and the scope of discovery on those parties should be limited to that claim.  And for purposes of Oracle's tortious interference with prospective economic relations claim, third party discovery should be limited to only those potential customers with whom Oracle had a concrete, specific, and identifiable business expectancy, and the scope of discovery should be limited to that claim.

### h.      Rule 45 Subpoenas

The parties disagree concerning the necessary notice that must be provided to other parties in advance of serving a third party with a document subpoena pursuant to Fed. R. Civ. P. 45, as set forth below:

### (1)      Oracle's Statement

Federal Rule of Civil Procedure 45(b)(1) states that "before" a party serves a document subpoena served on a third party, "a notice must be served on each party."  In the one subpoena that Oracle has served to date, Oracle served notice on the Defendants the calendar day before it served the subpoena on the third party.  That plainly complies with Rule 45, and DLT-FBS is incorrect to suggest that Oracle gave notice "immediately" before it served the subpoena.

The Court should reject Defendants' proposal for a 48-hour waiting period between when

Oracle gives notice to the Defendants that it plans to serve a subpoena and when Oracle may proceed with serving the subpoena.  (Defendants characterize their proposal as a neutral proposal that would apply to all parties' subpoenas, but since Defendants are trying to limit the scope of third party discovery generally, their proposal would largely operate only to Oracle's prejudice.)  Creating an additional waiting period beyond what Rule 45 provides for would make every document subpoena take longer, with no corresponding benefit.  DLT-FBS states that a waiting period would allow the other parties to serve objections to the subpoena.  But even if Defendants had standing to object to a subpoena that is not directed to them – which Oracle doubts – there is no reason why they would need to object to the subpoena *before* it is served.  They can object after it is served, like the subpoenaed party can.  DLT-FBS also states that a waiting period would allow Defendants to add their own document requests to the subpoena.  That argument is disingenuous, however, because Defendants have made clear their desire to limit third party discovery in this case, not expand it.  Further, Oracle's serving a subpoena does not prevent Defendants from also serving a subpoena, if they choose to do so.

Serving a document subpoena is simply the initiating step in third party discovery.  The actual deadline to produce documents or serve objections comes afterwards.  Defendants' proposal for a 48-hour waiting period before Oracle can take this initiating step in third party document discovery will simply make discovery take longer.  The Court should apply Rule 45 as written.

### (2)    Defendants ServiceKey and Vines' Statement

Service Key and Vines agree with the proposal regarding notice of third party subpoenas by FBSCGov below.

### (3)    Defendant FBSCGov's Statement

Oracle believes that the requirement in Fed. R. Civ. P. 45(b)(1)—which provides that the other parties in a case must receive prior notice of a third party subpoena when the subpoena requests the production of documents or electronically stored information from a third party—

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT

allows notice to be provided immediately before a subpoena is served.  FBSCGov believes that the purpose of this prior notice requirement is to alleviate the burden on third parties by allowing other parties the opportunity to object or to include a demand for additional documents before subjecting the third party to the burden of responding.  *See* Fed. R. Civ. P. 45 & advisory committee's note (1991).  Given Oracle's representations about the vast scope of its anticipated third party discovery—particularly focused on the business partners of the Defendants— FBSCGov requests that parties should not be allowed to serve a document subpoena on a third party without giving the other parties a reasonable opportunity to respond before the subpoena is served.  Specifically, FBSCGov requests that the parties should allow a minimum of 48 hours to pass between notice to the other parties and service on a third party.

### 10.   Class Actions

This case is not a class action.

### 11.   Related Cases

There are no known related cases.

### 12.   Relief

Oracle seeks injunctive relief, return of stolen property, impoundment and/or destruction of all infringing materials, damages to be proven at trial, restitution, disgorgement, punitive damages, prejudgment interest, an accounting, fees and costs.  Oracle is currently unaware of the amount of damages.  Because Oracle still does not know the extent to which Defendants have used illegally downloaded material for competitive gain, Oracle expects to conduct discovery to determine these facts and calculate its damages accordingly.

