1

2          UNITED STATES DISTRICT COURT

3       FOR THE NORTHERN DISTRICT OF CALIFORNIA

4              OAKLAND DIVISION

5

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SERVICE KEY, LLC, a Georgia limited liability company; ANGELA VINES; DLT FEDERAL BUSINESS SYSTEMS CORPORATION, a Delaware corporation; and DOES 1-50,<br><br>                    Defendants. | Case No:  C 12-00790 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT**<br><br>Dkt. 19 |

        Plaintiff, Oracle America, Inc. ("Oracle"), brings the instant action against

Defendants, Service Key, LLC ("Service Key") and its President and co-owner, Angela

Vines, and DLT Federal Business Systems Corporation ("DLT"), inter alia, under the

Federal Copyright Act, 17 U.S.C. §§ 101 et seq., the Computer Fraud and Abuse Act

("CFAA"), 18 U.S.C. §§ 1030 et seq., and the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

The Court has original jurisdiction over Oracle's federal claims, 28 U.S.C. § 1331, and

supplemental jurisdiction over its state law causes of action, 28 U.S.C. § 1367.

        The parties are presently before the Court on DLT's Motion for Partial Dismissal of

Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dkt. 19.  Having read and considered the papers filed in connection with this matter and

being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the

motion to dismiss for the reasons set forth below.  The Court, in its discretion, finds this

matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal.

Civ. L.R. 7-1(b).

# I.   BACKGROUND

## A.   FACTUAL SUMMARY

The following summary is taken from the First Amended Complaint ("FAC"), which is the operative pleading before the Court.  For purposes of the instant motion, the well-pleaded factual allegations of the FAC are taken as true.

Oracle is supplier of enterprise hardware and software systems.  First Am. Compl. ("FAC") ¶ 22, Dkt. 22.  Customers who purchase Oracle hardware have the option of purchasing an annual contract for technical support services.  Id. ¶ 24.  As part of those services, Oracle provides software updates, including patches and fixes, for its proprietary firmware and its Solaris operating system software.  Id.  Customers who enter into a technical support agreement are provided with access credentials (i.e., a log-in and password) which allow them access to Oracle's support websites, such as My Oracle Support ("MOS"), to download support software.  Id. ¶¶ 24, 26.  Access to these websites is subject to Oracle's Terms of Use.  Id. ¶¶ 27-33.  Only users who have a support agreement with Oracle are authorized to receive software updates from Oracle's websites.  Id.

In or about February 2011, DLT became a member of the Oracle Partner Network ("OPN").  Id. ¶ 11.  The OPN is a membership program for third party companies interested in reselling Oracle hardware and/or software.  Id.  To facilitate their role as resellers, OPN members receive log-in credentials to access Oracle's support websites.  Id. According to Oracle, DLT fraudulently used such access to obtain Oracle's proprietary software patches and updates which it then provided to its customers even though they lacked support agreements with Oracle.  Id. ¶ 39.  In addition, DLT allegedly distributed and/or facilitated the distribution of access credentials to Oracle's website to third parties who were unaware that DLT lacked the authority to distribute such credentials.  Id.  On November 7, 2011, Oracle terminated DLT's membership in the OPN due to its alleged violation of the OPN Agreement.  Id. ¶ 12.

1

**B.    PROCEDURAL HISTORY**

2      Oracle filed its original Complaint in this Court on February 17, 2012, and a FAC on

3 April 19, 2012.  Dkt. 1, 17.  The FAC alleges eleven claims against the Defendants, styled

4 as follows:  (1) Copyright Infringement; (2) Violation of the CFAA, 18 U.S.C.

5 § 1030(a)(2)(C), (a)(4) and (a)(6)(A); (3) False Advertising under the Lanham Act, 15

6 U.S.C. § 1125(a)(1)(B); (4) Breach of Contract; (5) Inducing Breach of Contract;

7 (6) Fraudulent Inducement (against DLT); (7) Fraudulent Inducement (against Service

8 Key); (8) Unfair Competition, Cal. Bus. & Prof. Code § 17200; (9) Intentional Interference

9 with Prospective Economic Relations; (10) Unjust Enrichment/Restitution; and (11) An

10 Accounting.

11      On May 3, 2012, DLT filed the instant motion for partial dismissal, which seeks the

12 dismissal of Oracle's second, fifth, sixth, eighth, ninth, tenth and eleventh claims for

13 violation of the CFAA, inducing breach of contract, fraudulent inducement, unfair

14 competition, intentional interference with prospective economic relations, and an

15 accounting, respectively.  Oracle timely filed an opposition and DLT timely filed its reply.

