1   BINGHAM MCCUTCHEN LLP
    Geoffrey M. Howard (SBN 157468)
2   geoff.howard@bingham.com
    Thomas S. Hixson (SBN 193033)
3   thomas.hixson@bingham.com
    Kyle Zipes (SBN 251814)
4   kyle.zipes@bingham.com
    Three Embarcadero Center
5   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
6   Facsimile:  415.393.2286

7   ORACLE CORPORATION                    ORACLE CORPORATION
    Dorian Daley (SBN 129049)             Jeffrey S. Ross (SBN 138172)
8   dorian.daley@oracle.com               jeff.ross@oracle.com
    Deborah K. Miller (SBN 95527)         10 Van de Graaff Drive
9   deborah.miller@oracle.com             Burlington, MA 01803
    500 Oracle Parkway                    Telephone: 781.744.0449
10  M/S 5op7                              Facsimile: 781.238.6273
    Redwood City, CA 94065
11  Telephone: 650.506.4846               Attorneys for Plaintiff
    Facsimile: 650.506.7114               Oracle America, Inc.

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                        OAKLAND DIVISION

16
    ORACLE AMERICA, INC., a Delaware      No. 4:12-cv-00790-SBA
17  corporation;
                                          **SECOND AMENDED COMPLAINT FOR**
18            Plaintiff,                   **DAMAGES AND INJUNCTIVE RELIEF**
         v.                               **FOR:**
19
    SERVICE KEY, LLC, a Georgia limited liability   **(1) COPYRIGHT INFRINGEMENT;**
20  company; ANGELA VINES; DLT FEDERAL    **(2) VIOLATIONS OF THE COMPUTER**
    BUSINESS SYSTEMS CORPORATION, a       **FRAUD AND ABUSE ACT;**
21  Delaware corporation; and DOES 1–50,  **(3) FALSE ADVERTISING IN VIOLATION**
                                          **OF THE LANHAM ACT SECTION 43(A);**
22            Defendants.                  **(4) BREACH OF CONTRACT;**
                                          **(5) INDUCING BREACH OF CONTRACT;**
23                                         **(6) FRAUDULENT INDUCEMENT**
                                          **(AGAINST SERVICE KEY);**
24                                         **(7) FRAUDULENT INDUCEMENT**
                                          **(AGAINST DLT-FBS)**
25                                         **(8)UNFAIR COMPETITION;**
                                          **(9) INTENTIONAL INTERFERENCE WITH**
26                                         **PROSPECTIVE ECONOMIC RELATIONS;**
                                          **AND**
27                                         **(10) AN ACCOUNTING**

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
Filed Under Seal

1    Plaintiff Oracle America, Inc. ("Oracle" or "Plaintiff") for its Complaint against

2    Defendants Service Key LLC ("Service Key"), Angela Vines ("Vines"), and DLT Federal

3    Business Systems Corporation ("DLT-FBS") (together "Defendants") alleges as follows based

4    on its personal knowledge as for itself, and on information and belief as to the acts of others:

5    **I.    INTRODUCTION**

6        1.    Defendants are engaged in a scheme to steal and distribute copyrighted,

7    proprietary Oracle software code, along with the login credentials necessary to download this

8    code from Oracle's password-protected websites. Through false pretenses as purported Oracle

9    customers or partners, Defendants have taken vast quantities of software patches and updates for

10   Oracle's proprietary Sun Solaris operating system, and other technical support files used on

11   Oracle's Sun computers. Defendants falsely have told unwitting third parties that they have

12   authority to provide Oracle's highly prized and proprietary intellectual property despite, in fact,

13   having no such authorization or permission from Oracle to do so. Oracle brings this lawsuit to

14   stop this illegal activity.

15       2.    Oracle is the world's leading supplier of enterprise hardware and software

16   systems, and related technical support and consulting services for those systems. Customers who

17   own Oracle hardware have the option to purchase an annual contract for technical support

18   services provided by Oracle for those hardware systems. As part of those support services,

19   customers receive software patches and updates for the proprietary firmware and operating

20   system software that ships with and runs the hardware systems.

21       3.    In most instances, Oracle delivers its technical support services for this

22   software and firmware over the internet. Customers that purchase a technical support agreement

23   from Oracle receive a "Customer Support Identification" number ("CSI number") linked to the

24   products covered by the support contract. The CSI number allows customers to create login

25   credentials to access Oracle's secure support website. Using those credentials, the licensed

26   customer on active support may download critical software patches and updates needed to

27   maintain the functioning of the customer's hardware systems. The customer may not share or use

28   its access credentials for the benefit of others—only customers who pay for and maintain a

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    technical support agreement with Oracle may download Oracle's proprietary software patches

2    and updates, and only for their own internal business use on licensed computers.

3         4.    Defendants Service Key and DLT-FBS purport to offer support services

4    related to Oracle's Sun-branded hardware systems. If a customer chooses not to purchase

5    technical support services from Oracle for Oracle hardware, it may elect to engage a third party

6    such as DLT-FBS to provide those services, or it can choose to use no support services at all. If a

7    customer hires a third party—instead of Oracle—to provide support services on an Oracle

8    hardware system, that third party cannot access or use Oracle's support website (or provide

9    access to Oracle's support website to others). In addition the customer may not access or use

10   official, Oracle-authored updates, patches, or fixes to provide support services for the Oracle

11   software running the hardware unless the customer lawfully obtained those patches while still on

12   a paid Oracle support contract because those updates, patches, and fixes are Oracle's proprietary

13   intellectual property. Defendants, as third party support providers, have no rights to use Oracle's

14   proprietary software as part of their support service offerings. They also cannot provide

15   customers with unauthorized login credentials to Oracle's secure support websites, or wrongfully

16   download Oracle's support materials themselves for illegal sale to or use by their customers.

17        5.    Defendants ignored these rules as part of a gray market scheme to sell

18   support on Oracle hardware to customers with no active support contract with Oracle that would

19   permit the customers to access or use Oracle's support website including the proprietary

20   intellectual property available on the website. Neither the Defendants nor the customers that

21   contracted with them directly had any right to access and/or download software patches or

22   updates from Oracle for these illicit purposes, but Defendants falsely told their customers that

23   Defendants could provide that access and support. To provide their services, Defendants

24   obtained access credentials to Oracle's secure support website under false pretenses, then

25   trafficked in those credentials and downloaded Oracle's intellectual property in violation of the

26   agreements by which they obtained the credentials in the first place.

27        6.    Defendants also falsely tell their customers that they can use access

28   credentials provided by Defendants, which Defendants obtained under false pretenses from

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Oracle, to download Oracle software for their own use. For example, on at least one occasion

2   when one of DLT-FBS's customers requested support from DLT-FBS for an issue that customer

3   was having related to Oracle's software, DLT-FBS arranged for access credentials belonging to

4   Service Key to be sent to that customer so it could access Oracle's secure support website

5   directly and download Oracle's software, even though that customer was not authorized by

6   Oracle to do so. Oracle believes that this misuse of Service Key's login credentials has occurred

7   through DLT-FBS and other similar third party support providers on many other occasions.

8           7.      Neither Service Key nor DLT-FBS has permission from Oracle to

9   distribute copies of Oracle's copyrighted software to any other customer. Neither Service Key

10  nor DLT-FBS has permission from Oracle to provide their access credentials to anyone else,

11  including for use by third parties to access Oracle's customer support websites or to download

12  Oracle's copyrighted software. Defendants' activities infringe Oracle's intellectual property

13  rights, violate the laws governing website and computer access, breach certain agreements with

14  Oracle, including the Oracle website Terms of Use, and generally undermine Oracle's business

15  model. Oracle brings this lawsuit to stop Defendants' wrongful conduct.

16  **II.    THE PARTIES**

17          8.      Plaintiff Oracle is a Delaware corporation duly authorized to do business

18  in the State of California, with its principal place of business in Redwood City, California.

19  Oracle develops and licenses certain intellectual property, including copyrighted software

20  programs, and provides related support and consulting services to its licensed customers. The

21  entity known as Oracle USA, Inc. was merged into Sun Microsystems, Inc. ("Sun")[1], which then

22  changed its name to Oracle America. Accordingly, Plaintiff Oracle continues to hold all of Sun's

23  interest, rights, and title to the copyrights at issue in this action and the rights to bring claims for

24  infringement of those copyrights.

25  _____

26  [1] Sun developed and sold computer hardware and the Solaris operating system which runs that
27  hardware. Sun computers, which Oracle continues to sell under the Sun brand name, may be
    referred to as Oracle or Sun computer hardware interchangeably throughout this Complaint.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1        9.      Service Key is a Georgia limited liability company with its principal place

2    of business in Norcross, Georgia. Service Key has purchased and owns a small number of

3    Oracle/Sun computers, and has also purchased annual contracts for technical support services

4    from Oracle for certain of those computers, which are expressly limited for Service Key's own

5    internal use. Service Key has been issued at least three CSI Numbers associated with the support

6    contracts that it has maintained and has login credentials to Oracle's secure technical support

7    website to obtain technical support services for the specifically covered Oracle hardware.

8        10.     Upon information and belief, Vines is a resident of Georgia, and is

9    President and co-owner of Service Key.

10       11.     DLT-FBS is a Delaware corporation with its principal place of business in

11   Chantilly, Virginia. Unlike Service Key, which purports to be an Oracle customer, DLT-FBS

12   was a member of the Oracle Partner Network ("OPN"), which it joined in February, 2011 when

13   it agreed to the terms of an Oracle Partner Network Agreement (the "OPN Agreement"). The

14   OPN is a membership program for third party companies primarily interested in reselling

15   Oracle's hardware and/or software products and related technical support services to be provided

16   by Oracle. OPN members receive access to training, education, tools, and support to develop

17   expertise in Oracle's products and solutions. Strictly to facilitate their function as resellers of

18   Oracle's products and services, OPN members also receive login credentials to access Oracle's

19   secure support website, but only for certain authorized uses. OPN members that acquire the right

20   to resell specific Oracle products to end-user customers must also enter into an additional

21   distribution agreement with Oracle allowing them to resell those products—the typical

22   agreement (and the one that DLT-FBS executed) is called a Full Use Distribution Agreement

23   ("FUDA").

24       12.     DLT-FBS was issued at least one Oracle CSI number and access

25   credentials to Oracle's secure technical support website in connection with its status as an OPN

26   member. Oracle terminated DLT-FBS's membership in the OPN on November 7, 2011 due to

27   DLT-FBS's breach of the terms of the OPN Agreement. Certain of DLT-FBS's obligations to

28   Oracle under the OPN Agreement survived the termination of that agreement.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    13.    Oracle is currently unaware of the true names and capacities of Does 1

2    through 50, inclusive, whether individual, partnership, corporation, unincorporated association,

3    or otherwise. Due to the surreptitious nature of Defendants' actions, and the complicated nature

4    of their scheme, the identities of Does 1 through 50 have been concealed from Oracle, preventing

5    Oracle from identifying them by name. After discovery, which is necessary to ascertain the true

6    names and capacities of Does 1 through 50, Oracle will amend its complaint to allege the

7    necessary identifying details.

8    14.    Defendants Service Key and DLT-FBS have each agreed to personal

9    jurisdiction and venue in this District in contracts with Oracle, which by this action Oracle

10   alleges Service Key and DLT-FBS have breached.

11   15.    Defendants Service Key, Vines, and DLT-FBS are also subject to personal

12   jurisdiction in California because they each have committed wrongful intentional acts, expressly

13   aimed at Oracle, who Defendants knew or should have known is a resident of California, and

14   caused harm that they knew or should have known was likely to be suffered by Oracle in

15   Redwood City, California.

16   16.    At all material times, each of the Defendants, including Does 1 through

17   50, was the agent, servant, employee, partner, joint venturer, representative, subsidiary, parent,

18   affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial

19   assistance to the alleged activities, and in so doing the things alleged, each was acting within the

20   scope of such agency, service, employment, partnership, joint venture, representation, affiliation,

21   or conspiracy, and each is legally responsible for the acts and omissions of the others.

