BINGHAM MCCUTCHEN LLP
Geoffrey M. Howard (SBN 157468)
geoff.howard@bingham.com
Thomas S. Hixson (SBN 193033)
thomas.hixson@bingham.com
Kyle Zipes (SBN 251814)
kyle.zipes@bingham.com
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

ORACLE CORPORATION
Dorian Daley (SBN 129049)
dorian.daley@oracle.com
Deborah K. Miller (SBN 95527)
deborah.miller@oracle.com
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone: 650.506.4846
Facsimile: 650.506.7114

ORACLE CORPORATION
Jeffrey S. Ross (SBN 138172)
jeff.ross@oracle.com
10 Van de Graaff Drive
Burlington, MA 01803
Telephone: 781.744.0449
Facsimile: 781.238.6273

Attorneys for Plaintiff
ORACLE AMERICA, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SERVICE KEY, LLC, a Georgia limited liability company; ANGELA VINES; DLT FEDERAL BUSINESS SYSTEMS CORPORATION, a Delaware corporation; and DOES 1-50,<br><br>Defendants. | No. 4:12-cv-00790-SBA<br><br>**PLAINTIFF ORACLE AMERICA, INC.'S NOTICE AND MOTION FOR TERMINATING SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ADVERSE INFERENCE INSTRUCTION**<br><br>Date: August 13, 2013<br>Time: 1:00 p.m.<br>Place: Courtroom 1, 4th Floor<br>Judge: Hon. Saundra B. Armstrong |

# TABLE OF CONTENTS

Page

NOTICE AND MOTION FOR SANCTIONS ................................................................... 1
STATEMENT OF RELIEF SOUGHT ............................................................................. 1
MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1
I.   INTRODUCTION ................................................................................................. 1
II.  FACTUAL BACKGROUND ................................................................................ 2
     A.   Michael Johnson's Relevance To Oracle's Claims ..................................... 2
     B.   The Evidence That Michael Johnson Does Not Exist ................................ 4
          1.   Oracle Attempts to Depose Michael Johnson ................................. 4
          2.   The New Lawyers Reveal There Is No Michael Johnson .............. 5
          3.   DLT-FBS Fires Its Second Set Of Lawyers .................................... 5
          4.   The New Story ................................................................................. 6
          5.   The New Story Becomes Increasingly Suspicious ......................... 7
          6.   DLT-FBS Witnesses Testify They Have Never Met Johnson ....... 8
          7.   The Emails In Late 2012 ................................................................. 8
          8.   Wright Contradicts DLT-FBS's Prior Counsel ............................. 10
          9.   Oracle Attempts to Depose Donna Prosser-Thomas ..................... 10
III. ARGUMENT ....................................................................................................... 11
     A.   Legal Standards Governing A Motion For Terminating Sanctions ......... 11
     B.   The Court Should Grant Terminating Sanctions ...................................... 12
     C.   In The Alternative, the Court Should Issue An Adverse Inference
          Instruction ................................................................................................. 15
IV.  CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Adriana Int'l Corp. v. Thoren,*
  913 F.2d 1406 (9th Cir. 1990) ..................................................................................... 12

*Anheuser-Busch, Inc. v. Natural Beverage Distributors,*
  69 F.3d 337 (9th Cir. 1995) ..................................................................................... 12, 14

*Connecticut General Life Ins. Co. v. New Images,*
  482 F.3d 1091 (9th Circuit 2007) ............................................................................ 11, 12

*Valley Eng'rs v. Electric Eng'g Co.,*
  158 F.3d 1051 (9th Cir. 1998) ............................................................................... passim

**RULES**

Federal R. Civ. P. 37 ............................................................................................... 1, 11, 14

## NOTICE AND MOTION FOR SANCTIONS

PLEASE TAKE NOTICE that on August 13, 2013 at 1:00 p.m., in Courtroom 1, 4th floor, of the above-captioned Court, Plaintiff Oracle America, Inc. ("Oracle"), will and hereby does move the Court for an order pursuant to Federal Rule of Civil Procedure 37 for terminating sanctions or, in the alternative, for an adverse inference instruction. This motion is based on this Notice and Motion, the accompanying Declaration of Thomas S. Hixson, the pleadings on file in this matter, and such argument as the Court may consider. Oracle met and conferred with DLT-FBS prior to filing this motion, but the parties did not reach agreement.