Service Key intends to seek recovery of its attorney's fees and costs.

### 13.   Settlement and ADR

The parties have agreed to conduct an early settlement conference with a Magistrate Judge within 90 days after the July 26 Case Management Conference.  On July 5, 2012, the parties filed with the Court a Notice of Need for ADR Phone Conference, alerting the Court to this agreement to conduct an early settlement conference.

1   **14.   Consent To A Magistrate For All Purposes**

2   Oracle consented to a Magistrate Judge.  Service Key declined to consent to this case

3   being tried before a Magistrate Judge.

4   **15.   Other References**

5   This case is not suitable for reference to binding arbitration, a special master, or the

6   Judicial Panel on Multidistrict Litigation.

7   **16.   Narrowing of Issues**

8   **a.   Oracle's Statement**

9   Oracle respectfully submits that it is premature to narrow issues, since discovery has yet

10   to begin in earnest, and Oracle has not yet been able to determine the extent of Defendants' false

11   advertising, illegal access of Oracle's computers, illegal taking and misuse of Oracle's

12   intellectual property, and other activities alleged in the First Amended Complaint.

13   **b.   Defendants ServiceKey and Vines' Statement**

14   Service Key and Vines believe that the issues in this case are likely to be relatively

15   narrow and that discovery should be focused and tailored to the specific facts alleged in Oracle's

16   First Amended Complaint and the defenses asserted by the Defendants.

17   **c.   Defendant FBSCGov's Statement**

18   FBSCGov believes that the issues could be narrowed considerably, but Oracle is not

19   likely to consent to doing so.  This is essentially a two-count case involving a breach of contract

20   claim and a copyright infringement claims.  The rest of Oracle's over-pled complaint consists

21   entirely of duplicative legal theories and claims involving duplicative damages.

22   **17.   Expedited Schedule**

23   This case is not suitable for handling under the Expedited Trial Procedure of General

24   Order 64.

25   **18.   Scheduling**

26   **a.   Oracle's Proposed Case Schedule**

27   Oracle respectfully submits that this case could be ready for trial within a year, with fact

28

discovery to be completed within six months.  Accordingly, Oracle proposes the following

schedule:

| | |
|---|---|
| Initial Case Management Conference | 7/26/2012 |
| Close of Fact discovery | 3/29/2013 |
| Expert reports due for issues on which | |
| a party bears the burden of proof | 5/1/2013 |
| Rebuttal expert reports due | 6/5/2013 |
| Expert discovery cut-off | 7/3/2013 |
| Dispositive Motion Cut-off | 7/31/2013 |
| Pretrial Conference | 9/25/2013 |
| Trial | 10/2/2013 |

**b.      Defendants ServiceKey and Vines' Proposed Case Schedule**

| | |
|---|---|
| Initial Disclosures | 7/13/2012 |
| Initial Case Management Conference | 7/26/2012 |
| Last day to amend pleadings | 10/1/2012 |
| Close of Fact discovery | 1/25/2013 |
| Expert reports due for issues on which | |
| a party bears the burden of proof | 2/11/2013 |
| Rebuttal expert reports due | 3/4/2013 |
| Expert discovery cut-off | 3/29/2013 |
| Dispositive Motion Cut-off | 4/26/2013 |
| Pretrial Conference | 6/12/2013 |
| Trial | 6/24/2013 |

**c.      Defendant FBSCGov's Proposed Case Schedule**

FBSC generally agrees with Oracle that this case could be ready for trial within a year,

with fact discovery to be completed within six months.  However, FBSCGov respectfully

submits that judicial economy and economy with respect to the parties' resources would be better

served by bifurcating liability and damages issues.  In cases such as this one, expert discovery should only concern issues of damages.  Therefore, unless the other parties believe experts are necessary for the liability phase, FBSCGov respectfully requests that the deadline for dispositive motions be placed approximately 30-45 days after the close of fact discovery, and that opening expert reports not be due until 45-60 days after all dispositive motions as to liability have been resolved.