16 The matter is now fully briefed.[1]

17 **II.    LEGAL STANDARD**

18      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

19 sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint

20 may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state

21 a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal

22 theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In deciding a

23 Rule 12(b)(6) motion, courts generally "consider only allegations contained in the

24 pleadings, exhibits attached to the complaint, and matters properly subject to judicial

25

26      [1] The Court notes that DLT's reply is thirteen pages in length, which exceeds the
page limits set forth in the Court's Standing Orders.  See Case Management Scheduling
27 Order for Reassigned Cases, Dkt. 31.  To expedite resolution of the motion, the Court will
consider DLT's non-compliant brief.  Further transgressions of the Court's procedural rules
28 and/or Standing Orders may result in the imposition of sanctions.

1   notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  The court is to "accept

2   all factual allegations in the complaint as true and construe the pleadings in the light most

3   favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506

4   F.3d 895, 899-900 (9th Cir. 2007).

5       To survive a motion to dismiss for failure to state a claim, the plaintiff must allege

6   "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

7   Twombly, 550 U.S. 544, 570 (2007).  The allegations made in a complaint must be both

8   "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so

9   that the party may effectively defend against it" and "sufficiently plausible" such that "it is

10  not unfair to require the opposing party to be subjected to the expense of discovery." Starr

11  v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).  "Threadbare recitals of the elements of a

12  cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v.

13  Iqbal, 556 U.S. 662, 678 (2009).  Where a complaint or claim is dismissed, leave to amend

14  generally is granted, unless further amendment would be futile. Chaset v. Fleer/Skybox

15  Int'l, 300 F.3d 1083, 1087-88 (9th Cir. 2002).  "A district court may deny a plaintiff leave

16  to amend if it determines that allegation of other facts consistent with the challenged

17  pleading could not possibly cure the deficiency[.]" Alvarez v. Chevron Corp., 656 F.3d

18  925, 935 (9th Cir. 2011) (internal quotations omitted).

19  **III.   DISCUSSION**

20      **A.   CFAA**

21      The CFAA was enacted "to enhance the government's ability to prosecute computer

22  crimes," and is "designed to target hackers who accessed computers to steal information or

23  to disrupt or destroy computer functionality, as well as criminals who possessed the

24  capacity to access and control high technology processes vital to our everyday lives."

25  LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130 (9th Cir. 2009).  The Act proscribes

26  various computer crimes, "the majority of which involve accessing computers without

27  authorization or in excess of authorization, and then taking specified forbidden actions,

28  ranging from obtaining information to damaging a computer or computer data." Id.  The

CFAA only reaches computer hacking that is intended to procure or alter information, not the misappropriation of such information.  <u>United States v. Nosal</u>, 676 F.3d 854, 862-63 (9th Cir. 2012) (en banc).

Although primarily a criminal statute, the CFAA also creates a private right of action for persons injured by conduct prohibited thereunder.  <u>See</u> 18 U.S.C § 1030(g).  To prevail on a civil claim under section 1030(g), "a private plaintiff must prove that the defendant violated one of the provisions of [section] 1030(a)(1)-(7), and that the violation involved one of the factors listed in [section] 1030(a)(5)(B)."  <u>Brekka</u>, 581 F.3d at 1131.  Those factors are as follows: (1) "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value"; (2) "the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals"; (3) "physical injury to any person"; (4) "a threat to public health or safety"; and (5) "damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security."  18 U.S.C. §§ 1030(c)(4)(A)(i).

Here, the FAC alleges that DLT violated the CFAA (1) by accessing Oracle's websites to obtain updates and patches in order to provide unauthorized support services to DLT's customers, and (2) by disseminating access credentials to third parties and thereby allowing direct access to the websites.  FAC ¶¶ 39, 77-83.  The FAC alleges that such conduct violates 18 U.S.C. § 1030(a)(2), (a)(2) and (a)(6)(A), which prohibit the following actions:

- "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer."  18 U.S.C. § 1030(a)(2).

- "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value . . . ."  <u>Id.</u> § 1030(a)(4).