22   **III.    JURISDICTION**

23   17.    Oracle's first cause of action arises under the Federal Copyright Act,

24   17 U.S.C. §§ 101 *et seq.*, its second cause of action arises under the Computer Fraud and Abuse

25   Act, 18 U.S.C. §§ 1030 *et seq.*, and its third cause of action arises under the Lanham Act,

26   15 U.S.C. § 1125(a)(1)(B). Accordingly, this Court has subject matter jurisdiction over this

27   action pursuant to 18 U.S.C. § 1030(g), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

18.     This Court has supplemental subject matter jurisdiction over the pendant state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

**IV.     VENUE**

19.     Venue in this District is appropriate because Service Key and DLT-FBS have both consented to venue in this District in at least one of the contracts on which Oracle sues in this case.

20.     Venue in this District is also appropriate because Service Key, Vines, and DLT-FBS, each have committed wrongful intentional acts, expressly aimed at Oracle, who Defendants knew or should have known is a resident of this District, and caused harm that they knew or should have known was likely to be suffered by Oracle in this District. As a result, each defendant would be amenable to personal jurisdiction if this District were a separate state, and therefore venue in this District is appropriate under 28 U.S.C. § 1400(a).

**V.     INTRADISTRICT ASSIGNMENT**

21.     This action alleges, among other things, claims for copyright infringement. As such, it is an intellectual property action and may be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c).

**VI.     FACTUAL ALLEGATIONS**

**A.     Oracle's Computer Systems and Support Materials**

22.     Oracle develops, manufactures, markets and distributes enterprise business hardware and software systems, and provides related technical support and consulting services. The hardware systems that Oracle develops and distributes involve several components, all of which Oracle supplies. In a simplified view, the foundation of the system (or "stack" as it is sometimes called) is typically storage and servers, such as Oracle's Sun servers. The server requires an operating system to run it, such as Oracle's Solaris operating system, which is an analog to Microsoft's Windows operating system for personal computers. A typical configuration would also employ a database to manage business data, middleware to allow the

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   database to interact with various applications that provide the business logic to be performed by

2   the system, and the applications themselves, such as human resources software for payroll

3   processing or financials software for financial reporting.

4           23.    Oracle's comprehensive line of Sun server and storage systems provides

5   world-class performance for businesses of all sizes, and include some of the most reliable,

6   scalable, and energy-efficient systems in the industry. Oracle also provides the Solaris operating

7   system and related "firmware" to run its Sun servers. Solaris is one of the most advanced

8   operating systems available for enterprise use. It provides innovative, built-in features that

9   deliver breakthrough high availability, advanced security, efficiency, and industry-leading

10  scalability/performance, and are targeted at business customers.

11          24.    As is typical in the computer industry, Oracle offers technical support

12  services for Solaris. For example, customers who own Oracle/Sun hardware may also purchase

13  technical support services from Oracle which entitle those customers to maintenance, updates,

14  bug fixes, and patches for their Oracle/Sun hardware, operating systems and firmware that run on

15  that hardware ("Solaris updates"). This support includes access to Oracle online support tools,

16  additional maintenance and upgrades for Oracle's Solaris operating system, patches, and

17  telephone or in-person assistance from Oracle technical support experts. Solaris updates are

18  available as downloads from Oracle's password-protected, secure customer support website.

19  Customers choose the patch or patch set to apply based on the issues that they seek to address

20  and the status of their particular system at the time the issue arises.

21          25.    Typically, Oracle's technical support service agreements last for twelve

22  months. The customer may renew the agreement for additional twelve-month terms.

23      **B.**    **Oracle's Support Websites and Terms Of Use**

24          26.    After the Oracle/Sun combination, Oracle migrated the support resources

25  for Sun's computer hardware products to the My Oracle Support ("MOS") website, a password-

26  protected, web-based support portal. MOS provides a single, integrated support platform for

27  most Oracle products. After approximately December 12, 2010, Oracle customers could access

28  Solaris updates through MOS.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1       27.     In order to get an MOS login credential, a customer must create an

2   Oracle.com account. In order to create an Oracle.com account, a customer must submit certain

3   information, and to agree to certain terms and conditions, including the Oracle.com and MOS

4   Terms of Use. The Oracle.com Terms of Use apply to all users of Oracle's websites, and state:

5           *By accessing or using the Site or the Content provided on or*
            *through the Site, you agree to follow and be bound by the*
6           *following terms and conditions concerning your access to and use*
            *of the Site and the Content provided on or through the Site*
7           *("Terms of Use") and our Privacy Policy.*

8
9       28.     The Oracle.com Terms of Use state that only authorized users may access

10  secure areas of Oracle's website. They further state that registered users may not allow others to

11  use their passwords or account information to access Oracle's websites:

12          *You agree not to attempt to gain unauthorized access to any parts*
            *of the Site or any Oracle accounts, computer systems or networks.*

13          *[…]*

14          *Access to and use of password protected or secure areas of the Site*
            *is restricted to authorized users only. You agree not to share your*
15          *password(s), account information, or access to the Site. You are*
            *responsible for maintaining the confidentiality of password(s) and*
16          *account information, and you are responsible for all activities that*
            *occur under your password(s) or account(s) or as a result of your*
17          *access to the Site. You agree to notify Oracle immediately of any*
            *unauthorized use of your password(s) or account(s).*

18
19      29.     Through the Oracle.com Terms of Use, users of Oracle's websites also

20  agree to submit to California law and the jurisdiction of California courts for legal actions

21  relating to the access to, or use of, Oracle's websites and/or the content they contain, and agree

22  that venue for any such actions in proper in this District:

23          *All matters relating to your access to, and use of, the Site and*
            *Content provided on or through or uploaded to the Site shall be*
24          *governed by U.S. federal law or the laws of the State of California.*
            *Any legal action or proceeding relating to your access to, or use*
25          *of, the Site or Content shall be instituted in a state or federal court*
            *in San Francisco, San Mateo or Santa Clara County, California.*
26          *You and Oracle agree to submit to the jurisdiction of, and agree*
            *that venue is proper in, these courts in any such legal action or*
27          *proceeding.*

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1          30.     To the extent more than one version of the Oracle.com Terms of Use was

2     in effect during the time period relevant to the allegations in this Complaint, each version

3     contained provisions identical or substantially similar to those cited above.

4          31.     Once a customer has established an account with Oracle.com, that

5     customer may also, if authorized to do so, sign up for MOS access, which has additional Terms

6     of Use.

7          32.     When a customer signs up for MOS access, that customer must accept and

8     agree to abide by the My Oracle Support Terms of Use ("MOS Terms of Use"). The MOS Terms

9     of Use specify, among other things, that only authorized users may access MOS, and only for

10    authorized purposes, and that those authorized users may not use the material available through

11    MOS other than for "internal business operations:"

> *You agree that access to My Oracle Support, including access to the service request function, will be granted only to your designated Oracle technical support contacts and that the Materials may be used only in support of your authorized use of the Oracle programs and/or hardware for which you hold a current support contract from Oracle. Unless specifically provided in your agreement with Oracle, the Materials may not be used to provide services for or to third parties and may not be shared with or accessed by third parties. However, the Materials may be shared with or accessed by third parties who are your agents or contractors acting on your behalf solely for your internal business operations and you are responsible for their Compliance with these My Oracle Support Terms of Use. You agree that you will not access or use My Oracle Support in any manner that could damage, disable, overburden, impair, or otherwise result in unauthorized access to or interference with, the proper functioning of any Oracle accounts, systems, or networks.*

22         33.     The MOS Terms of Use further prohibit a customer from using,

23    disclosing, transmitting, or copying any of the materials contained on the website other than to

24    support that customer's own authorized use of those materials for which that customer holds a

25    current support contract from Oracle:

> *[T]he information contained in the [My Oracle Support] Materials is the confidential proprietary information of Oracle. You may not use, disclose, reproduce, transmit, or otherwise copy in any form or by any means the information contained in the Materials for any purpose, other than to support your authorized use of the Oracle programs and/or hardware for which you hold a current support*

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   *contract from Oracle, without the prior written permission of*
2   *Oracle.*

3          34.     To the extent there was more than one version of the MOS Terms of Use

4   in effect during the time period relevant to the allegations in this Complaint, each version

5   contained provisions identical or substantially similar to those cited above.

6          35.     Furthermore, at all relevant times, the main MOS web page—which all

7   users must visit to access MOS—stated that "Use of this site is subject to the Legal Notices and

8   Terms for Use and Privacy Statement located on this site," which include the MOS Terms of

9   Use. Therefore, any use of MOS is governed by the MOS Terms of Use.

10         36.     The Oracle.com Terms of Use and the MOS Terms of Use are valid,

11  enforceable contracts between Oracle and all customers or other users who register for, or access

12  MOS.

13         37.     Service Key and DLT-FBS registered to access, and accessed, MOS. Each

14  agreed to the MOS and Oracle.com Terms of Use.

15  **C.     DLT-FBS Breached Its OPN Agreement By Providing**
           **Unauthorized Access To Oracle's Software And Support**
16         **Websites**

17         38.     DLT-FBS' OPN membership was predicated on its alleged interest in

18  becoming a reseller of Oracle's products, further evidenced by its execution of a FUDA on

19  August 29, 2011. The OPN Agreement specifies, among other things, that DLT-FBS may not

20  "use or duplicate the Oracle property provided to you by Oracle for any purpose other than as

21  specified in the OPN policies or in this agreement or make the Oracle property available to

22  unauthorized third parties." The OPN Agreement also specifies that DLT-FBS may not "use the

23  Oracle property for your own internal business operations, or use the Oracle property or make

24  the Oracle property available in any manner to any third party for use in the third party's

25  business operations or for any other commercial or production use." The OPN Agreement

26  specifies that it is "governed by the substantive and procedural laws of the State of California

27  and [DLT-FBS] and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    courts in San Francisco, San Mateo, or Santa Clara counties in California in any dispute arising

2    out of or relating to this agreement."

3          39.    The OPN Agreement also states that "Oracle may audit [DLT-FBS's] use

4    of the Oracle property." DLT-FBS also agreed "to cooperate with Oracle's audit and provide

5    reasonable assistance and access to information including but not limited to relevant books,

6    records, agreements, servers, technical personnel, and order reporting systems." DLT-FBS also

7    agreed to an audit in the FUDA, which states "Oracle may audit your distribution of the

8    programs, hardware, learning credits and services and your activities under this agreement . . .

9    You agree to cooperate with Oracle's audit and provide reasonable assistance and access to

10   information including but not limited to relevant books, records, agreements, servers, technical

11   personnel, and order reporting systems."

12         40.    DLT-FBS breached its agreements with Oracle by, among other things:

13   (1) using its CSI number and access credentials for Oracle's support websites for the

14   unauthorized purpose of accessing and taking Oracle's proprietary software products, such as

15   certain software patches and updates; (2) using these software products to provide unauthorized

16   third party support services to third party customers that DLT-FBS contracted with directly;

17   (3) distributing these software products to third parties who did not have active service support

18   contracts with Oracle, and who could not legally receive them (in its own words, it "facilitated

19   the obtainment of such patch releases as directed by the equipment owners"); and (4) distributing

20   and/or facilitating the distribution of access credentials for Oracle's support websites under false

21   pretenses to unauthorized third parties (who did not know that DLT-FBS lacked the authority it

22   claimed).