## STATEMENT OF RELIEF SOUGHT

Oracle seeks an order (1) granting terminating sanctions and entering a default judgment against Defendant DLT Federal Business Systems Corporation ("DLT-FBS") for $1,692,105 and the injunctive relief sought in the Second Amended Complaint ("SAC") or, in the alternative, (2) an order that (a) emails authored by DLT-FBS's "Michael Johnson" are authentic and admissible, and (b) issuing an adverse inference instruction to the jury that any attempt by DLT-FBS witnesses to testify contrary to what is stated in those emails may be presumed untrue.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Oracle brings this motion because DLT-FBS and its third set of lawyers have attempted to fabricate a non-existent witness and attribute the damaging evidence at the heart of this case to "him," while the actual people who committed the wrongdoing deny their involvement and perjure themselves. If this witness existed, he would be the most important DLT-FBS witness in the case, as DLT-FBS communicated with actual and prospective customers, and signed contracts with the government, using the fictitious "Michael Johnson" name. But he does not exist; the name is an alias. DLT-FBS has violated multiple Court orders to perpetrate this fraud. In this motion, Oracle seeks terminating sanctions because DLT-FBS's misconduct has imperiled the Court's ability "to be confident that the parties will ever have access to the true facts." *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). In the alternative, and to partly mitigate the prejudice to Oracle and to the Court's ability to determine the true facts,

1

PLAINTIFF ORACLE AMERICA, INC.'S NOTICE AND MOTION FOR TERMINATING SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ADVERSE INFERENCE INSTRUCTION

1  Oracle seeks an order that emails under the name "Michael Johnson" be deemed authentic and
2  admissible *and* that the jury be instructed that any testimony by DLT-FBS witnesses contrary to
3  those emails may be presumed to be untrue, since that is the evidence from which DLT-FBS is
4  trying to walk away. The fraud DLT-FBS is attempting to commit in this lawsuit undermines the
5  truth-seeking function of civil litigation and makes a mockery of this Court's orders. Below
6  Oracle describes the relevance of the "Michael Johnson" emails to Oracle's claims, the
7  admissions by DLT-FBS's prior counsel *that no such person exists*, the desperate and unethical
8  tactics by DLT-FBS witnesses and its third set of counsel to claw back those admissions, and the
9  Ninth Circuit case law calling for terminating sanctions in this extreme situation.

## II. FACTUAL BACKGROUND

### A. Michael Johnson's Relevance To Oracle's Claims

Oracle alleges that DLT-FBS unlawfully distributed Oracle's copyrighted software, misrepresented itself as an authorized reseller of Oracle support, and misrepresented that DLT-FBS was authorized to provide Oracle's software patches, among other conduct. SAC, D.I. 96 at 23-45. DLT-FBS produced large numbers of documents that appear to show a DLT-FBS employee named "Michael Johnson" played a significant role in the conduct at issue in the case. Below Oracle cites a small number of those documents; there are hundreds more.

**Misrepresentations that DLT-FBS was an authorized reseller.** On numerous occasions, DLT-FBS used the Michael Johnson name to falsely represent to actual and prospective customers that DLT-FBS was an authorized reseller of Oracle support (i.e., support service contracts for Oracle's hardware support services offering called "Oracle Premier Support"), sometimes invoking DLT-FBS's former status as a member of Oracle's partner program (which did not authorize it to resell Oracle support). As one example, in a September 28, 2011 email to a prospective military customer, Johnson stated that " ███████████ ███████████████████████████████ " Hixson Decl., Ex. 1. That was untrue because DLT-FBS was not offering, and had no authorization to offer, Oracle support.

In a series of emails to and from Michael Johnson in August 2011, DLT-FBS concocted an elaborate lie to ███████████████████████ about DLT-FBS supposedly

1  being an authorized reseller of Oracle support. In an August 25, 2011 email, the ▮ asked
2  Johnson point blank, "▮
3  ▮" *Id.*, Ex. 2 at 5. Johnson responded by saying that DLT-FBS was "▮
4  ▮" and also that DLT-FBS has "▮
5  ▮" *Id.* The ▮ was not satisfied with that
6  representation and asked for "▮"
7  *id.* at 4, as well as "▮" *Id.* at 3.
8  ▮ But ▮, as an internal DLT-FBS email admitted "▮
9  ▮" *Id.*, Ex. 3 at 1. In emails exchanged between
10 August 25-29, 2011, ▮
11 *Id.*, Ex. 2 at 2-5 (e.g., "▮
12 ▮"). Ultimately, DLT-FBS, under the Johnson alias, fooled ▮ by
13 falsely stating its relationship with ▮, which was authorized to resell Oracle
14 Premier Support, and by misrepresenting that its status as an Oracle partner permitted it to resell
15 Oracle Premier Support to customers. *Id.* at 1.
16       When some customers discovered that the "Oracle" support they thought they had
17 purchased from DLT-FBS wasn't Oracle Premier Support, they confronted Johnson. For
18 example, in November 2011, ▮
19 ▮
20 ▮" *Id.*, Ex. 4 at 2. "▮
21 ▮
22 ▮" *Id.* Johnson protested that "▮ ▮" *id.*
23 at 1., but the Navy disagreed: "▮
24 ▮" *Id.*
25       **Misrepresentations about DLT-FBS's authorization to provide patches.** Johnson
26 also repeatedly told actual and prospective customers the company could provide them with
27 patches for Oracle's Solaris software (i.e., proprietary software code developed by Oracle and
28 made available only to customers with a support contract with Oracle). For example, in an