### 19.    Trial

All parties have requested a trial by jury on all issues so triable. Although it is difficult to estimate the length of trial before discovery has been conducted, at this time the parties estimate a trial should take no more than two weeks.

#### a.    Defendant FBSCGov's Statement

FBSC respectfully submits that the trial of this matter should take no more than one week.

### 20.    Disclosure Of Non-Party Interested Entities Or Persons

#### a.    Oracle's Disclosure

Oracle filed its Certification of Interested Entities or Persons pursuant to Fed R. Civ. P. 7.1 and Civil Local Rule 3-16 on February 17, 2012 (Docket #3).  In it, Oracle disclosed that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or a party that could be substantially effected by the outcome of this proceeding:

1.    All shareholders of publicly held Oracle Corporation.

2.    The members of the Board of Directors of Oracle Corporation: Larry Ellison; Jeff Henley; Safra Catz; Mark Hurd; Dr. Michael J. Boskin; Jeffrey Berg; George Conrades; Donald L. Lucas; Hector Garcia-Molina; H. Raymond Bingham; Naomi O. Seligman; and Bruce Chizen.

Oracle further disclosed that Oracle Corporation is a publicly held corporation that

1
2
3

wholly owns, through one or more of its non-publicly held wholly-owned subsidiaries, plaintiff Oracle America, Inc.; and that no other publicly held corporation owns 10% or more of the stock in the plaintiff.

4
5

### b.      Defendants ServiceKey and Vines' Disclosures

6
7

Service Key filed its Disclosure Statement and Certificate of Interested Parties on May 3, 2012.  *See* Docket No. 23.  In its disclosure, Service Key identified its two shareholders who are residents of the State of Georgia.

8
9

### c.      Defendant FBSCGov's Disclosures

10
11
12
13
14
15

FBSCGov filed its Certification of Interested Entities or Persons pursuant to Fed R. Civ. P. 7.1 and Civil Local Rule 3-16 on May 30, 2012.  In it, FBSCGov disclosed that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

16

1.  The sole owner of FBSCGov is Catherine Prosser.

17
18

FBSCGov further disclosed that it has no parent corporation and no publicly held corporation holds 10% or more of its stock.

19

### 21.      Other

20
21
22

Pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), the parties consent to service by email on counsel of record where service is required (i.e., unless service is unnecessary because filing with the Court's ECF system already accomplishes service).

23
24
25
26
27
28

1    Dated:  July 17, 2012                          Bingham McCutchen LLP

2

3                                                   By: _____ / s / Thomas S. Hixson _____
                                                          Thomas S. Hixson
4                                                        Attorneys for Plaintiff
                                                         Oracle America, Inc.
5

6                                                   GCA Law Partners LLP
     Dated:  July 17, 2012
7

8                                                   By: _____ / s / Valerie M. Wagner _____
                                                          Valerie M. Wagner
9                                                       Attorneys for Defendants
                                                        Service Key LLC and Angela Vines
10

11                                                  Dunlap, Grubb & Weaver, PLLC
     Dated:  July 17, 2012
12

13                                                  By: _____ / s / David Ludwig _____
                                                          David Ludwig
14                                                      Attorneys for Defendant
                                                        FBSCGov f/k/a DLT Federal Business
15                                                       Systems Corporation

16

17

18
           Pursuant to Civil Local Rule 5-1(i), I attest that the concurrence in the filing of
19
     this document has been obtained from each of the other signatories.
20
                                                    s/Thomas S. Hixson
21                                                  Thomas S. Hixson

22

23

24

25

26

27

28

RULE 26(F) REPORT AND JOINT CASE MANAGEMENT CONFERENCE STATEMENT