- • "knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if— [¶] . . . such trafficking affects interstate or foreign commerce[.]"  Id. § 1030(a)(6)(A).

In its motion to dismiss, DLT contends that Oracle's CFAA claim should be dismissed on the grounds that: (1) Oracle has failed to properly allege damages that are cognizable under the CFAA; (2) it is barred by the Ninth Circuit's en banc decision in Nosal; and (3) the claim fails to comport with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  The Court discusses each of these arguments, in turn.

### 1.    Failure to Allege Damages

DLT contends that Oracle's CFAA claim is subject to dismissal for failure to properly allege damages.  Mot. at 12.  This contention lacks merit.  The CFAA provides a civil remedy for "[a]ny person who suffers damage or loss by reason of a violation of this section. . . ." 18 U.S.C. § 1030(g) (emphasis added).  The Act defines the term "damage" to mean "any impairment to the integrity or availability of data, a program, a system, or information[.]"  18 U.S.C. § 1030(e)(8).  "[T]he term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).  In the present case, the FAC alleges that Oracle incurred costs as a result of investigating and conducting a damage assessment in response to DLT's actions.  See FAC ¶ 82. This is sufficient for purposes of alleging loss under the CFAA.

Equally without merit is DLT's ancillary argument that Oracle has not alleged that it sustained damages of at least $5,000.  Mot. at 12.  Subsection 1030(a)(4) prohibits certain access "and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year

period." 18 U.S.C. § 1030(a)(4) (emphasis added).  The $5,000 figure refers to the value of the computer use, and is not meant as a measure of "damages," as defined in subsection 1030(e)(8).  Moreover, Oracle alleges that in violating subsection 1030(a)(4), DLT "obtained one or more things of value, including, but not limited to, Oracle's software."  FAC ¶ 81.  Because Oracle alleges that DLT obtained something of value beyond solely the use of the computer, the $5,000 requirement on DLT's argument relies is inapposite.  Accordingly, the Court rejects DLT's contention that Oracle's CFAA claim is subject to dismissal for failure to properly allege damages.

### 2.    Nosal

Next, DLT contends that Oracle's CFAA claim is completely barred by the Ninth Circuit's decision in Nosal.  In Nosal, the defendant left his position at Korn/Ferry, an executive search firm.  Shortly after leaving the company, he convinced some of his former colleagues to use their log-in credentials to download customer information from the company's confidential computerized database.  In violation of company policy, the employees subsequently transferred that information to the defendant, who was launching a competing business.  The government filed a twenty-count indictment against the defendant which included charges of theft of trade secrets, mail fraud, conspiracy and violations of the CFAA.

The CFAA counts charged the defendant with violations of 18 U.S.C. § 1030(a)(4) for aiding and abetting the Korn/Ferry employees in "exceed[ing their] authorized access" with intent to defraud.  The defendant filed a motion to dismiss the CFAA counts, claiming that the CFAA targets only hackers, not individuals who access a computer with authorization but then misuse or misappropriate information they obtain by means of such access.  The district court initially denied the motion, but reconsidered and dismissed the counts based on the Ninth Circuit's narrow construction of "without authorization" and "exceeds authorized access" in Brekka.

On appeal, a three-judge panel initially reversed and remanded, Nosal, 642 F.3d 781; however, the court subsequently granted rehearing en banc, 661 F.3d 1180.  The en banc

1   panel of the Ninth Circuit affirmed the district court's dismissal of the CFAA counts,

2   holding that the plain language of the CFAA targets the unauthorized procurement or

3   alteration of information—i.e., computer "hacking"—not the misuse or misappropriation of

4   such information.  676 F.3d at 863.  Since the Korn/Ferry employees were authorized to

5   access the confidential information, the court found that they did not exceed their

6   authorized access by accessing the company database.  Id. at 864.  In other words, the

7   sharing of confidential information by employees, even if obtained and distributed in

8   violation of company policy, was not actionable under the CFAA.  Id.  The court reasoned

9   that to conclude otherwise "would transform the CFAA from an anti-hacking statute into an

10  expansive misappropriation statute."  Id. at 857.

11       Oracle first argues that Nosal is inapposite to its claim under subsection 1030(a)(6).

12  Opp'n at 3.  As noted, that subsection prohibits a person from fraudulently trafficking in

13  "any password or similar information through which a computer may be accessed without

14  authorization" where such trafficking affects interstate or foreign commerce.  18 U.S.C.