23         41.    By trafficking in Oracle website credentials, DLT-FBS enabled

24   unauthorized third parties directly to access Oracle's secure support websites and download

25   Oracle's proprietary software products without permission from Oracle. On information and

26   belief, and subject to further discovery to identify additional customers, DLT-FBS provided such

27   access to the following customers:

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- The Space and Naval Warfare Systems Command Systems Center in Atlantic Charleston, a division of the U.S. Navy identified in DLT-FBS's contracts as "US NAVY SPAWARSYSCEN Atlantic Charelston;
- The Space and Naval Warfare Systems Command Systems Center in Atlantic New Orleans, a division of the U.S. Navy identified in DLT-FBS's contracts as SPAWARSYSCENLANT New Orleans Office;
- The Naval Education and Training Professional Development and Technology Center, a division of the U.S. Navy identified in DLT-FBS's contracts as NETPDTC - Acquisition Management;
- The Naval Criminal Investigative Service, a division of the U.S. Navy identified in DTL-FBS's contracts as NCIS Procurement and Logistics;
- The Department of Health and Human Services and the Food and Drug Administration, identified in DLT-FBS's contracts as DHHS/FDA/OAGS/DSCI;
- Mission and Installation Contracting Command at Fort Eustis, a division of the U.S. Army identified in DLT-FBS's contracts as MICC Center Fort Eustis;
- The Army Reserve Contracting Center-East a division of the U.S. Army; and
- Army Fort Sam Houston

42.     On August 2, 2011, DLT-FBS contracted with the Department of Health and Human Services and the Food and Drug Administration for the provision of support on Oracle/Sun products. This contract was numbered GS-35F-0472X. In that contract, DLT-FBS stated that all "upgrades/patch releases" would come "directly from Oracle/Sun." Ex. A (excerpts of DLT-FBS contracts) at FBSCGov000069. This representation was false. DLT-FBS knew that it had no authorization to provide its customers, including the Department of Health and Human Services and the Food and Drug Administration, access to Oracle's support websites or to offer support "directly from Oracle/Sun."

43.     On September 23, 2011, Jennifer Fagan of the Food and Drug Administration wrote DLT-FBS a letter expressing concern regarding DLT-FBS's performance under its contract with DLT-FBS numbered GS-35F-0472X, and order number

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   HHSF223201110349G. Ex. B. Ms. Fagan wrote that since September 7, 2011 the FDA had been

2   unable to download upgrades and patches from Oracle's websites. Ms. Fagan then demanded

3   DLT-FBS send the FDA the necessary upgrades and patches. On September 27, 2011, DLT-FBS

4   employee Geoff Prosser ("Prosser") used DLT-FBS's CSI number to create access credentials to

5   Oracle's secure support website for the FDA without authorization to do so and in violation of

6   Oracle's rights and Oracle's contractual agreements with DLT-FBS.

7       44.     On October 21, 2011, Prosser notified two consultants named Ken Jackson

8   and Eric Elan that the Space and Naval Warfare Systems Command Systems Center in Atlantic

9   New Orleans requested Solaris updates that it was not entitled to receive, and asked the

10   consultants to identify a proactive method of notifying DLT-FBS's customers that Solaris

11   updates were available. Ex. C. On October 25, 2011, Prosser directed Jackson to send the

12   recently released Oracle patch to several of DLT-FBS's customers that were not authorized to

13   receive it, such as the customers identified in paragraph 41. Ex. D.

14       45.     In addition, on October 21, 2011, Rob Muse ("Muse") a DLT-FBS

15   contractor (and a former Service Key employee), sent an email to DLT-FBS customer Charles

16   Buzbee of the U.S. Navy – with the subject line "DLT Ticket #11195" – providing him with a

17   temporary login to Oracle's support websites. Ex. E. Neither Muse nor DLT-FBS had any

18   authorization to provide any third party with these access credentials. Muse reported directly to

19   DLT-FBS executives on the status of these efforts to provide unauthorized software support to

20   DLT-FBS's customers. For instance, on February 1, 2012 Muse told DLT-FBS employees Anne

21   Rose, Geoff Prosser and Michael Johnson that he would try to send Khan Nguyen, an employee

22   of the U.S. Navy an Oracle Solaris update. Ex. F.

23       46.     DLT-FBS similarly and fraudulently provided such access credentials to

24   the Space and Naval Warfare Systems Command Systems Center in Atlantic Charleston in

25   connection with its contract numbered GS-35F-0472X and delivery order no. N65236-11-F-6499

26   signed on September 2, 2011, and delivery order no. N65236-11-F-L027 signed on August 30,

27   2011.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

47.     DLT-FBS similarly and fraudulently provided such access credentials to the Naval Education and Training Professional Development and Technology Center in connection with its contract numbered GS-35F-0472X and delivery order no. N68322-12-F-M014 signed on September 29, 2011, and with its contract numbered GS-35F-0563U and delivery order no. N68322-13-F-M004 signed on August 31, 2012.

48.     DLT-FBS similarly and fraudulently provided such access credentials to the Naval Criminal Investigative Service in connection with its contract numbered GS-35F-0472X and delivery order no. N63285 121 0018 signed on October 14, 2011.

49.     DLT-FBS similarly and fraudulently provided such access credentials to the Mission and Installation Contracting Command at Fort Eustis in connection with its contract numbered GS-35F-0472X and Order no. W911S0-12-F-0023 signed May 9, 2012, and the contract numbered W911S0-12-F-0018 signed on June 5, 2012.

50.     DLT-FBS similarly and fraudulently provided such access credentials to Army Reserve Contracting Center-East in connection with its contract numbered GS-35F-0472X and Order no. W911S1-11-F-0419 signed September 29, 2011.

51.     Through the conduct described above, DLT-FBS induced all of its customers of Oracle's support services to cancel their support contracts with Oracle by falsely representing to those customers that DLT-FBS could legally provide service and support for their Oracle computer products less expensively than Oracle.

52.     On November 11, 2011, DLT-FBS told a representative of an agency of the U. S. Navy who inquired about obtaining Oracle Premier Support that "Oracle Premier Support is just a brand name," and that DLT-FBS could provide "premier support" that included "firmware and patches" and "product documentation." That was false, and DLT-FBS knew it was false at the time. Ex. G at 1. DLT-FBS made this representation to each of its Sun customers (those currently known are listed in paragraph 41 above though Oracle believes discovery will reveal additional customers).

53.     As part of DLT-FBS's contract numbered GS-35F-0472X with sub-entities of the U.S. Navy, it promised to deliver Oracle Premier Support, even though it was not

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    authorized to do so. On September 1, 2011, Cheryl Bruza of SPAWAR (one such sub-entity)

2    asked DLT-FBS, "Do you have an authorization letter from Oracle to be an Oracle Premier

3    Support provider/reseller? Please provide the authorization given to your company from Oracle."

4    Ex. H at 3. In response on that same day, DLT-FBS's Michael Johnson attached a copy of DLT-

5    FBS's OPN agreement and falsely stated: "Our partner level provides us with access to all

6    Sun/Oracle software updates, patch releases, micro code upgrades, etc. for the current versions of

7    the software on all of the equipment under the subject contract." *Id.* at 2. While DLT-FBS's OPN

8    membership did provide it with certain limited access to Oracle's support website, DLT-FBS

9    knew that it could not use Oracle's support website or the valuable Solaris updates accessible

10    through it to deliver its own support services to end user customers, including SPAWAR.

11         54.    DLT-FBS's September 29, 2011 contract with the Naval Education and

12    Training Professional Development and Technology Center, numbered GS-35F-0472X and

13    delivery order no. N68322-12-F-M014 states that DLT-FBS was providing "Oracle Premier

14    Support." Ex. A at FBSCGov000011, 000012. That very customer – indeed, literally the same

15    person who signed the agreement on behalf of NETPDTC – later objected when she learned the

16    truth that DLT-FBS was not providing Oracle-brand support. Ex. G at 5 (Email from Jo Ann

17    Stapleton, Nov. 10, 2011 at 4:16 pm) ("I am a bit confused because the order DLT was awarded

18    and accepted states Oracle Premier Support not equivalent as you state below. It must be Oracle

19    Premier Support."). Oracle believes discovery will reveal other instances of this conduct.

20         55.    Upon information and belief, DLT-FBS induced each of its Sun customers

21    (those currently known are listed in paragraph 41 above though Oracle believes discovery will

22    reveal additional customers) to cancel their support contracts with Oracle by falsely representing

23    that it could provide the same level of support as Oracle, including access to Oracle's proprietary

24    software.

25         56.    DLT-FBS also falsely represented to its customers and potential customers

26    that they could still obtain—from DLT-FBS—Solaris updates for their Oracle computer products

27    if they cancelled their support contracts with Oracle. For example, on September 1, 2011,

28    Michael Johnson of DLT-FBS told a representative of an agency of the U. S. Navy "[DLT-

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    FBS's] partner level provides us with access to all Sun/Oracle software updates, patch releases,

2    micro code upgrades, etc. for the current versions of the software on all of the equipment under

3    the subject contract." Ex. H at 2. This statement was knowingly false. It also has grave

4    consequences for Oracle; the materials referred to in DLT-FBS's statement include proprietary

5    Solaris updates and many other mission critical computer files necessary to run properly Oracle's

6    Sun servers and the Solaris operating system. Oracle partners may not sell this proprietary and

7    highly valuable intellectual property of Oracle to customers through unauthorized technical

8    support contracts, nor may customers without active support contracts with Oracle have access to

9    them.

10          57.     On November 7, 2011, Oracle terminated DLT-FBS' OPN Agreement and

11    its FUDA because DLT-FBS repeatedly had breached those agreements by, among other things,

12    misrepresenting the scope of its relationship with Oracle and its ability to access and use Oracle

13    support services or products for the benefit of third parties. Oracle also discovered that DLT-FBS

14    had provided unauthorized access to Oracle's support website and software to third parties, and

15    had trafficked in Service Key's Oracle website log on credential, as explained below.

16       **D.**      **Service Key Provided Others With Unauthorized Access To**
17             **Oracle's Software And Support Websites.**

18          58.     Service Key purchased hardware from Oracle/Sun and signed an End User

19 Purchasing Agreement with Oracle. Pursuant to that agreement, Service Key agreed:

20          *to permit Sun, or Sun's independent audit firm, to access and audit*
           *Company systems, facilities and records (no more than one (1)*

21          *time per year unless Sun has evidence indicating [Service Key] is*
           *in breach of this Agreement) to the extent necessary to determine*

22          *Company's compliance with Sun's license grants."*

23          59.     Service Key has maintained and renewed support service agreements with

24 Oracle since at least 2006 for three pieces of Oracle/Sun computer hardware that Service Key

25 bought from Oracle/Sun. The general terms of these renewal agreements are substantially

26 similar. They state in part that "SERVICE KEY agrees that the ordered services shall be used

27 solely by the Customer [i.e. Service Key]. . . ." The general terms of each of these renewal

28 agreements also state that "Technical support is provided under Oracle's technical support

1    policies in effect at the time the services are provided." Oracle terminated these agreements with

2    Service Key on February 17, 2012 due to Service Key's material, non-remediable breaches of

3    these contracts.

4            60.     Muse is listed as the "Contract Contact" and/or "Software Recipient" for

5    Service Key on a number of Service Key's support services agreements and/or renewal

6    agreements with Oracle/Sun.

7            61.     Oracle's Hardware and Systems Support Policies (which Service Key's

8    2011 renewal agreements reference) specify that Service Key may only download Solaris

9    updates for use with the specific Sun computers that Service Key owns and that its active support

10   contracts identify: "Customers with unsupported hardware systems are not entitled to download

11   or receive updates, maintenance releases, patches, telephone assistance, or any other technical

12   support services for unsupported hardware systems."

13          62.     Oracle's Hardware and Systems Support Policies also specify that "Your

14   technical contacts are the sole liaisons between you and OSS [Oracle Support Services] for

15   technical support of programs," and permit a customer to designate one primary and four backup

16   individuals per data center location to serve as liaisons with OSS.

17          63.     Oracle's Hardware and Systems Support Policies further state that "My

18   Oracle Support is Oracle's customer support website for hardware support. Access to My Oracle

19   Support is governed by the Terms of Use posted on the My Oracle Support web site;" and that

20   "Access to My Oracle Support is limited to your designated technical contacts." These terms

21   make clear that Service Key may not permit or enable anyone other than its own specifically

22   designated technical contact people to access MOS.