1  October 7, 2011 email, ▮
2  ▮
3  ▮ "? *Id.*, Ex. 5 at 1. The true answer is
4  that a customer would need to have a separate maintenance agreement with Oracle. But instead,
5  Johnson said that " ▮ " *Id.*
6  There are numerous other examples of Johnson making this representation to DLT-FBS
7  customers. *E.g.*, *id.*, Ex. 1 (September 28, 2011 email stating that DLT-FBS's support would
8  include " ▮ "), Ex. 6 at 1 (November 2, 2011
9  email stating that DLT-FBS " ▮
10  ▮ "), Ex. 4 at 1 (November 11, 2011 email
11  stating that ▮ ).

**Michael Johnson is involved in all aspects of the case.** There are many other
13  documents that attest to Michael Johnson's involvement in the conduct at issue in this case.
14  When ▮
15  ▮, *id.*, Ex. 7 at 2, the response came from ▮. *Id.*,
16  Ex. 8 at 3. Johnson is also the signatory and/or designated contact person for the contracts
17  between DLT-FBS and most of its customers at issue in this case. *Id.*, Ex. 9 at 3, Ex. 10, Ex. 11
18  at 1, 3, 18, Ex. 12 at 1, Ex. 13 at 1, Ex. 14 at 1, 3, Ex. 15 at 1, Ex. 16 at 1. And when Oracle
19  finally discovered DLT-FBS's illegal conduct, it sent notice to Johnson that DLT-FBS was in
20  breach of its Oracle partner agreement, attaching an email from him to DLT-FBS customer
21  SPAWAR in which he falsely represented that DLT-FBS's partner agreement with Oracle
22  "provides us with access to all Oracle/Sun software updates" and repeated the untrue assertion
23  that Dynamic Systems was its "teaming partner." *Id.*, Ex. 17 at 1.
24  When DLT-FBS's first set of attorneys served initial disclosures, the very first DLT-FBS
25  employee they listed as having relevant knowledge was Michael Johnson. *Id.*, Ex. 18 at 2.

B.  **The Evidence That Michael Johnson Does Not Exist**
27      1.  **Oracle Attempts to Depose Michael Johnson**
28  Oracle served a deposition notice for Michael Johnson on December 24, 2012. *Id.*, Ex.

4

19. On January 4, 2013, DLT-FBS's outside counsel filed a motion to withdraw. D.I. 104. In a subsequent letter brief, DLT-FBS's outside counsel stated they had moved to withdraw "per the advice of ethics counsel" due to "an emergent ethical conflict." D.I. 106 at 5. Subsequently, DLT-FBS substituted in its second set of counsel. D.I. 135, D.I. 160.

### 2. The New Lawyers Reveal There Is No Michael Johnson

Given the substitution of counsel, and "[p]ursuant to the parties' agreement," Magistrate Judge Vadas ordered that "the depositions of Geoff Prosser and Michael Johnson that were scheduled for February 1 and 2 will be rescheduled." D.I. 141, ¶ 4. When the parties met and conferred on January 16, 2013, DLT-FBS's new counsel stated that "Michael Johnson" does not exist but was a pen name used by others within the company. He also stated that the first set of outside counsel withdrew because they had identified Michael Johnson in discovery pleadings as a witness with relevant knowledge, and he was not a real person. Hixson Decl., ¶ 2.[1]

On January 22, 2013, DLT-FBS's new counsel explained that Robert Wright was the principal author of the Michael Johnson alias. In an email entitled "Michael Johnson pen name," he wrote:

> The three people who monitored the Michael Johnson e-mail account were Geoff Prosser, Anne Rose and Robert Wright. [¶] Robert Wright is the person who wrote all or substantially all of the e-mails sent from that address. [¶] I will eventually put this in a formal interrogatory answer, but I wanted to get it to you quickly so that we can make deposition arrangements accordingly. *Id.*, Ex. 20.