15  § 1030(a)(6).  As Oracle correctly points out, Nosal addressed the meaning of the term

16  "exceeds authorized access," which is used in subsections 1030(a)(1), (2), (4) and (7), but

17  not in subsection 1030(a)(6).  DLT responds that Nosal is not limited to subsection

18  1030(a)(4), but applies to the entirety of the CFAA.  Perhaps so, but that is entirely beside

19  the point.  Oracle's claim under subsection 1030(a)(6) is not dependent upon whether DLT

20  "hacked" into Oracle's websites; rather, Oracle is alleging that DLT distributed and/or

21  facilitated the distribution of access credentials to Oracle's support websites to

22  "unauthorized third parties."  FAC ¶ 39.  Thus, Nosal interpretation of "exceeds authorized

23  access" is not germane to and does not preclude Oracle from proceeding with a claim under

24  subsection 1030(a)(6).

25       The result is different, however, with respect to Oracle's claim under subsections

26  1030(a)(2)(C) and (a)(4).  In Nosal, the court held that the Korn/Ferry employees did not

27  exceed their authorized access because they had permission to access the company's

28  computers.  Attempting to distinguish its claim from Nosal, Oracle contends that it has

1 specifically alleged in its FAC that DLT "accessed Oracle's websites <u>without</u>

2 <u>authorization</u>" and that such conduct is actionable.  Opp'n at 3 (citing FAC ¶¶ 11, 24, 29).

3 The problem for Oracle is that the FAC alleges no such thing.  In paragraph 39 of the FAC,

4 Oracle alleges that DLT used its "access credentials for Oracle's support websites for the

5 <u>unauthorized purpose</u> of accessing and taking Oracle's proprietary software products, such

6 as certain software patches and updates," and, in turn, used and distributed these products

7 to provide support services to third parties "who could not legally receive them[.]"  FAC

8 ¶ 39 (emphasis added).  Such allegations, even if taken as true, are not actionable under

9 CFAA.  The FAC does not allege that DLT accessed Oracle's website <u>without</u>

10 <u>authorization</u>.  To the contrary, Oracle expressly avers that DLT was authorized to access

11 its websites.  What Oracle takes exception to is DLT's accessing the websites for the

12 ostensibly improper "purpose" of using its authorized access to provide support services to

13 third parties.  <u>Id.</u>  This conduct—using legitimate access credentials to access websites and

14 then distributing information obtained from such access to third parties who have no right

15 to receive such information—is precisely the type of conduct that <u>Nosal</u> held was beyond

16 the scope of the CFAA.  Thus, the Court finds that Oracle's claims under subsections

17 1030(a)(2)(C) and (a)(4) must be dismissed under <u>Nosal</u>.

### 3.   Particularity under Rule 9(b)

19        Finally, DLT argues Oracle's CFAA claim fails to comport with Rule 9(b), which

20 provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with

21 particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "The

22 purpose of this rule is to ensure that defendants accused of the conduct specified have

23 adequate notice of what they are alleged to have done, so that they may defend against the

24 accusations. Without such specificity, defendants in these cases would be put to an unfair

25 disadvantage, since at the early stages of the proceedings they could do no more than

26 generally deny any wrongdoing."  <u>Concha v. London</u>, 62 F.3d 1493, 1502 (9th Cir. 1995).

27        Oracle contends that Rule 9(b) does not apply to the CFAA.  This Circuit has not yet

28 addressed the question of whether a CFAA claim must be pled with particularity.

1   Nonetheless, in <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120 (9th Cir. 2009), a decision cited

2   by neither party, the Ninth Circuit held that even where fraud is not a necessary element of

3   a claim, Rule 9(b) nonetheless applies where "a unified course of fraudulent conduct is

4   alleged" as the basis of the claim.  <u>Id.</u> at 1125.  Such claims are "said to be 'grounded in

5   fraud' or to 'sound in fraud,' and the pleading as a whole must satisfy the particularity

6   requirement of Rule 9(b)."  <u>Id.</u> (internal quotations and citation omitted).