23          64.     Service Key advertises itself as an "independent service and maintenance

24   organization" and as "one of the industry's leading providers of alternative maintenance and

25   managed services." Service Key's website states that it can provide support services for products

26   developed by most of the leading enterprise hardware manufacturers, including Oracle's Sun

27   hardware products. Service Key's business model is to provide support services to other third

28   party support services companies, such as DLT-FBS, that act as its "partners" and sell those

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    services to end customers that use the hardware products of manufacturers like Oracle. Service

2    Key also provides support services on Oracle/Sun products directly to end-user customers,

3    usually under contract with a "partner" that subcontracts these services through Service Key.

4    Service Key touts that "On average, pricing that is provided by Service Key to our partners

5    ranges from 30%-80% off of manufacturer's [sic] published list prices. The partner then

6    determines the markup to their customer." Service Key also states on its website that it is "your

7    silent partner in success. . . . Only your brand (never Service Key's) appears on our partner sites

8    or correspondence collateral. Calls to the Service Key help desk are answered in our partner's

9    name."

10           65.    Pursuant to its license and support contracts with Oracle, Service Key may

11   only use its Oracle login credentials for its own internal business use to support the specific

12   pieces of Oracle computer hardware that it owns and for which it has purchased service

13   agreements from Oracle. It appears that Service Key bought support from Oracle in order to

14   acquire MOS access credentials and Oracle's software to resell to third parties in violation of

15   Service Key's agreements with Oracle, and to use to market itself to its "partners" as having the

16   (false and illegal) capability to provide Solaris updates to Oracle's end-user customers.

17           66.    For instance, Service Key fraudulently told its customers in marketing

18   material entitled the Sun Alternative Maintenance Guide that "Service Key is the vehicle to assist

19   you in getting the [Sun Solaris] patches, minor updates, and releases." Ex. I at 2.

20           67.    Service Key then did what it said it would, and unlawfully used its MOS

21   access credentials to provide Solaris updates directly to end-user customers who have no right to

22   receive them. On information and belief, and subject to further discovery to identify additional

23   customers, the customers to whom Service Key provided Solaris updates are: SITA; Federal

24   Home Bank of Atlanta; University of Utah Hospital; TelCel; Cablevision - Production; Bulletin;

25   Antelope Valley; Weldon William & Lick; Yodlee, Inc. - Canvas; Cooke Communications NC;

26   Lackland AFB; Lubbock Avalanche Journal; USGS; Savannah Morning News; ION Media

27   Networks; Investment Company Institute; 1013 Communications LLC (East Valley Tribune);

28   Topeka Capital - Journal; Athens Banner - Herald; Amarillo Globe-News; Arkansas Democrat

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Gazette; Phoenix Color; Florida Times-Union; Waco Tribune Herald; AARP; Meredith; Autoliv

2    ASP Inc.; CompuCredit; Phototype; Malone Advertising; Florida Today Newspaper; Adtran,

3    Inc.; Ball Aerospace; Mundocom USA; Ladish Co.; Maximus, Inc.; Alloy Education; Image

4    Dynamics; PEEQ; Allen Press, Inc.; and ColorEdge Visual.

5            68.     Service Key occasionally provided Solaris updates to these customers on

6    behalf of other companies that contracted directly with the end-users. On information and belief,

7    and subject to further discovery to identify additional companies, these companies are: NAPC,

8    Inc.; Rorke Data; Presido Corporation; North American Systems International, Inc.; Atlantix

9    Global Systems, LLC; Digital Technology International, Inc; Canvas Systems (Avnet

10   Remarketing Solutions); Edge Digital, LLC; SecureTek Group, Inc.; Acclinet Corporation;

11   Experis Technology Corp.; Recurrent Technologies, Inc.

12           69.     Service Key also falsely told its customers in the Sun Alternative

13   Maintenance Guide, that were "entitled to [Oracle's software] based on the end-user original

14   license agreement." Ex. I at 5. Service Key knew this was false, as evidenced by the fact that its

15   renewed its own support agreement with Oracle (which has now been terminated) precisely

16   because it was not entitled to ongoing Oracle's support materials simply by virtue of its original

17   license agreement.

18           70.     On January 17, 2011, Service Key customer Allen Press, Inc. told Service

19   Key, "We need the following Sun patch, but do not have access/permission to download this

20   patch with our login for Sun/Oracle. Do you have someone that could get us this patch?" Service

21   Key employee Scott Hodgson then sent the customer the Solaris update, even though Service

22   Key had no authorization to do so. Ex. J at 2.

23           71.     On February 10, 2012, Service Key employee Paul Coffey told Mike

24   Jacovitch, a consultant that worked with Service Key, that an end-user customer should update

25   its version of Solaris, and install Solaris patches to resolve a "system panic." Ex. K. Coffey then

26   provided Jacovitch with a link to download the Solaris patches, even though he was not

27   authorized to do so, and the patches itself included a readme file that identifies the software as

28   copyrighted by Oracle, and also a legal_license.txt file that states the files "are the confidential

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    information of Sun and copyrighted by Sun. You may not reproduce or distribute the Software or

2    Information to any third party without prior written authorization from Sun." Oracle believes

3    discovery will reveal additional instances of this conduct.

4         72.     On June 20, 2011, Mike Jacovitch noted in service records that Coffey

5    provided customer NAPC, Inc. with the latest Solaris patch, even though Service Key had no

6    authorization to do so. Ex. L at 4.

7         73.     Since at least September, 2010, Service Key has repeatedly downloaded

8    large volumes of Oracle's software without authorization, including multiple versions of Solaris

9    updates. Upon information and belief, these downloads were not for use with the three Service

10    Key computers that were subject to an active service contract with Oracle; but rather were used

11    to create an unauthorized library of Oracle software for Service Key to use to provide illicit

12    copies of Oracle's software to third parties including its customers.

13         74.     ServiceKey has also unlawfully distributed its MOS credentials to its

14    customers, who were not authorized to use them. Many unauthorized entities have used Service

15    Key's access credentials to access the MOS website from a variety of locations/IP addresses to

16    download a substantial amount of software that is well in excess of the quantities typical of a

17    normal user. Unlicensed entities unrelated to Service Key used Service Key's access credentials

18    to download over 200 items of Oracle software on September 7, 2011; more than 200 additional

19    items the following day; and over 800 more on October 4, 2011.

20         75.     In addition, on July 23 and November 6, 2011, a user with an IP address

21    owned by third-party Ball Corporation accessed Oracle's protected support websites using

22    credentials registered to Service Key and downloaded Oracle's copyrighted Solaris updates.

23    Oracle never authorized Service Key or anyone else to provide Ball Corporation with these

24    access credentials.

25         76.     On July 14, and November 10 and 15, 2011, a user with an IP address

26    owned by third-party Department of Defense accessed Oracle's protected support websites using

27    credentials registered to Service Key and downloaded Oracle's copyrighted Solaris updates.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Oracle never authorized Service Key or anyone else to provide the Department of Defense with
2   these access credentials.

3          77.     On September 8, October 21, and December 1, 2011, users with IP
4   addresses owned by unknown third-parties accessed Oracle's protected support websites using
5   credentials registered to Service Key and downloaded Oracle's copyrighted Solaris updates.
6   Oracle never authorized Service Key or anyone else to provide the third parties with these access
7   credentials. Oracle believes discovery will reveal additional instances of this conduct.

8          78.     Service Key and Vines also falsely represented to customers and potential
9   customers that they could still obtain—from Service Key—legal copies of software patches and
10   updates for their Oracle computer products if they cancelled their support contracts with Oracle.

11          79.     For example, at an October, 2010 ASCDI meeting in San Francisco,
12   California, Vines falsely stated to a number of customers and/or potential customers that Service
13   Key had made a deal with Sun and/or Oracle that would allow Service Key to provide Solaris
14   updates. This statement was knowingly false. Service Key did not have authorization to sell or
15   provide to others Oracle's intellectual property, including proprietary Solaris updates.

16          80.     Vines made substantially similar false statements regarding Service Key's
17   authorization and ability to provide software maintenance support related to Solaris to customers
18   and/or potential customers at an XChange conference in Las Vegas, Nevada, in November, 2010.

19          81.     Upon information and belief, at all relevant times, Vines was aware of
20   and/or personally directed the activities of Service Key alleged here.

21          82.     Upon information and belief, Service Key also encouraged certain of its
22   customers to maintain an active service support relationship with Oracle for some of that
23   customer's Sun computers, and Service Key would use the customer's own MOS credentials to
24   perform unauthorized downloads of Oracle's software for use with other, unsupported machines.

25       **E.**     **Defendants' Wrongful Conduct Injured Oracle**

26          83.     Defendants willfully, intentionally, and knowingly engaged in the
27   wrongful conduct alleged in this Complaint, including Defendants' copyright infringement,

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    violations of the Computer Fraud and Abuse Act, false advertising, breaches of contract,

2    interference with Oracle's business relationships, fraud, and other unfair business practices.

3                84.    Specifically, upon information and belief, Defendants illicitly provided

4    access credentials for Oracle's secure support websites and/or copies of Oracle's proprietary

5    software to end-user customers, or to third-party support providers who in turn provide those

6    access credentials and/or that software to customers. Defendants enable those customers to

7    access Oracle's secure support website, without Oracle's permission and in violation of those

8    websites' terms of use, and download unlicensed copies of Oracle's proprietary software and

9    without paying Oracle for it.

10               85.    As a direct and proximate result of these acts, Oracle has suffered injury,

11   damage, loss, and harm, including, but not limited to, loss of profits from sales to current and

12   potential customers of Oracle support services and/or licenses for Oracle software programs, and

13   violation of Oracle's intellectual property rights. The wrongful conduct by the Defendants

14   alleged above was a substantial factor in causing this harm.

15                            **First Claim for Relief**

16                            **Copyright Infringement**

17                         (By Oracle Against All Defendants)

18               86.    Oracle incorporates each of the allegations in preceding paragraphs 1-85

19   of this Complaint as though fully set forth here.

20               87.    Oracle owns a valid and enforceable copyright in all of its software and

21   support materials, including the Solaris updates, which are creative works of original authorship.

22   Oracle has pre-existing, and will obtain from the Register of Copyrights, Certificates of

23   Registration that cover many of the software and support materials taken and copied by Service

24   Key, DLT-FBS, and others acting in concert with them.[2]

25   _____

26   [2] Oracle reserves the right to amend its Complaint to include additional registered works as it
     continues to analyze the scope of Defendants' wrongful downloading, and in the event that it
27   obtains additional copyright registrations for software and support materials taken and copied by
     Defendants beyond the registrations it has already.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    88.    Oracle holds all of Sun's interest, rights, and title to the copyrights at issue

2    in this action.

3    89.    Oracle owned one or more exclusive rights in certain copyrights at issue in

4    this case at a point in time during which Defendants infringed those exclusive rights.

5    90.    Defendants have infringed copyrights in Oracle software, including the

6    software covered by these certificates. These certificates are identified, dated, and numbered as

7    follows:

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Solaris 8 (SPARC Platform Edition) | June 19, 2000 | TX 5-138-319 |
| Solaris 10 operating system | April 19, 2005 | TX 6-086-753 |

10    91.    These registrations generally cover versions of Oracle's Solaris operating

11    system and other software, including the updates, patches and fixes incorporated into each

12    relevant version, which Defendants and others acting in concert with them copied without a

13    license.

14    92.    Through the acts alleged above, Defendants and those acting in concert

15    with them have violated Oracle's exclusive rights to reproduce and make copies of its

16    copyrighted software, including materials covered by the registrations listed above by, among

17    other things, downloading (copying) Oracle's copyrighted software onto their computers in

18    violation of 17 U.S.C. § 106.

19    93.    Defendants have also violated Oracle's exclusive rights by downloading,

20    copying, creating derivative works from and/or distributing Oracle's software, via posting to

21    other websites, by electronic mail, through file transfer protocol, or otherwise, in violation of

22    17 U.S.C. § 106.