Then, in a joint letter brief filed with the Court, DLT-FBS represented that "Michael Johnson . . . turns out to be a pen name DLT-FBS used on service emails, invoices and contracts, not an actual person." D.I. 146 at 3. Accordingly, the parties agreed that Oracle would depose Robert Wright in place of the non-existent Johnson. *Id.*

### 3. DLT-FBS Fires Its Second Set Of Lawyers

Oracle then propounded Interrogatory No. 13, asking about DLT-FBS's use of "the fictional Michael Johnson name." Hixson Decl., Ex. 21 at 1-2. On March 4, 2013, the day the

---

[1] In a *pro se* filing, DLT-FBS indirectly confirmed this was the reason the first set of attorneys withdrew. D.I. 173 at 1 (stating that first outside counsel's "'emergent ethical conflict'" related to "'Michael Johnson'").

response was due, DLT-FBS served only frivolous objections. *Id.* The cover email stated, however, that "FSBC's corporate representative is in the process of reviewing and verifying the interrogatory responses. Those responses, supplementing the objections served today, will be provided by the close of business on Wednesday, March 6, 2013." *Id.*, Ex. 22. Instead, DLT-FBS fired its outside counsel on Wednesday, March 6, instructing them to serve no further papers and take no further action on DLT-FBS's behalf. D.I. 163-1, ¶ 3.

DLT-FBS's second set of outside counsel then moved to withdraw. D.I. 163. They argued that even if they had not been fired, "the Firms would have been ethically required to withdraw," D.I. 175 at 2, because, among other reasons, of "ethical considerations," *id.*, "ethical conflicts," *id.* at 6, and "ethical . . . disputes," *id.* at 8. DLT-FBS's counsel then filed the sealed Exhibit A with this Court that the Court reviewed in connection with the withdrawal motion, stating it documented these ethical conflicts. *Id.*, p. 6.

    **4.**  **The New Story**

A month later, DLT-FBS's third set of outside counsel served a supplemental response to Oracle's interrogatory. DLT-FBS's new position was that Oracle's interrogatory was "incomprehensible" because "Michael Johnson is a real person." Hixson Decl., Ex. 23 at 2. Oracle brought this change in position to Magistrate Judge Vadas's attention the following day, at the April 9, 2013 status conference. Oracle asked him to order DLT-FBS to produce Johnson for deposition (if he existed), to provide contact information for him so Oracle could subpoena him, and to produce documents concerning his alleged employment with DLT-FBS. Judge Vadas granted the first two requests, ordering DLT-FBS promptly to provide Oracle with any contact information it had for Johnson *and* to make him available for deposition by May 15, 2013 unless he refused to appear, which refusal they were required to document if possible. D.I. 199, ¶ 2.

DLT-FBS did not comply with that order. It did not make Johnson available for deposition, or indicate that he refused to appear. Hixson Decl., Ex. 24. Further, instead of promptly providing Oracle with contact information for Johnson, as the Court had ordered, DLT-FBS waited until May 3, 2013 – the very last day to serve deposition notices under the Court's

1  scheduling order (D.I. 194, ¶ 1.A) – to state it had no current contact information for Johnson. It
2  then provided a "last known" address of 13 Iroquois Ave., Milford, DE 19963. D.I. 202-1.
3        A brief investigation revealed this address belatedly provided in response to Judge
4  Vadas's order is fraudulent. In reality, 13 Iroquois Ave., Milford, DE 19963 was a property
5  previously owned by DLT-FBS consultant Cliff Thomas and his wife, DLT-FBS employee and
6  Board of Directors member Donna Prosser-Thomas. Mr. Thomas used the property to run his
7  prior business, J&T Management Services, Inc. D.I. 202-3. According to records in the
8  Thomases' bankruptcy proceeding, the bank obtained leave to foreclose on the property in
9  January 2008, *see* D.I. 202-4 (bank's October 2007 motion for relief from automatic stay,
10 identifying the 13 Iroquois Ave. property in ¶ 2); D.I. 202-5 (January 3, 2008 stipulated order
11 granting bank's motion), and a foreclosure deed was in fact recorded in July 2009. Hixson Decl.,
12 Ex. 25 at 2, 4.
13       But DLT-FBS was founded in August 2009. Hixson Decl., Ex. 26 at 10:6-8. Contrary to
14 DLT-FBS's assertion that "Mr. Johnson lived at 13 Iroquois Avenue, Milford, DE 19963 while it
15 was maintained as an investment property by FBSC personnel Donna Prosser and Cliff Thomas,"
16 D.I. 204, the dates are all wrong. There is no overlap between the existence of DLT-FBS
17 (August 2009 and later) and when the Thomases owned that property (July 2009 and earlier).
18 The only way that could be Johnson's last known contact information is if DLT-FBS *never had*
19 *any contact information for him* for the entire time he worked for the company. But then how
20 would DLT-FBS do things like withhold taxes or pay him?
21       **5.**    **The New Story Becomes Increasingly Suspicious**
22       Upon receipt of the fraudulent address, Oracle again brought this matter to Magistrate
23 Judge Vadas's immediate attention. D.I. 202. Oracle renewed its request that he order DLT-
24 FBS to produce documents concerning Johnson's alleged prior work for the company. He
25 granted that request and ordered DLT-FBS to produce "all documents it has in its possession
26 regarding" Michael Johnson. Hixson Decl., Ex. 27 at p. 9:2-7.
27       Instead of producing any documents, DLT-FBS served what can only be described as an
28 incredible declaration by its Chief Operating Office, Anne Rose Osamba. *Id.*, Ex. 28. She stated