7       In the instant case, the Court finds that Oracle's claim under the CFAA is subject to

8   the heightened pleading requirements of Rule 9(b).  As an initial matter, subsection

9   1030(a)(4) is violated only if a defendant acts "with intent to defraud" and its conduct

10  "furthers the intended fraud."  18 U.S.C. § 1030(a)(4).[2]  Although the intent to defraud (or

11  "scienter") may be alleged generally, <u>see</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 554 (9th

12  Cir. 2007), Rule 9(b) plainly applies to section 1030(a)(4)'s requirement that the

13  defendant's acts further the intended fraud.  That aside, Oracle's allegations clearly are

14  "grounded in fraud" or otherwise "sound in fraud."  <u>Kearns</u>, 567 F.3d at 1125. Among

15  other things, Oracle avers that DLT fraudulently induced customers of Oracle to cancel

16  their support agreements with Oracle by claiming that it could provide support services at a

17  lower cost than Oracle.  <u>See id.</u> ¶ 41.  In addition, DLT is alleged to have "falsely

18  represented to its customers and potential customers that they could still obtain—from

19  [DLT]—software patches and updates for their Oracle computer products[.]"  <u>See id.</u> ¶ 42.

20  To facilitate its scheme, DLT allegedly accessed Oracle's support websites and engaged in

21  the fraudulent trafficking of passwords to facilitate third-party access to those websites and

22  update so that DLT could provide support services to these customers.  <u>See id.</u> ¶¶ 79, 81.

23  In view of these allegations, the Court finds that under <u>Kearns</u>, Oracle's CFAA claims are

24  subject to the particularity requirements of Rule 9(b).

25

26

27      [2] Subsection 1030(a)(6) likewise requires a showing of an "intent to defraud."  18
    U.S.C. § 1030(a)(6).  In contrast, subsection 1030(a)(2) does not require a showing of fraud
28  or an intent to defraud.

The district court cases cited by Oracle for the proposition that Rule 9(b) is inapplicable to claims brought under the CFAA are not persuasive.  In eBay Inc. v. Digital Point Solutions, Inc., 608 F. Supp. 2d 1156 (N.D. Cal. 2009), Judge Fogel declined to apply Rule 9(b) to the plaintiff's claim under subsection 1030(a)(4), reasoning that "fraud 'under the CFAA only requires a showing of unlawful access [and therefore] there is no need to plead the elements of common law fraud to state a claim under the Act.'"  Id. at 1164.  As support, the court cited Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc., 556 F. Supp. 2d 1122 (E.D. Cal. 2008) ("Hanger Prosthetics"), which noted that "[t]he term 'defraud' for purposes of § 1030(a)(4) simply means wrongdoing and does not require proof of common law fraud."  Id. at 1131.  However, the motions at issue in Hanger Prosthetics were the defendant's summary judgment motions; the court did not address the issue of whether claims under the CFAA must meet the heightened pleading requirements of Rule 9(b).  Moreover, the court in eBay failed to take into account the Ninth Circuit's decision in Kearns, which, as discussed, holds that Rule 9(b) applies not only to fraud claims, but also to claims that are "grounded in fraud" or "sound in fraud."

Alternatively, Oracle argues that even if Rule 9(b) is applicable, it has provided sufficient detail to meet such heightened pleadings requirements.  Not so.  To satisfy the heightened pleading requirements for fraud or fraud-based claims, the pleadings must allege "the who, what, when, where, and how" of the alleged fraudulent conduct, Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  Oracle does, in fact, provide some specific instances of DLT's allegedly fraudulent conduct.  Those allegations, however, are offered merely as examples, as opposed to the constellation of fraudulent conduct that forms the basis of Oracle's claim.  To comply with Rule 9(b), Oracle must allege, with specificity, each incident of fraudulent conduct that comprises its CFAA claim against DLT.  The Court will therefore grant Oracle leave to provide the requisite facts, consistent with Rule 9(b).

### 4.    Summary

Oracle's claims under subsections 1030(a)(2)(C) and (a)(4), as presently alleged, are barred by <u>Nosal</u>.  In addition, the Court finds that Rule 9(b)'s heightened pleading requirements apply to Oracle's CFAA claim generally, and that the allegations presented fail to pass muster under that Rule.  Because Oracle's claim under subsection 1030(a)(6) is grounded in fraud, said claim is dismissed with leave to amend to comport with Rule 9(b).  Oracle's claims under subsections 1030(a)(2)(C) and (a)(4), as currently pled, are not actionable, and therefore, are dismissed.  Oracle is granted leave to amend these claims, but only to the extent it is able to do so in a manner consistent with both the FAC, see <u>Alvarez</u>, 656 F.3d at 935, and Federal Rule of Civil Procedure 11.