23    94.    Defendants and those acting in concert with them were not authorized to

24    copy, download, reproduce, create derivative works from, distribute, or publicly display Oracle's

25    copyrighted software except as authorized by and in support of a specifically licensed use, and

26    with respect only to software for which they had a current right to have and use.

27    95.    In addition to directly infringing Oracle's exclusive rights, Defendants

28    have contributorily and/or vicariously infringed Oracle's exclusive rights in the software by

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  controlling, directing, intentionally encouraging, inducing, or materially contributing to the

2  copying, distribution, public display, and/or creation of derivative works from Oracle's

3  copyrighted software. Defendants also obtained a direct financial benefit from the above alleged

4  infringing activities while declining to exercise their right to stop it or limit it.

5         96.     Defendants knew or should have known that copying, distributing,

6  publicly displaying, and creating derivative works of and from Oracle's software, which

7  Defendants had no license to copy, distribute, publicly display, or create derivative works from;

8  or controlling, directing, intentionally encouraging, inducing, or materially contributing to

9  others' efforts to do so, infringed Oracle's exclusive rights in that software.

10         97.     Oracle is entitled to damages from Defendants in an amount to be proven

11  at trial, including profits attributable to the infringement not taken into account in computing

12  actual damages under 17 U.S.C. § 504(b). Oracle America is entitled to statutory damages under

13  17 U.S.C. § 504(c) based on Defendants' infringements after the dates of copyright registration.

14         98.     Defendants' infringement of Oracle's exclusive rights has also caused

15  Oracle irreparable injury. Unless restrained and enjoined, Defendants will continue to commit

16  such acts. Oracle's remedies at law are not adequate to compensate it for these inflicted and

17  threatened injuries, entitling it to remedies, including injunctive relief as provided by 17 U.S.C.

18  § 502, and an order impounding or destroying any and all infringing materials pursuant to 17

19  U.S.C. § 503.

20  <u>**Second Claim for Relief**</u>

21  **Violation of the Federal Computer Fraud and Abuse Act**

22  **(18 U.S.C. §§ 1030(a)(6)(A) (By Oracle Against Service Key and DLT-FBS)**

23         99.     Oracle incorporates each of the allegations in the preceding paragraphs of

24  this Complaint as though fully set forth here, including without limitation Paragraphs 1-98.

25         100.    Oracle's secure MOS website is hosted by, and allows access to, certain of

26  Oracle's computers, computer systems, and computer networks, which are protected computers

27  within the meaning of 18 U.S.C. § 1030(e)(2). Those computers, computer systems, and

28  computer networks are data storage facilities directly related to and operating in conjunction with

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    Oracle's computers, which are used in and affect interstate and foreign commerce, including by

2    providing access to worldwide communications through applications accessible through the

3    Internet.

4          101.    Service Key and DLT-FBS have violated the Computer Fraud and Abuse

5    Act, 18 U.S.C. § 1030(a)(6)(A), by knowingly and with the intent to defraud trafficking in

6    passwords or similar information through which Oracle's computers and support websites may

7    be accessed without authorization.

8          102.    On February 15, 2011, DLT-FBS entered into the OPN Agreement in

9    order to join the OPN, and to obtain access to MOS. When entering into this agreement, DLT-

10   FBS represented and promised, among other things, that it would not "use or duplicate the

11   Oracle property provided to [it] for any purpose other than as specified in the OPN policies or in

12   [the OPN Agreement]," and that it would not "make the Oracle property available to

13   unauthorized third parties." At the time DLT-FBS made these representations and promises to

14   Oracle, DLT-FBS intentionally failed to disclose that it planned to use its access to MOS and

15   Oracle's software to provide support to its customers by making available access credentials for

16   Oracle's websites and materials downloaded from Oracle's websites to customers who did not

17   have authorization from Oracle to access MOS or download Oracle software.

18         103.    Oracle, at the time DLT-FBS made these promises and took the actions

19   alleged, reasonably relied on DLT-FBS's deception, was ignorant of DLT-FBS's secret intention

20   to provide DLT-FBS's customers with access credentials to Oracle's websites and/or proprietary

21   software downloaded from Oracle's websites, and could not, in the exercise of reasonable

22   diligence, have discovered DLT-FBS's secret intention. In reliance on DLT-FBS's promises,

23   Oracle permitted DLT-FBS to join the OPN and provided DLT-FBS with access to MOS and/or

24   continued allowing DLT-FBS to access MOS. If Oracle had known of DLT-FBS's actual

25   intention, Oracle would not have allowed DLT-FBS to join the OPN or to access MOS.

26         104.    As a proximate result of DLT-FBS's fraudulent conduct, Oracle was

27   damaged by, among other things the unauthorized use of MOS and its software by parties who

28   had not paid Oracle for it, in an amount to be proven at trial.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1           105.    On August 2, 2011, DLT-FBS contracted with the Department of Health

2   and Human Services and the Food and Drug Administration for the provision of support on

3   Oracle/Sun products. This contract was numbered GS-35F-0472X. In that contract, DLT-FBS

4   stated that all "upgrades/patch releases" would come "directly from Oracle/Sun." Ex. A at

5   FBSCGov000069. This representation was fraudulent. DLT-FBS knew that it had no

6   authorization to provide its customers, including the Department of Health and Human Services

7   and the Food and Drug Administration, access to Oracle's support websites.

8           106.    On September 23, 2011, Jennifer Fagan of the Food and Drug

9   Administration wrote DLT-FBS a letter expressing concern regarding DLT-FBS's performance

10   under its contract with DLT-FBS numbered GS-35F-0472X, and order number

11   HHSF223201110349G. Ms. Fagan wrote that since September 7, 2011 the FDA had been unable

12   to download upgrades and patches from Oracle's websites. Ms. Fagan then demanded DLT-FBS

13   send the FDA the necessary upgrades and patches. Ex. B. On September 27, 2011, DLT-FBS

14   employee Geoff Prosser used DLT-FBS's CSI number to create access credentials to Oracle's

15   secure support website for the FDA without authorization to do so and in violation of Oracle's

16   rights and Oracle's contractual agreements with DLT-FBS.

17           107.    As part of DLT-FBS's contract numbered GS-35F-0472X with sub-

18   entities of the U.S. Navy, it promised to deliver Oracle Premier Support, even though it was not

19   authorized to do so. Ex. A atFBSCGov000011-12. On September 1, 2011, Cheryl Bruza of

20   SPAWAR (one such sub-entity) asked DLT-FBS, "Do you have an authorization letter from

21   Oracle to be an Oracle Premier Support provider/reseller? Please provide the authorization given

22   to your company from Oracle." Ex. H at 3. In response on that same day, DLT-FBS's Michael

23   Johnson attached a copy of DLT-FBS's OPN agreement and falsely stated: "Our partner level

24   provides us with access to all Sun/Oracle software updates, patch releases, micro code upgrades,

25   etc. for the current versions of the software on all of the equipment under the subject contract."

26   *Id*. at 2. While DLT-FBS's OPN membership did provide it with access to Oracle's support

27   website, DLT-FBS knew that it could not use Oracle's support website or the valuable SSM's

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    accessible through it to deliver its own support services to end user customers including

2    SPAWAR.

3           108.    On October 21, 2011, DLT-FBS contractor Rob Muse sent an email to

4    DLT-FBS customer Charles Buzbee of the U.S. Navy – with the subject line "DLT Ticket

5    #11195" – providing him with a temporary login to Oracle's support websites. Ex. E. Neither

6    Muse nor DLT-FBS had any authorization to provide any third party with these access

7    credentials.

8           109.    DLT-FBS similarly and fraudulently provided such access credentials to

9    the Space and Naval Warfare Systems Command Systems Center in Atlantic Charleston in

10   connection with its contract numbered GS-35F-0472X and delivery order no. N65236-11-F-6499

11   signed on September 2, 2011, and delivery order no. N65236-11-F-L027 signed on August 30,

12   2011.

13          110.    DLT-FBS similarly and fraudulently provided such access credentials to

14   the Naval Education and Training Professional Development and Technology Center in

15   connection with its contract numbered GS-35F-0472X and delivery order no. N68322-12-F-

16   M014 signed on September 29, 2011, and with its contract numbered GS-35F-0563U and

17   delivery order no. N68322-13-F-M004 signed on August 31, 2012.

18          111.    DLT-FBS similarly and fraudulently provided such access credentials to

19   Naval Criminal Investigative Service in connection with its contract numbered GS-35F-0472X

20   and delivery order no. N63285 121 0018 signed on October 14, 2011.

21          112.    DLT-FBS similarly and fraudulently provided such access credentials to

22   Mission and Installation Contracting Command at Fort Eustis in connection with its contract

23   numbered GS-35F-0472X and Order no. W911S0-12-F-0023 signed May 9, 2012, and the

24   contract numbered W911S0-12-F-0018 signed on June 5, 2012.

25          113.    DLT-FBS similarly and fraudulently provided such access credentials to

26   Army Reserve Contracting Center-East in connection with its contract numbered GS-35F-0472X

27   and Order no. W911S1-11-F-0419 signed September 29, 2011. Oracle believes discovery will

28   reveal additional instances of this conduct.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1              114.    On May 16, 2011, December 8, 2011, and January 26, 2012, Service Key

2   renewed technical support service agreements with Oracle that covered certain specific

3   Oracle/Sun hardware servers that Service Key owns. When it entered into these renewal

4   agreements, Service Key represented and promised, among other things, that the services ordered

5   from Oracle under those agreements would be used solely by Service Key for the specific servers

6   identified therein.

7              115.    At the time Service Key made these representations and promises to

8   Oracle, Service Key intentionally failed to disclose that it planned to use the services it ordered

9   from Oracle (including access to MOS) as part of its business to sell or otherwise make available

10   its MOS access credentials to third parties, such as DLT-FBS, for use in supporting customers of

11   those third parties that do not otherwise have the right to access or use Oracle's support products

12   and services. Oracle, at the time Service Key made these promises and took the actions alleged,

13   reasonably relied on Service Key's deception, was ignorant of Service Key's secret intention to

14   make its MOS access credentials available to third parties, and could not, in the exercise of

15   reasonable diligence, have discovered Service Key's secret intention.

16             116.    As a proximate result of Service Key's fraudulent conduct, Oracle was

17   damaged by, among other things the unauthorized use of MOS and its software by parties who

18   had not paid Oracle for it, in an amount to be proven at trial.

19             117.    Service Key fraudulently told its customers in its marketing materials that

20   "Service Key is the vehicle to assist you in getting the [Sun Solaris] patches, minor updates, and

21   releases." Ex. I at 2. That same document, entitled the Sun Alternative Maintenance Guide,

22   falsely told customers they were "entitled to these deliverables based on the end-user original

23   license agreement." *Id.* at 4. Service Key knew this was false, as evidenced by the fact that it

24   renewed its own support agreement with Oracle (which has now been terminated) precisely

25   because it was not entitled to ongoing support materials from Oracle simply by virtue of its

26   original license agreement.

27             118.    On July 23 and November 6, 2011, a user with an IP address owned by

28   third-party Ball Corporation accessed Oracle's protected support websites using credentials

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    registered to Service Key and downloaded Oracle's copyrighted software. Oracle never

2    authorized Service Key or anyone else to provide Ball Corporation with these access credentials.

3            119.    On July 14, and November 10 and 15, 2011, a user with an IP address

4    owned by third-party Department of Defense accessed Oracle's protected support websites using

5    credentials registered to Service Key and downloaded Oracle's copyrighted software. Oracle

6    never authorized Service Key or anyone else to provide the Department of Defense with these

7    access credentials.

8            120.    On September 8, October 21, and December 1, 2011, users with IP

9    addresses owned by unknown third-parties accessed Oracle's protected support websites using

10   credentials registered to Service Key and downloaded Oracle's copyrighted software. Oracle

11   never authorized Service Key or anyone else to provide the third parties with these access

12   credentials.

13           121.    Unlicensed entities unrelated to Service Key used Service Key's access

14   credentials to download over 200 items of Oracle software on September 7, 2011; more than 200

15   additional items the following day; and over 800 more on October 4, 2011. Oracle never

16   authorized Service Key or anyone else to provide the entities with these access credentials.