that "A man named Michael Johnson worked with FBSCGov from 2009 to the early 2012 time period." *Id.*, ¶ 3. Of course, Oracle filed this lawsuit on February 17, 2012, D.I. 1, so DLT-FBS's new story is that Johnson conveniently left the company just when Oracle sued. Osamba also stated that "Mr. Johnson did not have a formal employment or contractor relationship directly with" DLT-FBS. Hixson Decl., Ex. 28, ¶ 4. Osamba stated that DLT-FBS *has no records that Johnson worked for the company and likely never had any such records. Id.* ¶ 5. She stated that DLT-FBS has no record of ever paying him compensation and has no tax forms documenting that he ever worked for the company. *Id.* ¶ 6. This, for the person who seemingly conducted most of DLT-FBS's business dealings and supposedly signed contracts with the United States military on behalf of the company.

### 6. DLT-FBS Witnesses Testify They Have Never Met Johnson

Prior to the Osamba declaration, Oracle deposed her, Prosser and Wright. They testified they never met Johnson and could not provide a physical description of him. *Id.*, Ex. 29 at 40:14-15, 46:1-5, Ex. 26 at 28:24-29:7, Ex. 30 at 21:16-22:5. This was remarkable in a company with ███████████████. *Id.*, Ex. 31 at 4. But it was particularly striking testimony for Osamba, who in a March 2012 email to one of DLT-FBS's subcontractors claimed to be *in the same room with Johnson*. *Id.*, Ex. 32 at 1 ("Michael is in my office right now"); *see also id.*, Ex. 29 at 5:16-20 ("Anne Rose" in the email is Rose Osamba). If her testimony that she had never met him was true, then she was lying when she said she was with him – further evidence they simply made him up. Note that in the same email, the subcontractor expressed bafflement that he could not reach Johnson to speak to him personally. *Id.*, Ex. 32 at 1 ("I have just called DLT offices, Michael was not available . . . . I asked for a cell phone (or alternate) number to reach Michael and Linda was not able to provide me with that information. I also learned that Michael is not in this office I am calling. [¶] *Does anyone on this [email] have a number where I can reach Michael Johnson?*") (emphasis supplied).

### 7. The Emails In Late 2012

DLT-FBS's story that Michael Johnson left in 2012 just as Oracle sued runs into another problem – DLT-FBS produced emails from *after* that time when they *still* used the Johnson alias.

8

PLAINTIFF ORACLE AMERICA, INC.'S NOTICE AND MOTION FOR TERMINATING SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ADVERSE INFERENCE INSTRUCTION

1  They were continuing to make him up. For example, on October 23, 2012 ■■■ emailed
2  ("■■■") to state that ■■■
3  ■■■
4  ■■■" *Id.*, Ex. 33 at 6. This initiated a lengthy email exchange,
5  in which Johnson eventually sent a November 29, 2012 email falsely saying that
6  ■■■" *Id.* at
7  1. Johnson then stated DLT-FBS would "■■■"
8  even though that meant ■■■" *Id.* His email was signed "
9  ■■■" *Id.* at 2.
10      Even DLT-FBS admits there was not actually a "Michael Johnson" behind these emails.
11  Osamba's declaration said he left the company in "early 2012," and this email exchange was at
12  the end of 2012. In context, it is also clear that DLT-FBS personnel intended to convey the
13  impression that there really was a Michael Johnson, since the email was signed "
14  ■■■" and DLT-FBS did not correct the
15  ■■■
16  ■■■.
17      DLT-FBS witnesses admitted that others did impersonate the Michael Johnson identity.
18  *E.g., id.*, Ex. 26 at 11:21-12:10, 24:5-25, 149:6-150:9, 226:24-228:9. They claim there was an
19  actual Michael Johnson at the company before early 2012, that both before and after he left
20  others sometimes used his email address and may have signed documents using his signature,
21  and they cannot identify who all those other people are. *Id.; id.*, Ex. 29 at 39:17-40:10, 44:13-
22  45:22. They have never met him, do not know what he looks like, and are aware of no
23  documents showing his previous relationship with the company. *Id.*, Ex. 26 at 28:24-29:7, 31:9-
24  25, Ex. 29 at 40:14-15, 46:1-5, Ex. 30 at 21:16-22:5.
25      To this day, DLT-FBS continues to pretend to the outside world that there is a Michael
26  Johnson. On its website, DLT-FBS continues to list Michael Johnson as a technical support
27  contact for customers to escalate support questions. D.I. 202-2 at 3. It goes so far as to provide
28  office and cell phone numbers for him, *id.*, although those appear to just be general DLT-FBS

numbers, as no one named Michael Johnson answers.