### B.   INDUCING BREACH OF CONTRACT

The elements of inducing breach of contract, more formally known as interference with contractual relations, are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  <u>Quelimane Co. v. Stewart Title Guar. Co.</u>, 19 Cal.4th 26, 55 (1998).[3]

DLT contends that the allegations in support of Oracle's claim are too vague to satisfy <u>Twombly</u> and its progeny.  The Court agrees.  The pleadings fail to identify the particular third parties that DLT purportedly induced to breach Oracle's agreements.  Rather, Oracle avers only that Defendants induced "other Oracle customers and third parties" to breach Oracle's Terms of Use agreements.  FAC ¶ 105, 107, 108.  The only third parties identified by name are the United States Navy and the United States Food and Drug Administration, both of which are merely cited as examples.  <u>Id.</u> ¶ 107.  Oracle also has not

---

[3] The parties' motion and opposition papers do not recite the elements of or any legal authority with respect to each claim at issue.  The parties are reminded of their legal obligation to provide such authority, as it is not the Court's role to do their work for them.  <u>See Indep. Towers of Wash. v. Wash.</u>, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

1  identified the specific provisions of those agreements that allegedly were breached.  The

2  absence of such allegations deprives DLT of "fair notice of what the claim is and the

3  grounds upon which it rests[.]"  <u>Twombly</u>, 550 U.S. at 554-55.  Accordingly, the Court

4  dismisses Oracle's fifth claim with leave to amend.

5      **C.    FRAUDULENT INDUCEMENT**

6          "'Promissory fraud' is a subspecies of the action for fraud and deceit.  A promise to

7  do something necessarily implies the intention to perform; hence, where a promise is made

8  without such intention, there is an implied misrepresentation of fact that may be actionable

9  fraud." <u>Lazar v. Super. Ct.</u>, 12 Cal. 4th 631, 638 (1996).  Under California law, the

10  elements for a fraudulent inducement claim are:  (1) a misrepresentation; (2) knowledge

11  of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and

12  (5) damage.  <u>Stewart v. Ragland</u>, 934 F.2d 1033, 1043 (9th Cir. 1991).

13      **1.    Scienter**

14          DLT first argues that Oracle has failed to allege any facts demonstrating an intent to

15  defraud when it entered into the OPM Agreement.  Mot. at 16.  "While the factual

16  circumstances of the fraud itself must be alleged with particularity, the state of mind—or

17  scienter—of the defendants may be alleged generally." <u>Odom</u>, 486 F.3d at 554.

18  Nonetheless, scienter still must be pleaded sufficiently to make entitlement to relief

19  plausible.  <u>Eclectic Properties East, LLC v. The Marcus & Millichap Co.</u>, No. C-09-00511

20  RMW, 2012 WL 713289, at *11 (N.D. Cal. Mar. 5, 2012) (finding that after <u>Twombly</u>, a

21  plaintiff alleging fraud cannot plead intent to defraud "simply by saying that scienter

22  existed").

23          The FAC alleges that when DLT entered into the OPM Agreement, "[it]

24  intentionally failed to disclose that it planned to use its access to MOS and Oracle's

25  software to provide support to its customers by making available access credentials for

26  Oracle's websites and materials downloaded from Oracle's websites to customers who did

27  not have authorization from Oracle to access MOS or download Oracle software."  FAC

28

¶¶ 120-121.  While perhaps not particularly detailed, this general allegation is sufficient to establish, for pleading purposes, a plausible scheme to defraud Oracle.

### 2.   Reliance

Next, DLT challenges the sufficiency of Oracle's allegations of reliance.  According to DLT, Oracle cannot legitimately claim that it relied on any representations or promises because the contract was one of adhesion since it was offered on a "take-it-or-leave-it" basis.  Mot. at 17.[4]  Whether Oracle's OPN agreement is, in fact, one of adhesion is beyond the scope of the pleadings, which therefore cannot be resolved on a Rule 12(b)(6) motion.  In addition, DLT cites no legal authority to support the proposition that a party alleging a promissory fraud claim is foreclosed from claiming reliance where the contract is one of adhesion.