17   Oracle believes discovery will reveal additional instances of this conduct.

18           122.    As a result of Service Key's and DLT-FBS's actions, Oracle has suffered

19   damage and loss in an amount to be proven at trial, but aggregating at least $5,000 in value

20   during a one-year period, including, without limitation the cost of investigating, conducting an

21   damage assessment, and responding to Service Key's and DLT-FBS's actions.

22           123.    Service Key's and DLT-FBS's unlawful access to and theft from Oracle's

23   computers have caused Oracle irreparable injury. Unless restrained and enjoined, Service Key

24   and DLT-FBS will continue to commit such acts. Oracle's remedies at law are not adequate to

25   compensate them for these afflicted and threatened injuries, entitling Oracle to remedies

26   including injunctive relief as provided by 18 U.S.C. § 1030(g).

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1                                     **Third Claim for Relief**

2               **False Advertising Under the Lanham Act. 15 U.S.C. § 1125(a)(1)(B)**

3                          (By Oracle Against all Defendants)

4            124.    Oracle incorporates each of the allegations in the preceding paragraphs of

5 this Complaint as though fully set forth here, including without limitation Paragraphs 1-123.

6            125.    Defendants have engaged in unlawful false, misleading, deceptive, and

7 confusing advertising and promotion in interstate commerce in connection with their computer

8 support products or services as alleged above in an effort to gain unfair competitive advantage

9 over Oracle.

10          126.    DLT-FBS falsely represented to potential and/or actual customers that it

11 was able to provide "premier support" for Sun computers, falsely implying that the support it

12 would provide was the equivalent to Oracle Premier Support.

13          127.    DLT-FBS falsely represented to potential and/or actual customers that

14 DLT-FBS was authorized and able to provide Oracle "firmware and patches," "product

15 documentation," and "access to all Sun/Oracle software updates, patch releases, micro code

16 upgrades, etc" for those customers' Sun computers; and that those customers could lawfully

17 obtain these materials through DLT-FBS even if those customers cancelled their support

18 contracts with Oracle.

19          128.    Service Key and Vines falsely advertised and represented to customers

20 and potential customers that Service Key could provide legal copies of software patches and

21 updates for their Oracle computer products if those customers or potential customers cancelled

22 their support contracts with Oracle.

23          129.    Service Key and Vines also falsely stated to customers and/or potential

24 customers that Service Key had made a deal with Sun and/or Oracle that would allow Service

25 Key to provide software maintenance support related to Solaris.

26          130.    Defendants' statements were false and misleading representations of fact

27 in commercial advertising and promotion that misrepresented the nature and qualities of both

28 Defendants' products and services, and also those of Oracle.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1     131.   Defendants' false, misleading, deceptive, and confusing advertising and

2   promotion of their services has caused, influenced, and induced customers to purchase support

3   services from DLT-FBS and/or Service Key rather Oracle's support services. Defendants'

4   conduct has thus influenced, and is likely to influence, the purchasing decisions of customers

5   who purchase support services that include full access to software patches and upgrades and

6   Oracle's Premier Support for Oracle/Sun computers.

7     132.   Defendants have injured Oracle, and will likely injure it in the future, with

8   this false, misleading, deceptive, and confusing promoting and advertising by diverting support

9   services revenue for Oracle/Sun computers from Oracle to DLT-FBS and Service Key.

10     133.   Defendants' false, misleading, deceptive, and confusing promoting and

11   advertising has been deliberate and willful. Among other things, DLT-FBS has continued to

12   represent to its customers that they may receive Oracle software and patch releases through

13   DLT-FBS after Oracle repeatedly warned DLT-FBS in writing that DLT-FBS's promoting and

14   advertising of its support services was false and misleading, and was causing actual injury to

15   Oracle. Service Key and Vines falsely represented to Service Key's customers and potential

16   customers that Service Key had a deal with Oracle/Sun that allows Service Key to provide

17   software maintenance for Solaris specifically to induce those customers to purchase support from

18   Service Key instead of from Oracle.

19     134.   By reason of this false, misleading, deceptive, and confusing promoting

20   and advertising by Defendants, Oracle has also suffered irreparable injury, and will continue to

21   suffer irreparable injury, for which Oracle has no adequate remedy at law, entitling Oracle to

22   injunctive relief.

23                          **Fourth Claim for Relief**

24                          **Breach of Contract**

25                    (By Oracle Against Service Key and DLT-FBS)

26     135.   Oracle incorporates each of the allegations in preceding paragraphs 2-4, 6,

27   8-41, 51-81 of this Complaint as though fully set forth here.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

136.     Service Key and DLT-FBS agreed to be bound by the terms of use on Oracle's support websites, including the Oracle.com Terms of Use, and the MOS Terms of Use, when they created accounts on the MOS website, and when they accessed or download software from the MOS website.

137.     DLT-FBS further agreed to be bound by the terms of the OPN Agreement and the FUDA.

138.     Service Key further agreed to be bound to the service renewal agreements it entered into with Oracle.

139.     Oracle has performed all conditions, covenants, and promises required on its part to be performed in accordance with the Oracle.com Terms of Use, and My Oracle Support Terms of Use; the OPN Agreement and the FUDA it entered into with DLT-FBS; and the renewal service agreements it entered into with Service Key.

140.     Service Key and DLT-FBS have breached Oracle's customer support websites' terms of use, including the Oracle.com Terms of Use, and the MOS Terms of Use, including the provisions cited in paragraphs 27-35 above, by among other things:

- Inducing unauthorized third parties to access the content available through MOS, including software;

- Using Oracle's software other than in support of Service Key's or DLT-FBS's use of the Oracle hardware for which Service Key or DLT-FBS holds a current support contract from Oracle;

- Sharing passwords, account information, or other access to MOS with third parties who were not authorized to access MOS and/or software available on MOS, and without disclosing to the third parties that Defendants had no right to provide that access;

- Sharing software from MOS with unauthorized third parties, and/or using software from MOS to provide services for or to unauthorized third parties, and not disclosing to the third parties that Defendants had no right to provide that software or those services.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    141.   DLT-FBS has breached the OPN Agreement, including the provisions

2  cited in paragraph 38 above, by among other things:

3    •    Using Oracle's software for purposes other than as specified in the OPN policies

4        or the OPN Agreement;

5    •    Making Oracle's software available to unauthorized third parties, and not

6        disclosing to those third parties that DLT-FBS had no right to distribute Oracle's

7        software.

8    142.   Service Key has breached the renewal service agreements it entered into

9  with Oracle and the incorporated terms of Oracle's technical support policies, including the

10  provisions cited in paragraphs 58–63 above, by among other things:

11    •    Permitting and enabling Oracle support services to be used by entities other than

12        Service Key;

13    •    Downloading or receiving, or assisting others to download and receive, Oracle's

14        Solaris operating system, updates, maintenance releases, and/or patches, for

15        hardware systems other than those specific Service Key computers listed in the

16        service renewal agreements;

17    •    Permitting and enabling individuals other than Service Key's own specifically

18        designated technical contact people to access MOS.

19    143.   As a result of Defendants' breach of the Oracle.com Terms of Use, the

20  MOS Terms of Use, the OPN Agreement, and the renewal service agreements, Defendants have

21  caused damage to Oracle in an amount to be proven at trial. Oracle has also suffered irreparable

22  injury, and will continue to suffer irreparable injury, for which Oracle has no adequate remedy at

23  law, entitling Oracle to injunctive relief.

24                    **Fifth Claim for Relief**

25                    **Inducing Breach of Contract**

26                    (By Oracle Against All Defendants)

27    144.   Oracle incorporates each of the allegations in preceding paragraphs 2-4, 6,

28  8-41, 51-81 of this Complaint as though fully set forth here.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    145.    Service Key, DLT-FBS, and other Oracle customers and third parties

2    agreed to be bound by the Oracle.com Terms of Use, and the MOS Terms of Use, when they

3    accessed or download software from the MOS website. The Oracle.com Terms of Use and the

4    MOS Terms of Use are valid contracts between Oracle and those who access the MOS website.

5    Defendants had knowledge of the existence of these contracts at all relevant times.

6    146.    Oracle has performed all conditions, covenants, and promises required on

7    its part to be performed in accordance with the Oracle.com Terms of Use and the MOS Terms of

8    Use.

9    147.    Defendants induced other Oracle customers and third parties, to breach

10    these contracts by engaging in the independently wrongful acts alleged here, including violations

11    of state and federal laws such as the Computer Fraud and Abuse Act and the Lanham Act.

12    148.    On information and belief, and subject to further discovery to identify

13    additional customers, DLT-FBS induced the US Navy (including sub-entities the Space and

14    Naval Warfare Systems Command Systems Center in Atlantic Charleston, the Space and Naval

15    Warfare Systems Command Systems Center in Atlantic New Orleans, the Naval Education and

16    Training Professional Development and Technology Center, and the Naval Criminal

17    Investigative Service), the Department of Health and Human Services and the Food and Drug

18    Administration, the Army (including sub-entities the Mission and Installation Contracting

19    Command at Fort Eustis, the Army Reserve Contracting Center-East and Army Fort Sam

20    Houston) to breach the Oracle.com Terms of Use by providing them with unauthorized

21    credentials and enabling and encouraging them to access the MOS website in violation of the

22    Oracle.com Terms of Use including the following provisions, to which those customers and third

23    parties agreed:

24    *__You agree not to attempt to gain unauthorized access to any parts
of the Site or any Oracle accounts, computer systems or
networks.__*

25    *[…]*

26

27    *__Access to and use of password protected or secure areas of the
Site is restricted to authorized users only.__ You agree not to share
your password(s), account information, or access to the Site. You
are responsible for maintaining the confidentiality of password(s)*

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   *and account information, and you are responsible for all activities*
2   *that occur under your password(s) or account(s) or as a result of*
    *your access to the Site. You agree to notify Oracle immediately of*
3   *any unauthorized use of your password(s) or account(s).*

4   (emphasis supplied).

5        149.   DLT-FBS also induced these same customers to breach the MOS Terms of

6   Use by providing them with unauthorized credentials and enabling and encouraging them to

7   access the MOS website in violation of the MOS Terms of Use including the following

8   provisions, to which those customers and third parties agreed:

9        *You agree that access to My Oracle Support, including access to*
         *the service request function, will be granted only to your*
10       *designated Oracle technical support contacts and that the*
         ***Materials may be used only in support of your authorized use of***
11       ***the Oracle programs and/or hardware for which you hold a***
         ***current support contract from Oracle****. Unless specifically*
12       *provided in your agreement with Oracle, the Materials may not be*
         *used to provide services for or to third parties and may not be*
13       *shared with or accessed by third parties. However, the Materials*
         *may be shared with or accessed by third parties who are your*
14       *agents or contractors acting on your behalf solely for your internal*
         *business operations and you are responsible for their Compliance*
15       *with these My Oracle Support Terms of Use. You agree that you*
         *will not access or use My Oracle Support in any manner that could*
16       *damage, disable, overburden, impair, or otherwise result in*
         *unauthorized access to or interference with, the proper functioning*
17       *of any Oracle accounts, systems, or networks.*

18       *[…]*

19       ***[T]he information contained in the [My Oracle Support]***
         ***Materials is the confidential proprietary information of Oracle.***
20       ***You may not use, disclose, reproduce, transmit, or otherwise copy***
         ***in any form or by any means the information contained in the***
21       ***Materials for any purpose, other than to support your authorized***
         ***use of the Oracle programs and/or hardware for which you hold***
22       ***a current support contract from Oracle, without the prior written***
         ***permission of Oracle.***

23

24   (emphasis supplied).