### 8. Wright Contradicts DLT-FBS's Prior Counsel

As discussed above, DLT-FBS's second set of outside counsel did more than merely state that Michael Johnson is not an actual person. They identified the person who wrote "substantially all" of the emails sent from that email address: Robert Wright. But when Oracle deposed him, Wright denied that he was Michael Johnson or that he had any involvement with DLT-FBS's customers. Hixson Decl., Ex. 30 at 18:10-13, 19:10-20:2, 21:16-22:12, 23:13-15, 31:6-32:11, 61:5-62:15, 62:24-64:8. In fact, Wright's denials were so sweeping that he also contradicted other DLT-FBS witnesses. For example, contrary to Wright's testimony, Prosser testified that Wright was part of the DLT-FBS "management team" that "collectively" wrote an email to SPAWAR stating that DLT-FBS was authorized to provide Oracle software patches. *Id.*, Ex. 26 at 79:13-80:6. And while Wright could not recall ever posing as Michael Johnson in an email, *id.*, Ex. 30 at 22:6-8, Prosser said he did. *Id.*, Ex. 26 at 24:22-25. Wright did remember that he had been disbarred from the practice of law for engaging in "conduct involving dishonesty, fraud, deceit, or misrepresentation" concerning the management of client funds. *Id.*, Ex. 34 at 3, 30 at 65:12-14, 66:24-67:17. The Virginia Supreme Court upheld his disbarment. *Id.*, Ex. 35 at 11.

### 9. Oracle Attempts to Depose Donna Prosser-Thomas

Oracle sought to depose Donna Prosser-Thomas about the 13 Iroquois Drive address, since she and her husband had previously owned the property and it was where Michael Johnson allegedly lived at some point. The Court's scheduling order provides that May 3, 2013 was the last day to serve deposition notices for fact witnesses, with fact witness depositions to be concluded by May 15, 2013. D.I. 194. ¶ 1.A. Oracle timely served a deposition notice on May 3. Hixson Decl., Ex. 36. DLT-FBS refused to make her available. *Id.*, Ex. 37 at 1. DLT-FBS took advantage of a quirk in the Court's scheduling order. The last day to hear motions to compel was May 1, 2013. D.I. 59, ¶ B. But when the Court extended the deadline for depositions, it did not change the deadline to move to compel. D.I. 194. So even though the scheduling order obligated DLT-FBS to make Prosser-Thomas available for deposition by May 15, DLT-FBS

10

PLAINTIFF ORACLE AMERICA, INC.'S NOTICE AND MOTION FOR TERMINATING SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ADVERSE INFERENCE INSTRUCTION

1 stiffed Oracle, figuring it was too late for Oracle to move to compel.

2 This is merely the latest in DLT-FBS's pattern of violating the Court's orders. Obtaining documents from DLT-FBS in discovery required three Court orders and monetary sanctions. D.I. 88, ¶ 2; D.I. 141, ¶ 2; D.I. 154. This Court struck DLT-FBS's counterclaims because they were filed in violation of the Court's scheduling order. D.I. 196. The Court had to enforce the scheduling order again when DLT-FBS attempted to serve vast written discovery requests in violation of the discovery cutoff. D.I. 220.

Given the magnitude of DLT-FBS's misconduct throughout the case, culminating in the Michael Johnson episode detailed above, Oracle did not seek relief from the scheduling order to move to compel Ms. Prosser-Thomas's deposition, to further confirm that DLT-FBS provided a fraudulent address in response to Judge Vadas's May 8 Order. Instead, Oracle brings this motion for terminating sanctions. However, if the Court believes the record requires further development, then Oracle seeks leave to depose Ms. Prosser-Thomas.