### 3.   Election of Remedies

As an ancillary matter, DLT argues that Oracle cannot simultaneously pursue claims for breach of contract and fraudulent inducement, and that it must elect between the two claims.  Mot. at 18; Reply at 10.[5]  Although DLT briefly touched upon the above argument in its moving papers, see Mot. at 17-18, DLT waited until its reply brief to fully develop its analysis on this issue, see Reply at 10.  The Court does not consider issues unless they "are argued specifically and distinctly in a party's opening brief," since to do otherwise deprives the nonmoving party the opportunity to fully respond.  Ind. Towers of Wash., 350 F.3d at 929.  DLT may raise the issue in a subsequent motion, provided that it first makes a good

---

[4] An adhesion contract is one that is "imposed upon the subscribing party without an opportunity to negotiate the terms[.]"  Such an agreement is valid and enforceable.  See Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc., 89 Cal.App.4th 1042, 1052 (2001).

[5] Under California law, to maintain a fraud claim based on the same factual allegations as a breach of contract claim, a plaintiff must show that "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm."  Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 989, 990 (2004) (quoting Erlich v. Menezes, 21 Cal.4th 543, 552 (1999)); see also Lazar v. Super. Ct., 12 Cal.4th 631, 645 (1996) ("It has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud.").

1  faith attempt to meet and confer with Oracle in attempt to resolve the matter without the

2  need for further judicial intervention.

3      In sum, based on the arguments presented in its motion, DLT has failed to persuade

4  the Court that dismissal of Oracle's sixth claim for fraudulent inducement is warranted at

5  this time.

6      **D.  UNFAIR COMPETITION**

7      California's Unfair Competition Law ("UCL") makes actionable any "unlawful,

8  unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each

9  prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc.,

10 590 F.3d 955, 959 (9th Cir. 2009).  With respect to the unlawful prong, the UCL

11 incorporates other laws and treats violations of those laws as unlawful business practices

12 independently actionable under state law.  Chabner v. United Omaha Life Ins. Co., 225

13 F.3d 1042, 1048 (9th Cir.2000).  A business practice that is not unlawful may nonetheless

14 be actionable as an "unfair" business practice.  Alvarez v. Chevron Corp., 656 F.3d 925,

15 933 n.8 (9th Cir. 2011).  An unfair business practice under the UCL is "one that either

16 offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or

17 substantially injurious to consumers."  McDonald v. Coldwell Banker, 543 F.3d 498, 506

18 (9th Cir. 2008).  A claim under the fraudulent prong of the UCL is based on the reasonable

19 consumer standard, which requires the plaintiff to "show that members of the public are

20 likely to be deceived."  Williams v. Gerber Prods. Co., 552 F.3d 934 (9th Cir. 2008)

21 (internal quotation marks omitted).

22     DLT contends that Oracle's UCL claim is "defective in toto because it is preempted

23 by the U.S. Copyright Act."  Mot. at 18.  Section 301(a) of the Copyright Act "expressly

24 preempts state claims where the plaintiff's work 'come[s] within the subject matter of

25 copyright' and the state law grants 'legal or equitable rights that are equivalent to any of the

26 exclusive rights within the general scope of copyright.'"  Montz v. Pilgrim Films & Tel.,

27 Inc., 649 F.3d 975, 979 (9th Cir. 2011) (en banc).  The Ninth Circuit has adopted a two-part

28 test to determine whether a state law claim is preempted by the Copyright Act:  (1) courts

1    must first determine whether the subject matter of the state law claims falls within the

2    subject matter of copyright as described by 17 U.S.C. §§ 102 and 103, and (2) whether the

3    rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106.

4    Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137-38 (9th Cir. 2006).  "To survive

5    preemption, a state cause of action must assert rights that are qualitatively different from

6    the rights protected by copyright."  Montz, 649 F.3d at 980.

7           Here, Oracle's UCL claim is based on the unfair and unlawful prongs of the UCL.

8    FAC ¶¶ 127-131.  DLT's allegedly unlawful business practices are identified as violations

9    of the CFAA and the Lanham Act.  See id. ¶ 130. Oracle does not allege any violations of

10   the Copyright Act as the basis of its unlawful practices claim under the UCL.  DLT does

11   not dispute this, nor does it dispute that claims under the Copyright Act involve rights that

12   are qualitatively different from those protected under the CFAA and the Lanham Act.  In its

13   reply, however, DLT counters that Oracle's "copyright issues" are so "central to every

14   allegation in its over-pled complaint" that, for all intents and purposes, all of its claims