25       150.   DLT-FBS knowingly and falsely told its customers that it had

26   authorization to provide them with access to Oracle's copyrighted materials and support

27   websites. On September 1, 2011, Cheryl Bruza , an employee of SPAWAR (a division of the

28   U.S. Navy) asked DLT-FBS "Do you have an authorization letter from Oracle to be an Oracle

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Premier Support provider/reseller? Please provide the authorization given to your company from

2  Oracle." Ex. H at 3. In response DLT-FBS's Michael Johnson attached a copy of the OPN

3  agreement and falsely stated: "Our partner level provides us with access to all Sun/Oracle

4  software updates, patch releases, micro code upgrades, etc. for the current versions of the

5  software on all of the equipment under the subject contract." *Id.* at 2.

6         151.   Service Key induced its customers to breach those same provisions of the

7  Oracle.com and MOS Terms Of Use by providing them with unauthorized credentials and

8  enabling and encouraging them to access the MOS website in violation of the Oracle.com and

9  MOS Terms Of Use. In its marketing materials entitled the Sun Alternative Maintenance Guide,

10  Service Key falsely stated that it was "entitled to [Oracle's software] based on the end-user

11  original license agreement." Ex. I at 4. Service Key knew this was false, as evidenced by the fact

12  that it renewed its own support agreement with Oracle (which has now been terminated)

13  precisely because it was not entitled to ongoing support materials from Oracle simply by virtue

14  of its original license agreement. Preliminary discovery indicates that ServiceKey's false

15  representations succeeded in luring several customers away from Oracle support in the apparent

16  false belief that Service Key could provide Solaris updates legally to these customers.

17  Accordingly, on information and belief, and subject to further discovery to identify additional

18  customers, the customers whose contracts with Oracle Service Key induced to breach include:

19  SITA; Federal Home Bank of Atlanta; University of Utah Hospital; TelCel; Cablevision -

20  Production; Bulletin; Antelope Valley; Weldon William & Lick; Yodlee, Inc. - Canvas; Cooke

21  Communications NC; Lackland AFB; Lubbock Avalanche Journal; USGS; Savannah Morning

22  News; ION Media Networks; Investment Company Institute; 1013 Communications LLC (East

23  Valley Tribune); Topeka Capital - Journal; Athens Banner - Herald; Amarillo Globe-News;

24  Arkansas Democrat Gazette; Phoenix Color; Florida Times-Union; Waco Tribune Herald;

25  AARP; Meredith; Autoliv ASP Inc.; CompuCredit; Phototype; Malone Advertising; Florida

26  Today Newspaper; Adtran, Inc.; Ball Aerospace; Mundocom USA; Ladish Co.; Maximus, Inc.;

27  Alloy Education; Image Dynamics; PEEQ; Allen Press, Inc.; and ColorEdge Visual.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    152.    These wrongful acts caused the other Oracle customers and third parties to

2    be in breach of the Oracle.com Terms of Use and the MOS Terms of Use. Defendants acted with

3    the desire to interfere with these contracts in order to obtain an unfair competitive advantage

4    over Oracle and/or with the knowledge that such interference was certain or substantially certain

5    to occur as a result of the acts.

6    153.    As a result of Defendants' inducing other Oracle customers and third

7    parties to breach the Oracle.com Terms of Use and the MOS Terms of Use, Defendants have

8    caused damage to Oracle in an amount to be proven at trial. The other Oracle customers and third

9    parties would have otherwise performed on the contracts were it not for Defendants' acts

10   inducing the other Oracle customers and third parties to breach them.

11   154.    Defendants acted with oppression and malice in inducing other Oracle

12   customers and third parties to breach the Oracle.com Terms of Use, and the MOS Terms of Use,

13   and Oracle is therefore entitled to an award of punitive damages to punish Defendants' wrongful

14   conduct and deter future wrongful conduct.

15                                  **Sixth Claim for Relief**

16                                  **Fraudulent Inducement**

17                             (By Oracle Against Service Key)

18   155.    Oracle incorporates each of the allegations in preceding paragraphs 2-4, 6,

19   8-41, 51-81 of this Complaint as though fully set forth here.

20   156.    On May 16, 2011, December 8, 2011, and January 26, 2012, Service Key

21   renewed technical support service agreements with Oracle that covered certain specific

22   Oracle/Sun hardware servers that Service Key owns. When it entered into these renewal

23   agreements, Service Key represented and promised, among other things, that the services ordered

24   from Oracle under those agreements would be used solely by Service Key for the specific servers

25   identified therein.

26   157.    At the time Service Key made these representations and promises to

27   Oracle, Service Key intentionally failed to disclose that it planned to use the services it ordered

28   from Oracle (including access to MOS) as part of its business to sell or otherwise make available

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  its MOS access credentials to third parties, such as DLT-FBS, for use in supporting customers of

2  those third parties that do not otherwise have the right to access or use Oracle's support products

3  and services.

4        158.    Service Key intended to deceive Oracle by concealing its secret plans, and

5  to induce Oracle to provide Service Key with access to MOS and/or to continue allowing Service

6  Key to access MOS, and the Oracle software available on that website.

7        159.    Oracle, at the time Service Key made these promises and took the actions

8  alleged, reasonably relied on Service Key's deception, was ignorant of Service Key's secret

9  intention to make its MOS access credentials available to third parties, and could not, in the

10  exercise of reasonable diligence, have discovered Service Key's secret intention.

11        160.    In reliance on Service Key's promises, Oracle provided Service Key with

12  access to MOS and/or continued allowing Service Key to access MOS. If Oracle had known of

13  Service Key's actual intention, Oracle would not have allowed Service Key to access MOS.

14        161.    As a proximate result of Service Key's fraudulent conduct, Oracle was

15  damaged by, among other things the unauthorized use of MOS and its software by parties who

16  had not paid Oracle for it, in an amount to be proven at trial.

17        162.    Service Key acted with oppression and malice in concealing material facts

18  known to Service Key with the intention on the part of Service Key of inducing Oracle to act and

19  thereby depriving Oracle of property or legal rights or otherwise causing injury. Oracle is

20  therefore entitled to an award of punitive damages to punish Service Key's wrongful conduct and

21  deter future wrongful conduct.

22                              **Seventh Claim for Relief**

23                              **Fraudulent Inducement**

24                            (By Oracle Against DLT-FBS)

25        163.    Oracle incorporates each of the allegations in preceding paragraphs 2-4, 6,

26  8-41, 51-81 of this Complaint as though fully set forth here.

27        164.    On February 15, 2011, DLT-FBS entered into the OPN Agreement in

28  order to join the OPN, and to obtain access to MOS. When entering into this agreement, DLT-

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    FBS represented and promised, among other things, that it would not "use or duplicate the

2    Oracle property provided to [it] for any purpose other than as specified in the OPN policies or in

3    [the OPN Agreement]," and that it would not "make the Oracle property available to

4    unauthorized third parties."

5              165.    At the time DLT-FBS made these representations and promises to Oracle,

6    DLT-FBS intentionally failed to disclose that it planned to use its access to MOS and Oracle's

7    software to provide support to its customers by making available access credentials for Oracle's

8    websites and materials downloaded from Oracle's websites to customers who did not have

9    authorization from Oracle to access MOS or download Oracle software.

10             166.    DLT-FBS intended to deceive Oracle by concealing its secret plans, and to

11   induce Oracle to allow DLT-FBS to join the OPN, and to provide DLT-FBS with access to MOS

12   and/or to continue allowing DLT-FBS to access MOS, and the Oracle software available on that

13   website.

14             167.    Oracle, at the time DLT-FBS made these promises and took the actions

15   alleged, reasonably relied on DLT-FBS's deception, was ignorant of DLT-FBS's secret intention

16   to provide DLT-FBS's customers with access credentials to Oracle's websites and/or proprietary

17   software downloaded from Oracle's websites, and could not, in the exercise of reasonable

18   diligence, have discovered DLT-FBS's secret intention.

19             168.    In reliance on DLT-FBS's promises, Oracle permitted DLT-FBS to join

20   the OPN and provided DLT-FBS with access to MOS and/or continued allowing DLT-FBS to

21   access MOS. If Oracle had known of DLT-FBS's actual intention, Oracle would not have

22   allowed DLT-FBS to join the OPN or to access MOS.

23             169.    As a proximate result of DLT-FBS's fraudulent conduct, Oracle was

24   damaged by, among other things the unauthorized use of MOS and its software by parties who

25   had not paid Oracle for it, in an amount to be proven at trial.

26             170.    DLT-FBS acted with oppression and malice in concealing material facts

27   known to DLT-FBS with the intention on the part of DLT-FBS of inducing Oracle to act and

28   thereby depriving Oracle of property or legal rights or otherwise causing injury, and Oracle is

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   therefore entitled to an award of punitive damages to punish DLT-FBS's wrongful conduct and

2   deter future wrongful conduct.

3                              **Eighth Claim for Relief**

4                 **Unfair Competition—Cal. Bus. & Prof. Code § 17200**

5                        (By Oracle Against All Defendants)

6          171.   Oracle incorporates each of the allegations in preceding paragraphs 2-4, 6,

7   8-41, 51-81, 100-123, 125-170 of this Complaint as though fully set forth here.

8          172.   Defendants have engaged in unlawful business acts or practices, including

9   fraud, computer fraud, breach of contract, and other illegal acts and practices as alleged above,

10  all in an effort to gain unfair competitive advantage over Oracle.

11         173.   These unlawful business acts or practices were committed pursuant to

12  business activity related to providing maintenance and support services for Oracle's computer

13  hardware and software.

14         174.   The acts and conduct of Defendants constitute unlawful and unfair

15  competition as defined by California Bus. & Prof. Code §§ 17200, *et seq.*

16         175.   Defendants' conduct constitutes violations of numerous state and federal

17  statutes and codes, including, but not limited to, violation of the Computer Fraud and Abuse Act,

18  18 U.S.C. §§ 1030 *et seq.*, and the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Defendants' conduct

19  also constitutes fraud.

20         176.   Defendants devised their schemes involving false advertising and access

21  credential trafficking for the purposes of inducing owners of Oracle/Sun computer hardware not

22  to enter into support agreements with Oracle, but rather to enter into profitable support contracts

23  with DLT-FBS, Service Key, or other parties affiliated with Service Key. Defendants executed

24  this scheme by means of false pretenses, representations, or promises including by providing

25  passwords or other credentials to access to Oracle's support websites to others without

26  authorization, and intentionally accessing Oracle's computer systems without authorization

27  and/or in excess of authorized access, thereby obtaining information from Oracle's computer

28  systems, in violation of 18 U.S.C. § 1030.

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1          177.    As described above, Oracle has lost money and property and suffered

2  injury in fact as a result of Defendants' unlawful business acts and practices.

3          178.    Defendants have improperly and unlawfully taken commercial advantage

4  of Oracle's investments in its computers, support delivery infrastructure, and customer

5  relationships. In light of Defendants' conduct, it would be inequitable to allow Defendants to

6  retain the benefit of the funds obtained through the unauthorized and unlawful use of that

7  property.

8          179.    Defendants' unfair business practices have unjustly minimized Oracle's

9  competitive advantages and have caused and are causing it to suffer damages.

10        180.    As a result of such unfair competition, Oracle has also suffered irreparable

11  injury and, unless Defendants are enjoined from such unfair competition, will continue to suffer

12  irreparable injury, whereby Oracle has no adequate remedy at law.

13        181.    Defendants should be compelled to disgorge and/or restore any and all

14  revenues, earnings, profits, compensation, and benefits they may have obtained in violation of

15  Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and should be enjoined from further unlawful and

16  unfair business practices.

17                        **Ninth Claim for Relief**

18       **Intentional Interference With Prospective Economic Relations**

19                 (By Oracle Against all Defendants)

20        182.    Oracle incorporates each of the allegations in preceding paragraphs 2-4, 6,

21  8-41, 51-81, 100-123, 125-181 of this Complaint as though fully set forth here.