### III. ARGUMENT

#### A. Legal Standards Governing A Motion For Terminating Sanctions

The Ninth Circuit has "constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just." *Connecticut General Life Ins. Co. v. New Images*, 482 F.3d 1091, 1096 (9th Cir. 2007). The five parts are: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)). "The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Id.* (citing *Valley Eng'rs*, 158 F.3d at 1057). "This 'test' is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow." *Id.* Sometimes, "the record makes application of all the factors so clear that no extended discussion [is] needed." *Id.*

The Ninth Circuit has identified the single most important factor for the Court to consider: "In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, but truth." *Id.* at 1097. "There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." *Valley Eng'rs*, 158 F.3d at 1058. "'What is most critical . . . is whether the discovery violations 'threaten to interfere with the rightful decision of the case.'" *Connecticut General*, 482 F.3d at 1097 (quoting *Valley Eng'rs*, 158 F.3d at 1058). In the three leading Ninth Circuit cases upholding the award of terminating sanctions, all of them focused on whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Valley Eng'rs*, 158 F.3d at 1058; *see also id.* (observing that *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) was another example of this); *see also Connecticut General*, 482 F.3d at 1096-97.

When the terminating sanction is in favor of a claimant (i.e., plaintiff or counterclaimant), the remedy is the entry of a default judgment, including damages sought. *See Connecticut General*, 482 F.3d at 1095-96 (affirming terminating sanctions default judgment of $2,034,954.51 against defendants); *Adriana Int'l Corp. v. Thoren*, 913 F.2d 1406 (9th Cir. 1990) ($8.5 million for counterclaimant; holding there is no right to trial on damages in this context).[2]

### B. The Court Should Grant Terminating Sanctions

Applying the five-factor test, the Ninth Circuit has said "that where a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case-dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Valley Eng'rs*, 158 F.3d at 1057. Here, DLT-FBS has violated several Court orders. It violated orders compelling production and was sanctioned. D.I. 88, ¶ 2; D.I. 141, ¶ 2; D.I. 154, ¶ 2. In addition, Magistrate Judge Vadas ordered DLT-FBS to make Michael Johnson available for deposition by May 15, 2013 unless the witness refused. D.I. 199, ¶ 2. DLT-FBS did not comply. He ordered DLT-FBS to promptly provide any contact information it had for Johnson, so that Oracle could

---

[2] To that end, Oracle submits the report by its damages expert substantiating Oracle's $1,692,105 in damages. Hixson Decl., Ex. 38, ¶ 39.

12
PLAINTIFF ORACLE AMERICA, INC.'S NOTICE AND MOTION FOR TERMINATING SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ADVERSE INFERENCE INSTRUCTION

evaluate whether he existed and, if so, depose him. *Id.* Instead, DLT-FBS waited until the last minute to provide a clearly bogus address, frustrating both purposes of the order. Then DLT-FBS violated the Court's scheduling order by refusing to produce the witness who would know the address was bogus. Magistrate Judge Vadas also ordered DLT-FBS to produce documents "regarding" Johnson. Hixson Decl., Ex. 27 at p. 9:2-7. Instead, it provided a declaration that clearly confirms there was no such person at the company, even while still swearing there was.

Factor 3 – the risk of prejudice to Oracle – is also satisfied. Any notion that the first *and* second set of outside counsel were both mistaken about Michael Johnson just being a pen name is preposterous. They could only have learned that information from their client, which later realized it was a mistake to admit it. The Court can confirm this fact for itself in the sealed Exhibit A that DLT-FBS's second set of attorneys filed when they withdrew. The steps that DLT-FBS's third set of attorneys have taken in an attempt to conceal this fraud only confirm there is no Michael Johnson. The Osamba declaration's assertion that there are *no records at all* of him ever working for DLT-FBS, while undoubtedly a true statement, confirms that DLT-FBS made him up, perhaps to shield Robert Wright's identify from the government (though the actual reason DLT-FBS fabricated the Michael Johnson persona is immaterial to this motion). It is impossible that he was a real person who worked for DLT-FBS right until this case was filed, sent hundreds of emails from his DLT-FBS work email address, signed contracts with the government, but DLT-FBS has no written record of his employment.

Oracle will never be able to obtain, and the jury will never hear, meaningful testimony from the author of the hundreds of "Michael Johnson" emails that are at the heart of this case. Pretending there was somebody by that name who conveniently left the company around the time Oracle sued attributes piles of damning evidence to a fictitious person, so there is no one to cross-examine. It liberates other DLT-FBS employees to say anything, which they have done. DLT-FBS's Geoff Prosser and Rose Osamba walked away from the Michael Johnson emails to SPAWAR and NETPDTC, in which "he" said DLT-FBS was providing Oracle support, by claiming *they* had oral conversations with the customers in which they clarified that was not true. Hixson Decl., Ex. 26 at 217:16-218:5, 230:19-231:4, Ex. 29 at 156:21-162:22. Robert Wright,

the supposed "real" Michael Johnson, walked away from the emails completely, denying having any dealings with any customers at all. *Id.*, Ex. 30 at 18:10-13, 19:10-20:2, 21:16-22:12, 23:13-15, 31:6-32:11, 61:5-62:15, 62:24-64:8. This prejudice to Oracle is the direct result of DLT-FBS's violations of Court orders, its third set of counsel's unethical conduct, and its witnesses' perjury.