15   should be deemed preempted.  Reply at 11.  DLT cites no authority for its extraordinary

16   assertion that a claim under the CFAA or the Lanham may be transmuted into one under the

17   Copyright Act simply because there may be some factual overlap in their claims.

18   Accordingly, the Court declines to dismiss Oracle's seventh claim for violation of the UCL.

19          **E.    UNJUST ENRICHMENT**

20          Oracle's tenth claim alleges a claim for unjust enrichment.  Although the parties

21   dispute whether this claim is preempted by section 301(a) of the Copyright Act, the Court

22   notes that there is no independent cause of action for unjust enrichment.  See Levine v.

23   Blue Shield of Cal., 189 Cal.App.4th 1117, 1138 (2010) ("'[t]here is no cause of action in

24   California for unjust enrichment") (internal quotations and citations omitted).  In addition,

25   neither party acknowledges that this Court has previously dismissed unjust enrichment

26   claims on that basis.  Newsom v. Countrywide Home Loans, Inc., 714 F.Supp.2d 1000,

27   1009-1010 (N.D. Cal. 2010); accord Barocio v. Bank of Am., N.A., No. C 11-5636 SBA,

28

2012 WL 3945535, at *4 (N.D. Cal., Sept. 10, 2012).  Accordingly, the Court dismisses

Oracle's claim for unjust enrichment without leave to amend.

**F.    ACCOUNTING**

In its eleventh and final claim, Oracle seeks an accounting of all sums "Defendants

have received . . . as a result of the [alleged] misconduct."  FAC ¶ 150.  An accounting is an

equitable proceeding which is proper where there is an unliquidated and unascertained

amount owing that cannot be determined without an examination of the debits and credits

on the books to determine what is due and owing.  St. James Church v. Super. Ct., 135

Cal.App.2d 352, 359 (1955).  DLT contends that there is no fiduciary relationship between

it and Oracle, and therefore, a claim for an accounting is improper.  Mot. at 21.  This

contention lacks merit:

> [A] fiduciary relationship between the parties is not required to
> state a cause of action for accounting.  All that is required is
> that some relationship exists that requires an accounting.  The
> right to an accounting can arise from the possession by the
> defendant of money or property which, because of the
> defendant's relationship with the plaintiff, the defendant is
> obliged to surrender.

Teselle v. McLoughlin, 173 Cal.App.4th 156, 179-180 (2009) (emphasis added).  The right

to an accounting is contingent upon the existence of a relationship, fiduciary or otherwise,

that "calls for an accounting."  Ford v. Lehman Bros. Bank, FSB, No. C 12-00842 CRB,

2012 WL 2343898, at *14 (N.D. Cal. June 20, 2012) (citing Teselle, 173 Cal.App.4th at

179).  Here, the FAC fails to allege the precise nature of the relationship that purportedly

gives rise to Oracle's alleged right to an accounting.  Under Twombly, DLT is entitled to

fair notice of the nature of said relationship.  Therefore, the Court dismisses Oracle's

eleventh claim for an accounting with leave to amend.

**IV.    CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.    Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN

PART.  The motion is granted as to Oracle's claims for violation of the CFAA, inducing

breach of contract, unjust enrichment and an accounting.  The motion is denied as to

Oracle's claims for fraudulent inducement and unfair competition.  Oracle is granted leave

to amend its claims under the CFAA, for inducing breach of contract and for an accounting.

Oracle shall file its Second Amended Complaint within fourteen (14) day from the date this

Order is filed.

2.     The parties shall appear for a telephonic Case Management Conference on

**January 17, 2013 at 3:00 p.m.**  Prior to the date scheduled for the conference, the parties

shall meet and confer and prepare a joint Case Management Conference Statement which

complies with the Standing Order for All Judges of the Northern District of California and

the Standing Orders of this Court.  Plaintiff shall assume responsibility for filing the joint

statement no less than seven (7) days prior to the conference date.  Plaintiff's counsel is to

set up the conference call with all the parties on the line and call chambers at (510) 637-

3559.  NO PARTY SHALL CONTACT CHAMBERS DIRECTLY WITHOUT PRIOR

AUTHORIZATION OF THE COURT.

3.     This Order terminates Docket 19.

IT IS SO ORDERED.

Dated:  November 30, 2012

SAUNDRA BROWN ARMSTRONG
United States District Judge