22        183.    Oracle was in an economic relationship with customers, including sub-

23  entities of the U.S. Navy and the U.S. Food and Drug Administration (the "FDA"), that probably

24  would have resulted in an economic benefit to Oracle. Namely, these customers owned

25  Oracle/Sun computer hardware, were customers of support services from Oracle for that

26  hardware, and would typically be expected to renew their support services agreements with

27  Oracle.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    184.   Defendants knew of these economic relationships between Oracle and its

2    customers, and intended to disrupt them. For example, DLT-FBS knew that the U.S. Naval

3    Agencies and the FDA were customers of Oracle's support services.

4    185.   DLT-FBS and Service Key engaged in wrongful conduct by, among other

5    things, fraudulently inducing Oracle into contractual arrangements, violating the Computer Fraud

6    and Abuse Act, and breaching their contracts with Oracle. DLT-FBS, Service Key, and Vines

7    engaged in wrongful conduct by, among other things, violating the Lanham act and

8    misrepresenting their association with Oracle, their ability to provide support services that were

9    equivalent to Oracle's, and their ability to provide access to Oracle's support website and

10   proprietary software.

11   186.   Oracle's relationship with these customers, including the U.S. Naval

12   Agency and the FDA, was disrupted when these customers decided not to renew support

13   agreements with Oracle, and instead entered into support agreements with DLT-FBS, Service

14   Key, and/or affiliates of Service Key.

15   187.   Oracle was damaged as a result of the disruption of these relationships in

16   an amount to be proven at trial.

17   188.   Defendants' wrongful conduct was a substantial factor in causing this

18   harm to Oracle.

19   <u>**Tenth Claim for Relief**</u>

20   **An Accounting**

21   (By Oracle Against all Defendants)

22   189.   Oracle incorporates each of the allegations in preceding paragraphs 2-4, 6,

23   8-41, 51-81, 100-123, 125-189 of this Complaint as though fully set forth here.

24   190.   Oracle has a contractual relationship with each Defendant.

25   191.   DLT-FBS is a member of the Oracle Partner Network. Pursuant to its

26   OPN Agreement, DLT-FBS agreed that:

27   *Oracle may audit your use of the Oracle property. Any such audit*
     *shall not unreasonably interfere with your normal business*
28   *operations. You agree to cooperate with Oracle's audit and*

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

> *provide reasonable assistance and access to information including*
> *but not limited to relevant books, records, agreements, servers,*
> *technical personnel, and order reporting systems.*

2

3

192.    DLT-FBS also executed Oracle's Full Use Distribution Agreement, which

4

provides in part that:

5

> *Oracle may audit your distribution of the programs, hardware,*
> *learning credits and services and your activities under this*
> *agreement. Any such audit shall not unreasonably interfere with*
> *your normal business operations. You agree to cooperate with*
> *Oracle's audit and provide reasonable assistance and access to*
> *information including but not limited to relevant books, records,*
> *agreements, servers, technical personnel, and order reporting*
> *systems.*

6

7

8

9

10

193.    Service Key signed an Oracle End User Purchasing Agreement. Pursuant

11

to that agreement, Service Key agreed:

12

> *to permit Sun, or Sun's independent audit firm, to access and audit*
> *Company systems, facilities and records (no more than one (1)*
> *time per year unless Sun has evidence indicating [Service Key] is*
> *in breach of this Agreement) to the extent necessary to determine*
> *Company's compliance with Sun's license grants."*

13

14

15

194.    Defendants have obtained business and funds through the use of unlawful

16

conduct including, but not limited to:

17

(a)    Breaching the agreements governing access to or use of MOS;

18

(b)    Improperly, willfully, and unlawfully taking commercial advantage

19

of Oracle's investment in its software and support materials, for the purpose of undercutting and

20

unfairly competing with Oracle's ability to do business and compete in the market;

21

(c)    Fraudulently accessing, and illegally providing others with access

22

to, the MOS website and the software and support materials available on that website, without

23

authorization or consent, or in excess of authorization or consent, in furtherance of their unlawful

24

and deceptive scheme as described above; and

25

(d)    Violating the Lanham Act, and misrepresenting their association

26

with Oracle, their ability to provide support services that were equivalent to Oracle's, and their

27

ability to provide access to Oracle's support website and proprietary software.

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1     195. Defendants have received money as a result of the misconduct, at Oracle's

2 expense, and some or all of the money is rightfully due to Oracle.

3     196. The amount of money due from Defendants to Oracle is unknown to

4 Oracle, and cannot be ascertained without an accounting of the income and gross profits

5 Defendants have obtained through the wrongful and unlawful conduct. Oracle is entitled,

6 therefore, to a full accounting.

7            **Prayer for Relief**

8     WHEREFORE, Oracle respectfully prays for the following:

9     A. For a preliminary and permanent injunction restraining Defendants, their

10 officers, agents, servants, employees, and attorneys, and those in active concert or participation

11 with any of them, from the following:

12       (1) Copying, distributing, using, or creating derivative works from

13 Oracle's software or support materials in any way, including for any business purpose, except as

14 allowed by express license from Oracle;

15       (2) Facilitating the downloading of any Oracle software or support

16 materials from any Oracle website for, or on behalf of, any customer or party who does not have

17 a valid, existing, and currently-Oracle-supported license for the specific materials being

18 downloaded from Oracle entitling the customer to have and use that software or those support

19 materials;

20       (3) Facilitating the access to, use of, or downloading from any Oracle

21 support website for, or on behalf of, any customer or party other than by using that specific

22 customer's or party's valid login credentials;

23       (4) Facilitating the copying, distribution, or use of any Oracle software

24 or support materials by, for, or on behalf of, any customer or party who did not have a current,

25 valid, existing support license from Oracle entitling that customer or party to have and use the

26 software and support materials at the time they were downloaded or obtained by or on behalf of

27 the customer or party;

28       (5) Providing passwords or other access credentials for Oracle's

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   support websites to any other parties who are not authorized to use those passwords or access

2   credentials;

3                    (6)    Certifying, promoting, advertising, or representing that they are

4   able to provide support for Sun computers that is the equivalent of Oracle Premier Support, or

5   that they are able to provide customers with access to any Oracle software, including firmware,

6   upgrades, and patches; and

7                    (7)    Otherwise engaging in acts of unfair competition, unfair practices,

8   copyright infringement, or computer fraud against Oracle;

9              B.    That the Court order Defendants to file with the Court and serve on Oracle

10   within 30 days after the service on Defendants of such injunction a report in writing, under oath,

11   setting forth in detail the manner and form in which Defendants have complied with the

12   injunction;

13             C.    For an Order directing Defendants to return Oracle's property, including,

14   without limitation, Oracle's confidential, proprietary, and copyrighted Software and Support

15   Materials, that Defendants took from Oracle, as set forth in this Complaint;

16             D.    For an Order impounding or destroying and all infringing materials

17   pursuant to 17 U.S.C. § 503;

18             E.    For an Order awarding Oracle punitive damages in a sum to be determined

19   at trial;

20             F.    For restitution and disgorgement of all ill-gotten gains unjustly obtained

21   and retained by Defendants through the acts complained of here;

22             G.    For an Order finding a constructive trust for Oracle's benefit, consisting of

23   all revenues received by Defendants from the wrongful conduct which should rightfully have

24   been received by Oracle and all profits derived from that wrongful conduct, and directing

25   Defendants to pay all such sums to Oracle;

26             H.    For damages to be proven at trial;

27             I.    For those damages to be trebled;

28             J.    For statutory damages pursuant to 17 U.S.C. § 504;

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    K.    For prejudgment interest;

2    L.    For an accounting;

3    M.    For an Order awarding Oracle its attorneys' fees and costs; and

4    N.    For an Order awarding Oracle such other and further relief as the Court

5    deems just and proper.

6

7    DATED: December 17, 2012

8
                                    Bingham McCutchen LLP
9

10

11                                  By:_____/s/ Geoffrey M. Howard_____

12                                          Geoffrey M. Howard
                                            Attorneys for Plaintiff
13                                          Oracle America, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

## DEMAND FOR JURY TRIAL

2

3              In accordance with Fed. R. Civ. P. 38(b), Plaintiff Oracle America, Inc. demands

4       a trial by jury on all issues triable by a jury.

5

6       DATED: December 17, 2012

7
                                        Bingham McCutchen LLP
8

9

10                                  By:_____/s/ Geoffrey M. Howard_____
                                             Geoffrey M. Howard
11                                           Attorneys for Plaintiff
                                             Oracle America, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1          **PROOF OF SERVICE**

2                    I am over eighteen years of age, not a party in this action, and employed in San

3     Francisco County, California at 3 Embarcadero Center, San Francisco, California 94111. I am

4     readily familiar with the practice of this office for collection and processing of correspondence

5     for mail/fax/hand delivery/next business day Federal Express delivery, and they are deposited

6     that same day in the ordinary course of business.

7                    On December 17, 2012, I served the attached:

8                    **SECOND AMENDED COMPLAINT FOR DAMAGES AND**
                     **INJUNCTIVE RELIEF FOR:**
9
                     **(1) COPYRIGHT INFRINGEMENT;**
10                   **(2) VIOLATIONS OF THE COMPUTER FRAUD AND**
                     **ABUSE ACT;**
11                   **(3) FALSE ADVERTISING IN VIOLATION OF THE**
                     **LANHAM ACT SECTION 43(A);**
12                   **(4) BREACH OF CONTRACT;**
                     **(5) INDUCING BREACH OF CONTRACT;**
13                   **(6) FRAUDULENT INDUCEMENT (AGAINST SERVICE**
                     **KEY);**
14                   **(7) FRAUDULENT INDUCEMENT (AGAINST DLT-FBS)**
                     **(8)UNFAIR COMPETITION;**
15                   **(9) INTENTIONAL INTERFERENCE WITH**
                     **PROSPECTIVE ECONOMIC RELATIONS ; AND**
16                   **(10) AN ACCOUNTING**

17          ☐        (BY FAX) by transmitting via facsimile the document(s) listed above to the fax
                     number(s) set forth below on this date before 5:00 p.m.
18

19          ☐        (BY MAIL) by causing a true and correct copy of the above to be placed in the
                     United States Mail at Palo Alto, California in sealed envelope(s) with postage
20                   prepaid, addressed as set forth below. I am readily familiar with this law firm's
                     practice for collection and processing of correspondence for mailing with the
21                   United States Postal Service. Correspondence is deposited with the United States
                     Postal Service the same day it is left for collection and processing in the ordinary
22                   course of business.

23          ☒        (VIA EMAIL) by transmitting a true and correct copy via email the document(s)
                     listed above on this date to the person(s) at the email address(es) set forth below.
24

25

26

                                              1

1   ☐   (PERSONAL SERVICE) by causing a true and correct copy of the above
        documents to be hand delivered in sealed envelope(s) with all fees fully paid to the
2       person(s) at the address(es) set forth below.

3   ☐   (ELECTRONICALLY) by transmitting through the Court's ECF system.

4

5

6          **VIA FEDERAL EXPRESS**

7   Jeff R. Joyce, Esq.                    David Ludwig, Esq.
    Joyce, Thrasher, Kaiser & Liss LLC     Dunlap, Grubb & Weaver
8   Five Concourse Parkway, Suite 2600     5335 Wisconsin Avenue NW, Suite 440
    Atlanta, Georgia 30328                 Washington, DC 20015
9   jjoyce@jtklaw.com                      dludwig@dglegal.com

10  Valerie M. Wagner                      Julia D. Greer, Esq.
    Jill Kopeikin                          Coblentz, Patch, Duffy & Bass
11  GCA Law Partners LLP                   One Ferry Building, Suite 200
                                           San Francisco, CA 94111-4213
12  1891 Landings Drive                    jdg@cpdb.com
    Mountain View, CA 94043
13  vwagner@gcalaw.com                     ***Counsel for DLT Federal Business
    jkopeikin@gcalaw.com                   Systems Corporation***
14  ***Counsel for Service Key, LLC***

15

16          I declare that I am employed in the office of a member of the bar of this court at

17  whose direction the service was made and that this declaration was executed on December 17,

18  2012, at San Francisco, California.

19

20

21                                              Kyle Zipes

22

23

24

25

26

                                            2
─────────────────────────────────────────────────────────
PROOF OF SERVICE