The fifth factor is also satisfied. Magistrate Judge Vadas has issued every discovery order possible – to produce Johnson, to produce documents about him, and to produce contact information for him. There is nothing further to order for a fabricated witness. Monetary sanctions would remedy nothing. And although Oracle does suggest an alternative sanction below, an adverse inference instruction would not cure the fact that DLT-FBS has "so damage[d] the integrity of the discovery process that there can never be assurance of proceeding on the true facts," *Valley Eng'rs*, 158 F.3d at 1058. Further, as to the issue of whether DLT-FBS was warned of terminating sanctions, the Ninth Circuit has held that "everyone has notice from the text of Rule 37(b)(2) that [termination] is a possible sanction for failure to obey discovery orders." *Id.* at 1056-57.

Case law confirms the propriety of issuing terminating sanctions here. In *Valley Eng'rs*, the Ninth Circuit upheld terminating sanctions where the plaintiff obtained multiple court orders to produce documents, but the defendant inappropriately delayed producing one of them, the key document in the case. 158 F.3d at 1052-55. Although the document was ultimately produced, the Court focused on the "pattern of deception and discovery abuse," *id.* at 1057 (citation and quotation marks omitted), and the "shocking betrayal of obligations to the court and opposing counsel," *id.* at 1055. Given the defendant's conduct, the Court also observed that "it was a reasonable inference that if there was other discoverable material harmful to its case that its adversaries did not know about, it would be hidden forever." *Id.* at 1058. Likewise, in *Anheuser-Busch*, the Ninth Circuit affirmed terminating sanctions where the plaintiff had obtained orders to produce documents, but the defendant produced key documents so late that the plaintiff's case was prejudiced. 69 F.3d at 352-54. The Court focused on the defendant's "pattern of deception and discovery abuse" as indicating that notwithstanding the eventual

production of documents, it was "impossible for the district court to conduct another trial with any reasonable assurance that the truth would be available" given that the defendant "will say anything at any time in order to prevail in this litigation." *Id.* at 352.

Here too Oracle had to obtain three orders from Magistrate Judge Vadas before DLT-FBS made any substantial document production. Two more orders resulted only in fraudulent "contact" information for Johnson and a declaration that continues the fiction that he existed (even while admitting underlying facts that show otherwise, such as the absence of any employment records). In other words, the difference between this case and the precedents cited above is that here the defendant *is still hiding the truth*. It is similarly reasonable to assume that any discoverable evidence that Oracle has not been able to pry out of DLT-FBS with five orders from the Magistrate Judge will be "hidden forever." *Valley Eng'rs*, 158 F.3d at 1058. Under these precedents, the Court should grant terminating sanctions.

### C. In The Alternative, the Court Should Issue An Adverse Inference Instruction

If the Court is disinclined to grant terminating sanctions, it should grant an alternative remedy. The most significant prejudice to Oracle from the Michael Johnson fraud comes from the inability to obtain truthful testimony from the author of the emails, and the liberating effect on everyone else at DLT-FBS to walk away from them – to spin the emails, to say "Johnson" had incorrect information, to claim that oral conversations not documented anywhere contradict the emails. As an alternative to granting terminating sanctions, the Court could rule that the Johnson emails are authentic and admissible, and could issue an adverse inference instruction to the jury that any attempt by DLT-FBS witnesses to testify contrary to what is stated in those emails should be presumed to be untrue.

### IV. CONCLUSION

For the foregoing reasons, the Court should grant Oracle's motion for terminating sanctions or, in the alternative, issue the requested adverse inference instruction.

15

PLAINTIFF ORACLE AMERICA, INC.'S NOTICE AND MOTION FOR TERMINATING SANCTIONS OR, IN THE ALTERNATIVE, FOR AN ADVERSE INFERENCE INSTRUCTION

1  DATED: June 13, 2013

2

3                                              Bingham McCutchen LLP

4

5                                              By:  _____/S/Thomas S. Hixson_____
                                                         Thomas S. Hixson
6                                                     thomas.hixson@bingham.com
                                                       Attorneys for Plaintiff
7                                                      ORACLE AMERICA, INC.

8

9  75583689

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ORACLE AMERICA, INC.'S NOTICE AND MOTION FOR TERMINATING SANCTIONS OR, IN
THE ALTERNATIVE, FOR AN ADVERSE INFERENCE INSTRUCTION